UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| In re: ) | |
| ) | |
| CARTER'S GROVE, LLC, ) | Case No. 11-51330-SCS |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

**OBJECTION OF THE COLONIAL WILLIAMSBURG FOUNDATION TO THE DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF AMENDED PLAN OF REORGANIZATION OF CARTER'S GROVE, LLC**

The Colonial Williamsburg Foundation ("CWF"), by counsel, for its objection to the Debtor's Disclosure Statement in Support of Amended Plan of Reorganization (the "Plan") of Carter's Grove, LLC filed on September 1, 2011, (the "Disclosure Statement") states the following:

1. The Debtor's primary asset is the Carter's Grove mansion (the "Mansion"), a well-preserved 18th Century Georgian-style brick plantation house with historical and architectural significance, and the contiguous real property (the Mansion and real property are hereinafter collectively referred to as the "Property").

2. The Mansion is designated as a National Historic Landmark and listed on the National Register of Historic Places and the Virginia Landmarks Register.

3. CWF sold the Property to the Debtor in 2007, and took back a note from the Debtor in the original principal amount of $10,300,000, which note is secured by a first-lien deed of trust on the Property. As of February 14, 2011, the outstanding balance on the note was $4,078,156.98.

4. The Property is also subject to a Deed of Gift of Easement (the "Easement") by and between CWF on the one hand and the Virginia Outdoors Foundation and the Virginia

Board of Historic Resources on the other. The purpose of the Easement, among other things, is to preserve and protect the conservation values of the Property, including the historic and architectural value of the Mansion. The Easement is a perpetual historic preservation, conservation, and open space easement that is recorded among the land records in James City County, Virginia, and is binding on all subsequent owners of the Property, including the Debtor.

5. According to the Disclosure Statement, the Debtor has two principal funding obligations under the Plan, first, to fund the payments to creditors under the Plan and, second, to fund the continued maintenance and operating expenses of the Debtor.

6. The Disclosure Statement explains that,

> the debtor does not have any income but is, instead, entirely dependent upon Mr. Minor, the controlling principal of the Debtor, to pay debt service and to fund day-to-day expenses and capital expenses. Under the Plan, Mr. Minor will fund the continued maintenance and operation expenses of the Debtor and the payments to creditors pursuant to the terms and conditions set forth in the Plan.

In re Carter's Grove, LLC, No. 11-51330-SCS (Bankr. E.D.Va.). Disclosure Statement in Support of Amended Plan of Reorganization of Carter's Grove, LLC, at Section 1, Para. A (Bankr. E.D. Va., September 1, 2011).

7. The Disclosure Statement does not contain "adequate information" as that phrase is used in § 1125 of the Bankruptcy Code in that it fails to disclose with any specificity facts that show how Mr. Minor will fund the Plan and the continued maintenance and operating expenses of the Debtor. *In re Forest Grove*, 448 B.R. 729, 735-36 (Bankr. D.S.C. 2011). *See also, In re Feldman*, 53 B.R. 355, 358 (Bankr. S.D.N.Y. 1985).

8. The only information provided in the Disclosure Statement is the unsupported assertion that "the Effective Date Cash Contribution and subsequent Post-Emergence Cash Contributions will be funded with Cash that Mr. Minor has on hand or through Cash that Mr.

2

Minor obtains through any convertible debt financing secured by the assets of Atmosphir and his interests in Atmosphir." (Disclosure Statement at Section D.)

9. It is undisputed that the Debtor is dependent upon Mr. Minor not only to fund the Plan but also to fund the Debtor's continued maintenance and operating expenses. Consequently, specific information regarding Mr. Minor's assets and liabilities is indispensible to any creditor's informed judgment about and evaluation of the Plan and determination of whether Mr. Minor is financially able to fund the Debtor's obligations under the Plan. See *Forest Grove*, 448 B.R. at 736 (denied approval of disclosure statement because information contained therein did not establish feasibility of the Chapter 11 plan) *See also*, *In re Repurchase Corp.*, 332 B.R. 336, 343 (Bankr. N. D. Il. 2005) (denying confirmation of Chapter 11 plan on the grounds that the plan was not feasible because the debtor failed to show that the non-debtor party responsible for making the plan payments had ability to fund the plan over the life of the plan and had committed to do so.); *In re Hockenberry*, Case No. 09-59064, 2011 WL 4441582, at *10 (Bankr. S.D. Ohio Sept. 16, 2011) (same); *In re Winston XXIV, Ltd. P'ship*, 153 B.R. 322, 327 (Bankr. D. Kan. 1993) (same).

10. The Disclosure Statement promises that "the Debtor will show on or before the deadline to object to Confirmation that Mr. Minor has the cash on-hand to make the payments contemplated under the Plan on the Effective Date...." (Disclosure Statement at Section VII(a).)

11. This promise to provide proof prior to the deadline to object to confirmation does not satisfy the provisions in §1125 of the Bankruptcy Code, which require that the proof be in the Disclosure Statement. The promise is also insufficient because the Debtor must not only provide credible information that it has cash to satisfy its obligations as of the Effective Date, but that is

3

has the cash to fund its other obligations under the Plan for the duration of the Plan. *Repurchase*, 332 B.R. at 343.

12. The Disclosure Statement provides that, under the Plan, Mr. Minor will also fund the continued maintenance and operating expenses of the Debtor, yet there is no indication in the Disclosure Statement how much this will cost, where these funds will come from, or whether Mr. Minor presently has the ability to fund these expenses.

