Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, VA 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Fax:    (804) 644-0957
Email: rwestermann@hf-law.com
       sdelacruz@hf-law.com

*Counsel for Debtor, Carter's Grove, LLC*

Debra I. Grassgreen (*pro hac vice*)
John W. Lucas (*pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111-4500
Phone: (415) 263-7000
Fax:    (415) 263-7010
Email: dgrassgreen@pszjlaw.com
       jlucas@pszjlaw.com

*Counsel for Debtor, Carter's Grove, LLC*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | |
|---|---|
| In re:<br><br>**CARTER'S GROVE, LLC,**<br><br>Debtor. | Case No.: 11-51330-SCS<br><br>Chapter 11 |

**DEBTOR'S REPLY TO OBJECTION OF THE COLONIAL WILLIAMSBURG
FOUNDATION TO THE DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT
OF AMENDED PLAN OF REORGANIZATION OF CARTER'S GROVE, LLC**

Carter's Grove, LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), respectfully submits this Reply to The Colonial Williamsburg Foundation's ("CWF") *Objection to the Debtor's Disclosure Statement in Support of Amended Plan of Reorganization of Carter's Grove, LLC* [Docket No. 76] (the "CWF Objection"), and respectfully represents as follows:

**Preliminary Statement**

1. The purpose of section 1125 of the Bankruptcy Code is to ensure that a disclosure statement provides impaired creditors with sufficient information to determine whether to accept or reject a debtor's proposed plan. To fulfill this requirement, a debtor's disclosure statement must disclose what these creditors will receive, when they will receive it, and any contingencies

DOCS_SF:78492.4 33801-002

that might affect their distribution. The Debtor's disclosure statement satisfies each of these conditions.

2.     In this case, only three (3) creditors are entitled to vote on the Plan: CWF, Sotheby's, and AVN. AVN has agreed to its Plan treatment. Sotheby's did not object to the Disclosure Statement. And it is clear that whether the disclosure statement is 1 page or 100 pages, it is not going to change how CWF votes on the Plan. With that backdrop, it is not surprising that in its objection, CWF attempts to turn a hearing devoted to describing the plan into a pre-confirmation trial on feasibility. Short of modifying the plan and unimpairing CWF's claim, there is nothing that the Debtor could change about the disclosure statement that would cause CWF to change its vote on the plan. This is highlighted by the fact that CWF is the only party that filed an objection to the disclosure statement.

3.     The Debtor believes that its plan is feasible and the treatment of CWF's claims is fair and equitable. The treatment of CWF's claim and the feasibility of the plan will each be addressed at the confirmation hearing. The hearing on the approval of the disclosure statement should not be turned into a preliminary confirmation hearing solely on account of CWF's displeasure with the plan. The Debtor has modified the disclosure statement to address a number of CWF's concerns and has added additional information regarding how feasibility will be demonstrated.[1] For the reasons discussed herein, the CWF Objection should be overruled because the disclosure statement, as modified, contains sufficient information to enable CWF and all other impaired creditors to determine whether to accept or reject the plan.

---

[1] Contemporaneously with the filing of this Reply, the Debtor filed blacklines of the proposed Disclosure Statement and Plan that reflect changes made against the versions filed with the Court on September 1, 2011 [Docket Nos. 63 and 64].

**Background**

4. On February 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this chapter 11 case (the "Case").

5. On August 18, 2011, the Court held a status conference in which representatives of the Debtor's three secured creditors, CWF, AVN Air, LLC ("AVN"), and Sotheby's Inc. ("Sotheby's"), all participated in person. On the record of the status conference, the Debtor proposed, with the agreement of the foregoing parties, that October 21, 2011 be used as the hearing date for the approval of the Debtor's proposed disclosure statement.

6. The Court approved the request and subsequently entered a scheduling order that provided (i) the Debtor's amended disclosure statement and plan would be filed on or before September 1, 2011, (ii) objections to the adequacy of the disclosure statement would be due on or before October 7, 2011, (iii) the Debtor's reply to any objections would be due on or before October 14, 2011, and (iv) the hearing on the adequacy of the disclosure statement would be on October 21, 2011 [Docket No. 71] (the "Scheduling Order").

7. In accordance with the Scheduling Order, on September 1, 2011, the Debtor filed its proposed *Disclosure Statement in Support of Amended Plan of Reorganization of Carter's Grove, LLC* [Docket No. 64] (as amended from time to time, the "Disclosure Statement").

8. Notably, none of the Debtor's general unsecured creditors filed a response to the form of the proposed Disclosure Statement, who are each being paid in full on the effective date of the proposed *Amended Plan of Reorganization of Carter's Grove, LLC* [Docket No. 63] (as

may be amended from time to time, the "Plan"). Similarly, AVN and Sotheby's did not file a response challenging the adequacy of the Disclosure Statement.