13. The Disclosure Statement does not provide information of a kind and in sufficient detail to enable creditors to make an informed judgment whether the Debtor can perform its obligations under the Plan. A bare statement that Mr. Minor will fund the obligations from cash or through a convertible debt financing is grossly inadequate and is no proof that Mr. Minor can actually make the payments required under the Plan, including the continued maintenance and operating expenses of the Debtor, for the duration of the Plan.

14. At the time of the purchase of the Property by the Debtor in 2007, the Debtor's expert identified the immediate need for certain roof repairs particularly related to the roof flashing. This same expert estimated the cost to make these repairs was approximately $400,000. CWF agreed to and did reduce the purchase price by $200,000 to cover partially the cost of making these roof repairs. Upon information and belief, these roof repairs have not been made by the Debtor.

15. CWF furnished to the Debtor in March 2011 and again in October 2011 inspection reports of the Mansion describing in detail maintenance work that needed to be done, including the roof flashing identified in 2007, to maintain the Mansion in good condition and repair.

16.     It is important to the creditors who have liens on the Property to know whether the Debtor has the funds available or has sufficient liquidity to maintain the Mansion and preserve its unique value as a National Historic Landmark.

17.     As a National Historic Landmark, it is important to the public at large that the Property be maintained because it has been identified as a historical site that is worthy of protection as a significant historical and cultural resource.

18.     Generalizations about cash on hand or cash obtained through a convertible debt financing is wholly inadequate. There is no indication that Mr. Minor has contractually agreed to provide the cash to the Debtor; there is no indication how much cash is necessary; there is no indication that Mr. Minor has the necessary funds or that he has the ability to fund the Debtor during the life of the Plan; and, there is absolutely no detail provided in the Disclosure Statement about Mr. Minor's financial condition upon which creditors could be assured that Mr. Minor has the necessary funds to underwrite the Debtor's plan during the life of the Plan.

19.     Even more telling than the lack of information in the Disclosure Statement are the following indications that Mr. Minor will not be able to fund the Plan:

   a.     By Mr. Minor's own admission, the Debtor's bankruptcy was precipitated by his liquidity issues;

   b.     The Disclosure Statement indicates that Mr. Minor has been embroiled in costly and protracted litigation for the past several years, and that his ability to monetize assets has been adversely impacted by the overall economic downturn in the U.S. (Disclosure Statement at Section II(A)(4).);

   c.     Mr. Minor's inability to meet his substantial tax obligations in California is an indication of at least one large personal debt; and

      d.      Mr. Minor recently filed an Affidavit of Indigence in Civil Action No. 2009 EV006754F pending in the State Court of Fulton County, Georgia, that he was unable to post a bond to stay enforcement of a $13,364,298.77 judgment against Mr. Minor.

      20.      The representations in the Disclosure Statement that Mr. Minor will fund the Debtor are not supported by any evidence that he has any tangible means of satisfying that promise.

      21.      This lack of information is doubly troubling because the Plan provides that if the Debtor defaults in its obligations under the Plan the Debtor would have a year to market the Property before creditors can exercise any of their remedies and rights.

      22.      Because of the Debtor's failure to provide any disclosure as to Mr. Minor's ability to fund his obligations under the Plan and the evidence that he is unlikely to be able to do so, the Disclosure Statement is completely illusory on the critical issue of whether the Plan can be effectuated.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, The Colonial Williamsburg Foundation respectfully prays that this Court deny approval of the Disclosure Statement because the Debtor has failed to disclose information of a kind and in sufficient detail and with corroboration to permit creditors to determine whether the Debtor can fund its obligations under the Plan.

Dated: October 7, 2011  
      Richmond, Virginia

THE COLONIAL WILLIAMSBURG FOUNDATION

By: /s/ *Benjamin C. Ackerly*  
Gregory N. Stillman  
HUNTON & WILLIAMS, LLP  
500 East Main, Suite 1000  
Norfolk, Virginia 23510-3889  
Telephone: (757) 640-5300  
Facsimile: (757) 625-7720  
gstillman@hunton.com

Benjamin C. Ackerly, VSB No. 09120  
Tara L. Elgie, VSB No. 48259  
HUNTON & WILLIAMS, LLP  
Riverfront Plaza, East Tower  
951 E. Byrd Street  
Richmond, VA 23219  
Telephone: (804) 788-8200  
Facsimile: (804) 788-8218  
telgie@hunton.com  
*Counsel for The Colonial Williamsburg Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2011, a true copy of the foregoing *Objection* was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all registered users in this case and I further certify that I have sent a copy of the foregoing by First Class Mail to:

| | |
|---|---|
| Debra I. Grassgreen<br>John W. Lucas<br>Pachulski Stang Ziehl & Jones LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111-4500<br>Telephone: (415) 263-7000<br>Telecopy: (415) 263-7010<br>Email: dgrassgreen@pszjlaw.com<br>jlucas@pszjlaw.com<br>*Counsel for Carter's Grove, LLC, Debtor* | Robert S. Westermann<br>Sheila deLa Cruz<br>Hirschler Fleischer, P.C.<br>The Edgeworth Building<br>2100 East Cary Street<br>Richmond, Virginia 23223<br>Telephone: (804) 771-9500<br>Telecopy: (804) 644-0957<br>Email: rwestermann@hf-law.com<br>sdelacruz@hf-law.com<br>*Counsel for Carter's Grove, LLC, Debtor* |

/s/ *Benjamin C. Ackerly*