9. On October 5, 2011, the Office of the United States Trustee (the "UST") submitted an informal request that the following changes be made to the Disclosure Statement and Plan: (i) the Debtor's obligation to pay UST fees should appear in its own provision in the Plan and not be included within the definition of administrative expense claims; and (ii) the Debtor's quarterly post-confirmation reports should be due no later than fifteen (15) days after the conclusion of each quarter, not thirty (30) days. In response, the Debtor provided the UST with proposed changes that addressed both comments. The UST confirmed on the same day that the Debtor's changes were satisfactory, and has not objected to the adequacy of the Disclosure Statement.

10. Prior to the filing of the CWF Objection, counsel to the Debtor and counsel to CWF participated in approximately three or four telephonic conferences during which CWF's counsel raised certain issues with the form of the proposed Disclosure Statement. During these conferences, the Debtor and CWF were able to resolve all of the issues raised by CWF except for its feasibility challenge, which the Debtor believes is premature, not a disclosure statement issue, and will be addressed in connection with the confirmation of the proposed Plan. In addition to the changes that the Debtor and CWF were able to agree to, the Debtor elected to add additional information about Mr. Minor's current efforts to raise capital that he will use to fund the Debtor's plan obligations.

11. For the reasons discussed below, the Debtor believes that the CWF Objection should be overruled and that the Court should approve the Disclosure Statement in the form as reflected by the changes made since it was filed with the Court on September 1, 2011.

**The Disclosure Statement Should be Approved and the Scheduling of the Confirmation Hearing Should Occur in Accordance With the Debtor's Proposed Funding Projections**

### A. The Disclosure Statement Clearly and Adequately Discloses What CWF Will Receive, When It Will Receive It, and Any Contingencies to Such Distributions, and Nothing More Is Required

12. Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests entitled to vote with "adequate information" regarding the proposed plan of reorganization. In that regard, section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125 (a)(1).

13. A debtor's disclosure statement must, as a whole, provide information that is adequate to permit an "informed judgment" by impaired creditors entitled to vote on the proposed plan. *See Abel v. Shugrue, Jr. (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995). In determining the adequacy of information under section 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. *In re A.H. Robins, Co.*, 880 F.2d 694 (4th Cir. 1989). Adequate information was vaguely defined by Congress so that courts could view the circumstances on a case-by-case basis. *In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. Me. 1997).

14. The issue raised by CWF is a premature objection by CWF to the confirmation of the Plan. The CWF Objection is an attempt to convert the "adequate information" standard into a confirmation test for feasibility of the Plan. CWF contends that the Debtor's Disclosure State does not contain adequate information because it

> does not provide information of a kind and in sufficient detail to enable creditors to make an informed judgment whether <u>the Debtor can perform its obligations under the Plan</u>.

CWF Objection ¶ 13 (emphasis supplied).

15. However, it is hornbook law that "[t]he statutory standard for approval of a disclosure statement is that the disclosure statement must provide 'adequate information' so that the creditors <u>can decide whether or not to approve the proposed plan treatment of their respective claims</u>." *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999) (emphasis supplied); *see also, In re Holm*, 931 F.2d 896 (9th Cir. 1991) (holding that the primary purpose of disclosure statement is to assist creditors in determining whether to accept or reject the proposed plan); *Prudential Insurance Co. of America v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1342 (8th Cir.1985) (same).

16. CWF has already made up its mind, and there is no doubt that CWF will vote to reject the Plan. The Debtor believes there is nothing it could include in the Disclosure Statement or Plan that would change CWF's vote short of (i) withdrawing the Debtor's objection to CWF's claim as set forth in the complaint filed in the related litigation, Adversary Proceeding No. 11-05027-SCS (the "<u>Adversary Proceeding</u>"), (ii) amending the Plan, and (iii) agreeing to pay CWF's claim in full on the effective date of the plan.

17. At this stage of the case, the hearing on the adequacy of the disclosure statement is not the appropriate time to determine whether the debtor can perform its obligations under the plan. Feasibility and issues regarding the debtor's ability to perform its obligations under the plan are governed by section 1129(a)(11) of the Bankruptcy Code. These issues are determined at the time of the confirmation hearing, not at the disclosure statement hearing. *In re Sunshine Precious Metals, Inc.*, 142 B.R. 918, 920 (Bankr. D. Idaho 1992).

18.     To satisfy the adequacy of information standard, "a proper disclosure statement must clearly and succinctly inform the average unsecured creditor <u>what it is going to get</u>, <u>when it is going to get it</u>, and <u>what contingencies there are to getting its distribution</u>." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Disclosure Statement satisfies each of these requirements.

19.     Section III.C.2 of the Disclosure Statement clearly and adequately discloses each of these requirements.

   a. **What Will CWF Receive**: (i) a new note and deed of trust; (ii) the new note will entitle CWF to the full amount of its claim as determined by the Court in connection with the Adversary Proceeding; and (iii) the note will require the Debtor to pay quarterly interest payments calculated at 3.25% per annum against the amount of CWF's asserted claim for a period of three (3) years.

   b. **When Will CWF Receive Its Distribution**: (i) on the effective date of the Plan, CWF's counsel will control an escrow account that the Debtor will prefund with cash equal to the amount of five (5) quarterly interest payments; (ii) the Debtor will continue to make quarterly interest payments each quarter after the effective date so that there will always be no less than (5) interest payments in the escrow account; (iii) CWF will begin receiving quarterly interest payments from the latter of the effective date of the Plan or the date the Court approves CWF's claim; (iv) at the conclusion of the three (3) year period, the Debtor will pay CWF all outstanding interest and principal due under the new note; and (v) distributions to CWF will not be contingent upon a final, non-appealable order but instead upon approval of its claim by this Court.

   c. **What Are The Contingencies**: (i) As set forth on pages 29-30 and 53-54 of the Disclosure Statement, Mr. Minor will be responsible to supply the cash necessary to prefund the escrow account on the effective date of the Plan; (ii) the Plan will not become effective unless and until Mr. Minor funds the escrow account with the distributions to be paid under the Plan; (iii) if there is a Plan default that is not timely cured, the Debtor's property will be sold pursuant to the "Orderly Sale Process" set forth in the Plan and the proceeds will be used to satisfy CWF's claim; and (iv) CWF will remain adequately protected because the escrow account will have been prefunded with the interest installments that would have come due during the marketing and sale period.

20.     The Debtor has taken great care to structure the Plan so that at the time of confirmation it will be feasible. This is effectively a cash plan. Either the Debtor will "show the

money" or not. Moreover, the Disclosure Statement contains two pages of disclosure about the source of those funds. See Disclosure Statement, pp. 29-30 and 53-54. Mr. Minor will prefund the Debtor's contingent obligations to CWF under the Plan for the first fifteen (15) months after the effective date. If the Debtor fails to make any subsequent interest payments or the final payment under the new note, the Debtor's property will be sold pursuant to the Orderly Sale Process; plus, the existence of the prefunded reserve will adequately protect CWF during the Orderly Sale Process. If the property is not sold by the conclusion of the marketing period, CWF, AVN, and Sotheby's will be free to exercise their respective rights under their deeds of trust.

21.    The cases cited in the CWF Objection each revolve around the feasibility of a proposed plan. For example, in *In re Forest Grove, LLC*, 448 B.R. 729, 735 (Bankr. D.S.C. 2011), the court dismissed the debtor's case because proposed distributions under the plan were to be funded by "possible sources of income, not proven sources of current or future income." In addition, the debtor's plan sponsor had not performed any obligations during the case to show that he had the ability to make the necessary contributions.

22.    Here, the facts are completely different. The Debtor is not asking creditors to wait and see if Mr. Minor has the financial wherewithal to fund payments under the Plan. Instead, Mr. Minor will provide the necessary cash to fund payments under the Plan at the time of confirmation. In the event there is a default under the Plan, the Debtor's property will simply be liquidated. A plan is feasible when a debtor proposes an alternative means of performance (*i.e.*, liquidation of assets and distribution of proceeds to creditors) to satisfy all claims in full. *Financial Security Assurance Inc. v. T-H New Orleans Limited P'ship (In re T-H New Orleans Limited P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (holding that the plan was feasible because in

the event the debtor defaulted on its plan obligations, the debtor's assets would be sold to satisfy all claims in full); *In re Nite Lite Inns*, 17 B.R. 367, 369-70 (Bankr. S.D. Cal. 1982) (same).

23.  None of the cases cited by CWF deal with a plan such as this one, where the payments are being pre-funded into a reserve <u>before confirmation</u>. Instead, they are decisions in which the courts found that the debtor's plan was not feasible because the debtor failed to show that it had cash or the financial wherewithal to fund distributions to be made <u>following confirmation</u>. *See, e.g., In re Feldman*, 53 B.R. 355, 358 (Bankr. S.D.N.Y. 1985) (denying approval of the disclosure statement because, among other things, it failed to disclose how the plan proponents would fund payments under the plan); *In re Repurchase Corp.*, 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) (denying confirmation of the plan because promises to make contributions were not sufficient to establish feasibility when the evidence at the confirmation hearing showed that the debtor did not have financing or the capital to restart); *In re Hockenberry*, __ B.R. __, 2011 WL 4441582, *10 (Bankr. S.D. Ohio Sept. 16, 2011) (denying confirmation of the plan because the debtor failed to show the plan sponsor had cash to fund distributions); *In re Winston XXIV, Ltd. P'ship*, 153 B.R. 322, 327 (Bankr. D. Kan. 1993) (same).

24.  If section 1125 of the Bankruptcy Code "require[d] that the proof be in the Disclosure Statement," as CWF contends (CWF Objection ¶ 11), the approval of a disclosure statement would turn into a mini-trial on the feasibility of the plan. CWF is not a stranger or newcomer. CWF is intimately familiar with the Debtor's property because it owned it for years before it was sold to the Debtor in 2007. There is no question that when ballots are sent to creditors, CWF will reject the Plan. There is no amount of information that the Debtor could add to or change in the Disclosure Statement that would cause CWF to change its prospective vote on the Plan.

25. In the end, the CWF Objection is not about adequate information, it is about CWF's displeasure with the Debtor's objection to CWF's claim in the Adversary Proceeding and the proposed treatment of its claim in the Plan. CWF will have the opportunity to address the Debtor's objections to its claim in the Adversary Proceeding, and CWF will have the opportunity to address the treatment of its claim in connection with confirmation of the Plan. As modified, the Disclosure Statement contains adequate information because it informs CWF what it will receive under the Plan, when it will receive distributions under the Plan, and outlines the contingencies to such distributions with alternatives that guarantee distributions that will satisfy its allowed claim in full.

26. As set forth in the Disclosure Statement and herein, the Debtor is not seeking confirmation of the Plan and then asking the Court and creditors to wait and see if the Debtor or Mr. Minor can raise the funds necessary to fund the obligations under the Plan. Instead, the Debtor is proposing to prefund critical Plan obligations so that all allowed claims are paid in full on the effective date and CWF's claim remains adequately protected during the time its claim is reconciled in the context of the Adversary Proceeding.

**B. Scheduling of the Confirmation Hearing**

27. Because the Debtor CWF will object to the confirmation of the Plan, the Debtor expect that the parties will engage experts and conduct discovery. To accommodate the discovery process prior to the confirmation hearing, and subject to the Court's availability and approval of the Disclosure Statement, the Debtor proposes that the schedule for Plan confirmation proceed as follows:

    a. <u>October 21, 2011</u>:    Disclosure Statement Hearing

    b. <u>December 9, 2011</u>:    Deadline to Solicit Acceptances/Rejections of the Plan

  c. <u>January 6, 2012</u>:  Deadline to vote to Accept/Reject the Plan

  d. <u>January 13, 2012</u>:  Deadline to Object to Plan Confirmation

  e. <u>January 20, 2012</u>:  Deadline to Reply to Plan Confirmation Objections

  f. <u>February 3, 2012</u>:  Plan Confirmation Hearing

28. The Debtor believes that the above schedule is reasonable because it provides that all votes to accept or reject the Plan will be received before the Debtor's exclusivity period expires on January 9, 2012. Further, it will afford the parties the necessary time to engage in discovery prior to the confirmation hearing.

### Waiver of Memorandum of Law

29. Pursuant to Local Bankruptcy Rule 9013-1(G), as there are no novel issues of law presented in this Reply and because all applicable authority is set forth herein, the Debtor respectfully requests that the Court waive the requirement that all pleadings be accompanied by a separate memorandum of law.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court: (i) overrule the CWF Objection; (ii) enter an Order approving the Disclosure Statement as containing adequate information and approving the proposed Plan confirmation schedule contained herein; and (iii) and grant the Debtor such other and further relief as may be just and proper.

Dated: October 14, 2011

CARTER'S GOVE, LLC

By: /s/ Robert S. Westermann
    Robert S. Westermann (VSB No. 43294)
    Sheila deLa Cruz (VSB No. 65395)
    Hirschler Fleischer, P.C.
    The Edgeworth Building
    2100 East Cary Street
    Richmond, Virginia 23223
    Phone: (804) 771-9500
    Facsimile: (804) 644-0957
    Email: rwestermann@hf-law.com
          sdelacruz@hf-law.com

and

Debra I. Grassgreen (*pro hac vice*)
John W. Lucas (*pro hac vice*)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Phone: (415) 263-7000
Facsimile: (415) 263-7010
Email: dgrassgreen@pszjlaw.com
       jlucaspszjlaw.com

Counsel to the Debtor and Debtor in Possession

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 14, 2011, a true and complete copy of the foregoing Reply was filed and served electronically using the Bankruptcy Court's ECF System thereby causing it to be served on all parties who have noted their appearance in this bankruptcy case and was sent by first class mail, postage prepaid to the parties set forth below at the addresses indicated:

Benjamin C. Ackerly, Esq.
Tara L. Elgie, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Counsel for The Colonial Williamsburg Foundation

Debera F. Conlon, Esq.
Assistant United States Trustee
Office of the United States Trustee
200 Granby Street, Ste. 625
Norfolk, VA 23510

                                                    /s/ Robert S. Westermann
                                                         Counsel