Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957
Email: rwestermann@hf-law.com
        sdelacruz@hf-law.com

*Counsel for Debtor, Carter's Grove, LLC*

Debra I. Grassgreen (*pro hac vice*)
John W. Lucas (*pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111-4500
Phone: (415) 263-7000
Fax:    (415) 263-7010
Email: dgrassgreen@pszjlaw.com
        jlucas@pszjlaw.com

*Counsel for Debtor, Carter's Grove, LLC*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## NEWPORT NEWS DIVISION

| | |
|---|---|
| In re:<br><br>**CARTER'S GROVE, LLC,**<br><br>Debtor. | Case No.: 11-51330-STS<br><br>Chapter 11<br><br>**AMENDED PLAN OF REORGANIZATION OF CARTER'S GROVE, LLC**<br><br>**Confirmation Hearing**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  TBD<br>Judge:  Honorable Stephen C. St. John |

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ...................................................................................................2

1.1    "Administrative Claim" ............................................................................2
1.2    "Administrative Claims Bar Date" ...........................................................2
1.3    "Administrative Claims Bar Date Order" .................................................2
1.4    "Allowed" .................................................................................................2
1.5    "Allowed Secured Claim" ........................................................................3
1.6    "Allowed Unsecured Claim" .....................................................................4
1.7    "Appraisal" ...............................................................................................4
1.8    "Assumed Contract" or "Assumed Contracts" .........................................4
1.9    "Assumption and Cure Order" ..................................................................4
1.10   "Available Cash" .......................................................................................4
1.11   "AVN" .......................................................................................................4
1.12   "AVN Deed of Trust" ...............................................................................4
1.13   "AVN Guaranty" .......................................................................................4
1.14   "AVN Lease" .............................................................................................4
1.15   "AVN Lease Documents" ..........................................................................4
1.16   "Ballot" .....................................................................................................5
1.17   "Bankruptcy Code" ...................................................................................5
1.18   "Bankruptcy Court" ..................................................................................5
1.19   "Bankruptcy Rules" ..................................................................................5
1.20   "Bar Date" .................................................................................................5
1.21   "Business Day" ..........................................................................................5
1.22   "California Bankruptcy Court" ..................................................................5
1.23   "California Docket No ...............................................................................5
1.24   "Carter's Grove" .......................................................................................5
1.25   "Cash" .......................................................................................................5
1.26   "Chapter 11 Case" .....................................................................................6
1.27   "Claim" ......................................................................................................6
1.28   "Claimant" .................................................................................................6
1.29   "Class" .......................................................................................................6
1.30   "Confirmation" ..........................................................................................6
1.31   "Confirmation Date" .................................................................................6
1.32   "Confirmation Hearing" ............................................................................6
1.33   "Confirmation Order" ...............................................................................6
1.34   "Contingent Claim" ...................................................................................6
1.35   "Creditor" ..................................................................................................6
1.36   "Cure Obligation" .....................................................................................7
1.37   "CWF" .......................................................................................................7
1.38   "CWF Adversary Proceeding" ..................................................................7
1.39   "CWF Deed of Trust" ................................................................................7
1.40   "CWF Maturity Date" ...............................................................................7
1.41   "CWF Note" ...............................................................................................7

1.42    "Debt" ............................................................................................................7
1.43    "Debtor" .........................................................................................................7
1.44    "Disallowed Claim" ........................................................................................7
1.45    "Disbursing Agent" .........................................................................................8
1.46    "Disclosure Statement" ...................................................................................8
1.47    "Disclosure Statement Order" .........................................................................8
1.48    "Disputed Claim" ............................................................................................8
1.49    "Effective Date" ..............................................................................................8
1.50    "Effective Date Cash Contribution" ................................................................8
1.51    "Escrow Account" ...........................................................................................9
1.52    "Estate" ...........................................................................................................9
1.53    "Estate Assets" ................................................................................................9
1.54    "Exculpated Parties" .......................................................................................9
1.55    "Filed" .............................................................................................................9
1.56    "Final Order" ...................................................................................................9
1.57    "Interest Holder" .............................................................................................9
1.58    "Interests" ........................................................................................................9
1.59    "IRS" ...............................................................................................................9
1.60    "IRS Claims" ...................................................................................................9
1.61    "Lien" ..............................................................................................................10
1.62    "Lienholders" ..................................................................................................10
1.63    "Minor" ...........................................................................................................10
1.64    "Minor Trust" ..................................................................................................10
1.65    "Mr. Minor" .....................................................................................................10
1.66    "New CWF Deed of Trust" .............................................................................10
1.67    "New CWF Note" ............................................................................................10
1.68    "Orderly Sale Process" ....................................................................................10
1.69    "Other Priority Claim" ....................................................................................11
1.70    "Other Secured Claims" ..................................................................................11
1.71    "Petition Date" ................................................................................................11
1.72    "Plan" ..............................................................................................................11
1.73    "Plan Default" .................................................................................................11
1.74    "Plan Default Notice" .....................................................................................12
1.75    "Plan Supplement" ..........................................................................................12
1.76    "Post-Emergence Cash Contribution(s)" .........................................................12
1.77    "Priority Employee Claim" .............................................................................12
1.78    "Priority Tax Claim" .......................................................................................12
1.79    "Professional Fees" .........................................................................................12
1.80    "Professionals" ................................................................................................12
1.81    "Record Date" .................................................................................................13
1.82    "Rejected Contracts" .......................................................................................13
1.83    "Rejection Claim" ............................................................................................13
1.84    "Rejection Claim Bar Date" ............................................................................13
1.85    "Reorganized Debtor" .....................................................................................13
1.86    "Retained Claims and Defenses" .....................................................................13
1.87    "Sale Procedures Motion" ...............................................................................14

1.88    "Schedules" .................................................................................................. 14
1.89    "Secured Claim" ............................................................................................ 14
1.90    "Secured Tax Claim" .................................................................................... 14
1.91    "Sotheby's" .................................................................................................... 14
1.92    "Sotheby's Deed of Trust" ........................................................................... 14
1.93    "Sotheby's Settlement Agreement" ............................................................. 14
1.94    "Tax Claim" .................................................................................................. 14
1.95    "Tentative Ruling" ........................................................................................ 15
1.96    "Unliquidated Claim" ................................................................................... 15
1.97    "Unsecured Claim" ....................................................................................... 15
1.98    "Venue Objection" ........................................................................................ 15
1.99    "Venue Order" ............................................................................................... 15
1.100   "Venue Transfer Motion" ............................................................................. 15
1.101   "Voting Deadline" ......................................................................................... 15

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ............................................. 15

2.1    Criterion of Class........................................................................................... 15
2.2    Classes of Claims and Interests .................................................................... 16

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS ....................................................... 16

3.1    Administrative Claims.................................................................................... 16
3.2    Administrative Claim Bar Date. .................................................................... 16
3.3    Claims for Professional Fees. ........................................................................ 17
3.4    Tax Claims...................................................................................................... 17

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............................... 18

4.1    Class 1 (Other Priority Claims). .................................................................... 18
4.2    Class 2 (Secured Claim of CWF). .................................................................. 18
4.3    Class 3 Claims (Secured Claim of AVN)........................................................ 20
4.4    Class 4 Claims (Secured Claim of Sotheby's)................................................ 21
4.5    Class 5 Claims (Other Secured Claims) ........................................................ 22
4.6    Class 6 (Unsecured Claims) ........................................................................... 22
4.7    Class 7 (Interests). ......................................................................................... 23
4.8    Nonconsensual Confirmation. ....................................................................... 23

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN................................................. 23

5.1    Overview of Plan Implementation.................................................................. 23
5.2    Effective Date Transactions............................................................................ 24
5.3    Revesting of Estate Assets.............................................................................. 24
5.4    Continued Existence........................................................................................ 24
5.5    Management of Reorganized Debtor................................................................ 24
5.6    Continued Business of Reorganized Debtor.................................................... 24
5.7    Retained Claims and Defenses. ...................................................................... 25
5.8    Distribution Procedures. ................................................................................. 25

| | | |
|---|---|---|
| 5.9 | Resolution of Disputed Claims. | 26 |
| 5.10 | Allocation of Distributions. | 26 |
| 5.11 | Rounding. | 26 |
| 5.12 | De Minimis Distributions. | 26 |
| 5.13 | Disputed Payments. | 26 |
| 5.14 | Unclaimed Property. | 27 |
| 5.15 | Setoffs. | 27 |
| 5.16 | No Distributions on Late-Filed Claims. | 27 |
| 5.17 | Withholding Taxes. | 27 |
| 5.18 | Post-Effective Date Reports. | 28 |
| 5.19 | Post Effective Date Employment and Compensation of Professionals. | 28 |
| 5.20 | Final Decree. | 28 |

ARTICLE VI EXECUTORY CONTRACTS ....................................................29

| | | |
|---|---|---|
| 6.1 | Executory Contracts and Unexpired Leases | 29 |
| 6.2 | Satisfaction of Cure Obligations. | 29 |
| 6.3 | Post-Petition Executory Contracts and Unexpired Leases. | 30 |
| 6.4 | Order Authorizing Assumption or Rejection. | 30 |

ARTICLE VII CONDITIONS PRECEDENT ....................................................31

| | | |
|---|---|---|
| 7.1 | Conditions to Confirmation. | 31 |
| 7.2 | Conditions to Effective Date. | 31 |

ARTICLE VIII EFFECTS OF CONFIRMATION ............................................31

| | | |
|---|---|---|
| 8.1 | Binding Effect of Plan. | 31 |
| 8.2 | Revesting of Property Free and Clear. | 32 |
| 8.3 | Discharge of Debtor. | 33 |
| 8.4 | Injunction. | 33 |
| 8.5 | Full and Final Satisfaction. | 34 |
| 8.6 | Limitation of Liability. | 34 |

ARTICLE IX RETENTION OF JURISDICTION ............................................35

ARTICLE X MISCELLANEOUS ..................................................................36

| | | |
|---|---|---|
| 10.1 | Severability of Plan Provisions. | 36 |
| 10.2 | Governing Law. | 37 |
| 10.3 | Headings. | 37 |
| 10.4 | Language Interpretation. | 37 |
| 10.5 | Quarterly Fees to the United States Trustee. | 37 |
| 10.6 | Exhibits. | 37 |
| 10.7 | Exemption from Transfer Taxes. | 38 |
| 10.8 | Notices. | 38 |
| 10.9 | Reservation of Rights. | 39 |

| 10.10 | Computation of Time Periods. | 39 |
| 10.11 | Defects, Omissions and Amendments. | 39 |
| 10.12 | Post-Confirmation Date Notices. | 39 |
| 10.13 | Filing of Additional Documents. | 40 |
| 10.14 | Successors and Assigns. | 40 |
| 10.15 | Implementation. | 40 |
| 10.16 | Certain Actions. | 40 |

## PRELIMINARY STATEMENT

Carter's Grove, LLC, the above-referenced debtor and debtor in possession (the "Debtor"), hereby proposes the following *Amended Plan of Reorganization of Carter's Grove, LLC* (the "Plan"). All Creditors should review the Disclosure Statement, and its accompanying exhibits and other information before voting to accept or reject the Plan.

The Plan sets forth a proposal for the resolution of all Allowed Claims against the Debtor. In sum, the Plan provides for the continuation of the Debtor, with all Allowed Claims to be paid in full either on the Effective Date or over time, as applicable, and the Interests to be retained by their holder. All Allowed Claims will be paid in full using funds from the Effective Date Cash Contribution, Post-Emergence Cash Contributions, any Cash derived from the liquidation of any property of Mr. Minor as necessary to effectuate the terms and conditions of the Plan.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan and a Disclosure Statement that provides information concerning the Debtor and the Plan. Holders of unimpaired Claims, disputed Claims, and the holder of Interests are not entitled to vote on the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors and Interest Holders will receive (or retain) under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that it meets the applicable legal standards before the Plan can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed, or converted to a liquidating case under chapter 7 of the Bankruptcy Code, or other parties in interest may propose a different plan, if the Debtor's exclusive right to file and solicit a plan is terminated.

Because all Allowed Claims will be paid in full, the Debtor believes that the Plan provides the best mechanism available for maximizing returns to Creditors, while allowing the Debtor to continue its holding and maintenance of Carter's Grove. Accordingly, the Debtor urges Creditors to vote in favor of the Plan.

## ARTICLE I

### DEFINITIONS

For purposes of this Plan, all capitalized terms used herein and not otherwise defined shall have the meanings set forth below. A term not defined in the Plan, but defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it in the Bankruptcy Code or the Bankruptcy Rules, unless the context clearly requires otherwise. The rules of construction used in section 102 of the Bankruptcy Code shall apply to construction of this Plan. Headings and captions are utilized in this Plan for convenient reference only, and shall not constitute a part of this Plan for any other purpose.

1.1    **"Administrative Claim"** shall mean a Claim for any expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) actual and necessary costs and expenses of preserving any of the Estate or administering the Chapter 11 Case and (b) all Professional Fees.

1.2    **"Administrative Claims Bar Date"** shall mean the first Business Day that is thirty (30) days after the Effective Date pursuant to which Claimants must file a request for payment of any Administrative Claim that arose between the Petition Date and the Effective Date.

1.3    **"Administrative Claims Bar Date Order"** shall mean the Confirmation Order setting the Administrative Claims Bar Date.

1.4    **"Allowed"** shall mean

With respect to any Claim (other than an Administrative Claim as set forth below):

(a)    a Claim that appears in the Schedules, except a Claim that is listed as disputed, contingent or unliquidated, or for which a contrary proof of Claim has been filed;

(b)    a Claim for which a proof of Claim has been timely filed as of the Bar Date or Rejection Claim Bar Date, as applicable, and no objection thereto has been made on or before any applicable deadline, *provided, that*, prior to any deadline imposed by this Plan or by the Bankruptcy Court to file objections to a given Claim, no Claim shall be treated as Allowed to the extent that it is filed by the holder of such Claim (i) in an amount greater than the amount listed for such Claim by the Debtor in its Schedules, or (ii) asserting a priority higher than the priority listed for such Claim by the Debtor in its Schedules; or

(c)    a Claim that has been allowed, but only to the extent allowed (i) by a Final Order, (ii) under this Plan, or (iii) under any agreements entered into in connection with this Plan (and approved by the Bankruptcy Court) establishing the amount and nature of any Claim; and

With respect to an Administrative Claim, a request for payment that has been filed prior to the Administrative Claims Bar Date, and in accordance with either section 503(b) of the Bankruptcy Code or the procedures for filing requests for payment of an expense of administration set forth in the Administrative Claims Bar Date Order, and as to which either no objection has been made on or before any applicable deadline, or if an objection has been made, a claim has been allowed by Final Order.

**1.5    "Allowed Secured Claim"** shall mean that portion of an Allowed Claim (i) secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, in an amount equal to the value, as determined by the Bankruptcy Court pursuant to sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of the interest of the holder of such Allowed Claim in the property of the Debtor, the Reorganized Debtor, or the Estate, securing such Allowed Claim, or (ii) in an amount equal to the amount subject to setoff by the holder of such Claim under section 553 of the Bankruptcy Code.

**1.6**    **"Allowed Unsecured Claim"** shall mean any Allowed Claim (including any Rejection Claim) that is not an Allowed Administrative Claim, an Allowed Secured Claim, an Allowed Priority Employee Claim, or an Allowed Priority Tax Claim.

**1.7**    **"Appraisal"** means that certain appraisal dated May 13, 2011 regarding Carter's Grove.

**1.8**    **"Assumed Contract" or "Assumed Contracts"** shall mean each executory contract or unexpired lease assumed by the Debtor.

**1.9**    **"Assumption and Cure Order"** shall mean, with respect to any Assumed Contract, an order of the Bankruptcy Court approving the assumption of such executory contract or unexpired lease, and determining any Cure Obligation with respect thereto.  The Confirmation Order may constitute an Assumption and Cure Order.

**1.10**    **"Available Cash"** shall mean the aggregate amount of all Cash, if any, held by the Reorganized Debtor as of the Effective Date.

**1.11**    **"AVN"** shall mean AVN Air, LLC.

**1.12**    **"AVN Deed of Trust"** shall mean that certain second priority deed of trust dated as of February 1, 2010, against Carter's Grove, allegedly securing the Debtor's guaranty obligations to AVN under the AVN Guaranty.

**1.13**    **"AVN Guaranty"** shall mean that certain guaranty dated as of February 1, 2010 executed by the Debtor for the benefit of AVN, guaranteeing Minor's obligations under the AVN Lease up to $5,000,000.

**1.14**    **"AVN Lease"** shall mean that certain lease dated as of May 22, 2005, as may have been amended or modified, between Minor as trustee of the Minor Trust and AVN, for the lease of certain aircraft from AVN.

**1.15**    **"AVN Lease Documents"** shall mean the AVN Lease, the AVN Guaranty, and any and all forbearance or modification agreements and other guaranty agreements relating thereto, entered into by and between AVN, Minor, the Minor Trust and the Debtor regarding the aircraft governed by the AVN Lease.

**1.16** **"Ballot"** shall mean the form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan, as such form may be approved by the Bankruptcy Court and which shall otherwise comply with the requirements of Bankruptcy Rule 3018(c).

**1.17** **"Bankruptcy Code"** shall mean title 11 of the United States Code, §§ 101 *et seq.*, as in effect on the Petition Date, as the same thereafter has been and may be amended, provided such amendments are in effect.

**1.18** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Eastern District of Virginia (Newport News Division) or such other court as may hereafter exercise jurisdiction over the Chapter 11 Case.

**1.19** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure in effect as of the Petition Date.

**1.20** **"Bar Date"** shall mean, as applicable, (i) June 20, 2011, which is the date set by the Bankruptcy Court as the last date for filing a proof of Claim for a Claim that arose before the Petition Date for non-Governmental Units, or (ii) August 15, 2011 for Governmental Units.

**1.21** **"Business Day"** shall mean any day, other than a Saturday, Sunday or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.22** **"California Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Northern District of California (San Francisco Division).

**1.23** **"California Docket No."** shall mean the docket of the California Bankruptcy Court.

**1.24** **"Carter's Grove"** shall mean that certain historic 475-acre plantation and related real property and personal property located on the north shore of the James River in James City County, Virginia, 8797 Pocahontas Trail, Route 60, Williamsburg, Virginia, on which there is situated a Georgian style mansion, caretakers' cottage, underground museum and stables, which property is held in fee simple by the Debtor.

**1.25** **"Cash"** shall mean cash and cash equivalents including, but not limited to, cash on deposit in the bank accounts of the Debtor or the Reorganized Debtor, as applicable, checks,

wire transfers, money orders, certificates of deposit, money market or similar investments, and other similar, readily marketable securities or instruments.

      1.26   **"Chapter 11 Case"** shall mean the chapter 11 case commenced by the Debtor upon the filing with the Bankruptcy Court of a voluntary petition under chapter 11 of the Bankruptcy Code.

      1.27   **"Claim"** shall mean a claim against the Debtor within the meaning of section 101(5) of the Bankruptcy Code.

      1.28   **"Claimant"** shall mean the holder of a Claim.

      1.29   **"Class"** shall mean a category or group including Creditors or Interest Holders whose Claims or Interests are substantially similar to the Claims or Interests of the other Creditors or Interests Holders in such Class, as designated by this Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

      1.30   **"Confirmation"** shall mean the approval of the Plan by and subject to the terms of the Confirmation Order.

      1.31   **"Confirmation Date"** shall mean the date of Confirmation.

      1.32   **"Confirmation Hearing"** shall mean the duly noticed hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing.

      1.33   **"Confirmation Order"** shall mean the order of the Bankruptcy Court, confirming the Plan and providing for the effectuation of the transactions contemplated by the Plan in accordance with the terms and provisions hereof and thereof.

      1.34   **"Contingent Claim"** shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

      1.35   **"Creditor"** shall mean any entity that holds a Claim that arose or is deemed to have arisen at the time of, before or after the Petition Date.

**1.36** **"Cure Obligation"** or **"Cure Obligations"** shall mean, individually, any monetary amount payable to the non-debtor party to an Assumed Contract pursuant to section 365(b)(1) of the Bankruptcy Code as a condition to the assumption of such contract or lease and, collectively, all monetary amounts payable to all non-debtor parties to all Assumed Contracts.

**1.37** **"CWF"** shall mean the Colonial Williamsburg Foundation.

**1.38** **"CWF Adversary Proceeding"** means that certain adversary proceeding having case number 11-05027-STS in which the Debtor filed a complaint against CWF objecting to the Secured Claim of CWF and asserting certain affirmative claims.

**1.39** **"CWF Deed of Trust"** shall mean the first priority deed of trust dated as of December 17, 2007, against Carter's Grove, allegedly securing the Debtor's obligations to CWF under the CWF Note.

**1.40** **"CWF Maturity Date"** shall mean the date that is 3 years from the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters an order that is not stayed approving the CWF Secured Claim.

**1.41** **"CWF Note"** shall mean the promissory note dated as of December 17, 2007 executed by the Debtor for the benefit of CWF, in the original principal amount of $10,300,000.

**1.42** **"Debt"** shall mean liability on a Claim.

**1.43** **"Debtor"** shall mean Carter's Grove, LLC, as debtor and debtor in possession in its Chapter 11 Case.

**1.44** **"Disallowed Claim"** shall mean (i) a Claim or any portion thereof, that has been disallowed by a Final Order of the Bankruptcy Court; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

**1.45**    **"Disbursing Agent"** shall mean the Debtor or Reorganized Debtor or such other person or persons designated by the Debtor or Reorganized Debtor, as applicable, to act as the disbursing agent for the purpose of making the distributions to Creditors as required under the Plan. The Disclosure Statement shall designate the identity and proposed compensation of the initial Disbursing Agent, if a party other than the Debtor.

**1.46**    **"Disclosure Statement"** shall mean the disclosure statement in support of the Plan, in the form approved by the Bankruptcy Court, disseminated by the Debtor to the holders of Claims against the Debtor in order to provide to such persons adequate information in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be modified, amended or supplemented from time to time.

**1.47**    **"Disclosure Statement Order"** shall mean that order entered by the Bankruptcy Court approving the form of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and authorizing related relief.

**1.48**    **"Disputed Claim"** shall mean, with respect to a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Employee Claim or an Unsecured Claim, as applicable (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed after the Bar Date; or (iii) any Contingent Claim or Unliquidated Claim. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

**1.49**    **"Effective Date"** shall mean the first Business Day on which each of the conditions specified in Article 7 of the Plan has been satisfied or duly waived.

**1.50**    **"Effective Date Cash Contribution"** shall mean the Cash to be contributed to the Debtor by Minor on the Effective Date, to be used to make Cash payments and distributions required to be made by the Debtor on or shortly after the Effective Date under the Plan,

including, without limitation, payments of Administrative Claims, Priority Employee Claims, Unsecured Claims and Professional Fees.

    **1.51**   **"Escrow Account"** shall mean that certain attorney's trust account held by CWF's attorneys at the law firm of Hunton & Williams LLP to hold the payments provided under  section 4.2 of the Plan.

    **1.52**   **"Estate"** shall mean the bankruptcy estate of the Debtor pursuant to Bankruptcy Code section 541.

    **1.53**   **"Estate Assets"** shall mean all property of the Estate of the Debtor under section 541 of the Bankruptcy Code including, all property, assets, equitable or legal rights or interests, contract rights, benefits, causes of action, claims, or any other thing tangible or intangible, of any kind whatsoever, owned or held by or on behalf of the Debtor in which the Debtor has any right, title or interest to the full extent provided under section 541 of the Bankruptcy Code including, without limitation, Carter's Grove, Available Cash, and Retained Claims and Defenses.

    **1.54**   **"Exculpated Parties"** shall have the meaning assigned to it in Section 8.6 of this Plan.

    **1.55**   **"Filed"** shall mean delivered to, received by and entered upon the legal docket by the Clerk of the Bankruptcy Court. "File" and "Filing" shall have correlative meanings.

    **1.56**   **"Final Order"** shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired), and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

    **1.57**   **"Interest Holder"** shall mean the holder of the Interests.

    **1.58**   **"Interests"** shall mean all membership interests in the Debtor.

    **1.59**   **"IRS"** shall mean the Internal Revenue Service.

    **1.60**   **"IRS Claims"** shall mean the claim filed by the IRS.

**1.61** **"Lien"** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.62** **"Lienholders"** shall mean, collectively, CWF, AVN, and Sotheby's.

**1.63** **"Minor"** shall mean Mr. Minor and/or any affiliate(s) or designee(s) thereof.

**1.64** **"Minor Trust"** shall mean the Halsey McLean Minor Revocable Trust 110304.

**1.65** **"Mr. Minor"** shall mean Halsey M. Minor.

**1.66** **"New CWF Deed of Trust"** shall mean the new deed of trust for the benefit of the holder of the Class 2 Claims that is substantially similar to the CWF Deed of Trust but for the treatment the Class 2 Claim, the terms of which are described in Section 4.2 hereof and as set forth in the form of the New CWF Deed of Trust that shall be part of the Plan Supplement.

**1.67** **"New CWF Note"** shall mean the new promissory note that shall be provided to the holder of the Class 2 Claim, the terms of which are described in Section 4.2 hereof and as set forth in the form of the New CWF Note that shall be part of the Plan Supplement.

**1.68** **"Orderly Sale Process"** means the following sale process, to take effect upon the occurrence of a Plan Default that is not cured within the specified cure period, on the Debtor's obligations to the Lienholders under this Plan:  In lieu of a foreclosure sale under Virginia law pursuant to the terms of the Deeds of Trust, in the event of an uncured Plan Default, Carter's Grove and all related personal property, including all intellectual property and other rights in and to the name "Carter's Grove" will be sold in an orderly manner under the supervision and control of the Bankruptcy Court.  Upon receiving a Plan Default Notice and provided, that the Debtor does not obtain an order of the Bankruptcy Court upon motion filed within twenty-one (21) days of receipt of such Plan Default Notice declaring that no Plan Default exists, the Reorganized Debtor shall within twenty-one (21) days after any Plan Default is not cured (i) file the Sale Procedures Motion for approval of the procedures governing the sale of Carter's Grove, (ii) retain a qualified real estate broker who will promptly list Carter's Grove for sale and commence the marketing of such assets for a period up to twelve (12) months from entry of an order approving the Sale Procedures Motion, (iii) the Debtor or the real estate broker shall file monthly

reports with the Bankruptcy Court regarding the status of the sale and marketing process, and (iv) the Lienholders shall be permitted to inspect Carter's Grove on a monthly basis. The Sale Procedures Motion shall be filed on regular notice and shall disclose the identity of the proposed broker, the terms and conditions of the proposed broker's employment, and the marketing plan for Carter's Grove. Lienholders shall have an opportunity to object to the relief sought by the Sale Procedures Motion. The proposed broker will recommend a listing sale price that shall be disclosed in the Sale Procedures Motion. The Reorganized Debtor shall maintain and insure Carter's Grove during the Orderly Sale Process. The Lienholders shall have the right to credit bid at any such sale consistent with section 363(k) of the Bankruptcy Code. If no sale is completed within twelve (12) months after entry of an order approving the Sale Procedures Motion, the Lienholders shall be permitted to exercise their rights under the New CWF Deed of Trust, the AVN Deed of Trust, and the Sotheby's Deed of Trust, as applicable.

    **1.69** **"Other Priority Claim"** shall mean a Priority Employee Claim and any other Claim that is unsecured and that is entitled to priority under sections 507(a) of the Bankruptcy Code.

    **1.70** **"Other Secured Claims"** shall mean Secured Claims other than those held by CWF, AVN and Sotheby's.

    **1.71** **"Petition Date"** shall mean February 14, 2011, which is the date when the Debtor filed its voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

    **1.72** **"Plan"** shall mean this chapter 11 plan of reorganization and any exhibits and schedules hereto and any documents incorporated herein by reference, as the same may, from time to time, be amended or modified as, and to the extent, permitted herein or by the Bankruptcy Code.

    **1.73** **"Plan Default"** shall mean a default of the Reorganized Debtor's obligations to one or more of the Lienholders under the Plan after receipt of a Plan Default Notice provided that such default remains uncured following the expiration of the applicable cure period set forth

in this Plan or the documents governing the rights and obligations between the Debtor on the one hand the applicable Lienholders on the other.

    **1.74** **"Plan Default Notice"** shall mean a notice served upon the Reorganized Debtor by a Lienholder declaring that a Plan Default has occurred.

    **1.75** **"Plan Supplement"** shall mean a compilation of documents and forms of documents, including any exhibits to the Plan that are not Filed contemporaneously with the filing of the Plan, and any amendments to exhibits Filed contemporaneously with the filing of the Plan, to be Filed and served on parties in interest no later than fourteen (14) days prior to the Voting Deadline, which, inter alia, may include a list of executory contracts or leases to be rejected under the Plan.

    **1.76** **"Post-Emergence Cash Contribution(s)"** shall mean Cash that shall be contributed to the Reorganized Debtor by Minor after the Effective Date Cash Contribution, to be used to make Cash payments and distributions required to be made by the Debtor after the Effective Date under the Plan on account of Allowed Claims, including Allowed Secured Claims.

    **1.77** **"Priority Employee Claim"** shall mean a Claim, if any, that is unsecured and that is entitled to priority under sections 507(a)(4) or (a)(5) of the Bankruptcy Code.

    **1.78** **"Priority Tax Claim"** shall mean that portion of a Tax Claim, if any, entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

    **1.79** **"Professional Fees"** shall mean all amounts allowed and awarded by the Bankruptcy Court for compensation for services rendered and reimbursement of expenses incurred by Professionals pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

    **1.80** **"Professionals"** shall mean (i) Pachulski Stang Ziehl & Jones LLP, (ii) Hirschler Fleishcher, P.C., (iii) Foley & Lardner, and (iv) any other attorneys and other advisors employed by the Debtor (pursuant to section 327 of the Bankruptcy Code) in the Chapter 11 Case and to be compensated for services rendered and reimbursed for expenses incurred pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

**1.81** **"Record Date"** shall mean (a) for the purposes of transmission, notice and voting on the Plan under Bankruptcy Rules 3017 and 3018, the date that the Bankruptcy Court enters its order approving the Disclosure Statement, and (b) for the purposes under Bankruptcy Rules 3001(e), 3001(b) and 3021 of any distribution under the Plan to the holders of Claims and for the determination of which Claims may be disallowed, the Effective Date.

**1.82** **"Rejected Contracts"** shall mean those executory contracts and unexpired leases which are rejected by the Debtor pursuant to section 365 or 1123(b)(2) of the Bankruptcy Code.

**1.83** **"Rejection Claim"** shall mean any Allowed Claim under Bankruptcy Code section 502(g) that arises under Bankruptcy Code section 365(g)(1) in favor of the non-debtor party to any executory contract or unexpired lease that is rejected by the Debtor pursuant to Bankruptcy Code sections 365(a) or 1123(b)(2).

**1.84** **"Rejection Claim Bar Date"** shall mean the last date established by the Bankruptcy Court by which entities asserting a Rejection Claim against the Debtor must have filed a proof of Claim with respect to such Rejection Claim or be forever barred from asserting such Claim and/or sharing in any distribution hereunder in respect of such Claim.  For contracts or leases rejected at least thirty (30) days prior to the Bar Date and for which no Rejection Claim Bar Date was previously fixed by the Court pursuant to Bankruptcy Rule 3002(c)(4), the Rejection Claim Bar Date shall be the Bar Date.  For contracts and leases rejected pursuant to the Plan, the Rejection Claims Bar Date shall be thirty (30) days following the date upon which the Confirmation Order is entered.

**1.85** **"Reorganized Debtor"** shall mean the Debtor as reorganized, recapitalized, and reconstituted on and after the Effective Date.

**1.86** **"Retained Claims and Defenses"** shall mean all claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination held by the Debtor or its Estate against any party whether or not pending on the Effective Date, not otherwise released or settled before the Effective Date.

**1.87**    **"Sale Procedures Motion"** shall mean that certain motion of the Debtor for approval of the procedures that will govern the Orderly Sale Process of the Debtor's assets that shall be filed within twenty-one (21) days after a Plan Default is not cured.

**1.88**    **"Schedules"** shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor, as amended from time to time [California Docket No. 59], with the California Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as further amended from time to time.

**1.89**    **"Secured Claim"** shall mean a Claim secured by a Lien on property of the Debtor, or the Estate, or secured by an amount subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

**1.90**    **"Secured Tax Claim"** shall mean a Tax Claim secured by a lien on property of the Debtor or the Estate.

**1.91**    **"Sotheby's"** shall mean Sotheby's Inc.

**1.92**    **"Sotheby's Deed of Trust"** shall mean the third priority deed of trust dated as of February 14, 2011, against Carter's Grove, allegedly securing certain of the Debtor's obligations to Sotheby's under the Sotheby's Settlement Agreement.

**1.93**    **"Sotheby's Settlement Agreement"** shall mean that certain Settlement Agreement and General Release of Sotheby's by Halsey Minor dated as of February 11, 2011, by and between Sotheby's and Minor in his individual capacity and as trustee of the Halsey McLean Minor Revocable Trust 110304 and the Debtor, relating to, *inter alia*, certain court orders and judgments entered in an action in the United States District Court for the Southern District of New York entitled *Sotheby's v. Minor*, 08-CV-7694 (BSJ)(HP), and appeals thereof by Minor, pursuant to which, *inter alia*, the Sotheby's Deed of Trust was granted.

**1.94**    **"Tax Claim"** shall mean all or that portion of an Allowed Claim held by a governmental unit for a tax assessed or assessable against the Debtor, including property tax, income and employment taxes and any related penalties or interest.

1.95    **"Tentative Ruling"** shall mean the tentative ruling of the California Bankruptcy

Court entered on March 30, 2011 regarding the Venue Motion.

1.96    **"Unliquidated Claim"** shall mean any Claim for which a proof of Claim has

been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not

been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective

Date.

1.97    **"Unsecured Claim"** shall mean any Claim that is not an Administrative Claim, a

Priority Tax Claim, an Other Priority Claim, a Priority Employee Claim, or a Secured Claim.

1.98    **"Venue Objection"** shall mean the Debtor's response to the Venue Transfer

Motion  that was filed on March 23, 2011 [California Docket No. 32].

1.99    **"Venue Order"** shall mean the order entered by the California Bankruptcy Court

transferring the Chapter 11 Case to the Bankruptcy Court [California Docket No. 74].

1.100    **"Venue Transfer Motion"** shall mean those certain motions seeking an order

transferring the venue of the Debtor's Chapter 11 Case, pursuant to 28 U.S.C. § 1412 and

Federal Rule of Bankruptcy Procedure 1014(a), to the United States Bankruptcy Court for the

Eastern District of Virginia, Newport News Division filed on March 3, 2011 [California Docket

Nos. 21 and 22].

1.101    **"Voting Deadline"** shall mean [DATE] at 4:00 P.M. prevailing Pacific Time, the

date ordered by the Bankruptcy Court to serve as the voting deadline for submission of ballots in

respect of Plan.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.1    **Criterion of Class**.

The following is a designation of Classes of Claims under the Plan.  Administrative

Claims and Tax Claims have not been classified and are excluded from the following Classes in

accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular

Class only to the extent that (i) the Claim qualifies within the description of that Class, and is

classified in a different Class to the extent that the remainder of the Claim qualifies within the description of that different Class, and (ii) the Claim, or any portion or Allowed amount of such Claim, is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.  In the event of a controversy as to whether (a) any Class of Claims is impaired, or (b) any Class of Claims is properly designated, the Bankruptcy Court shall, after notice and a hearing, determine such controversy pursuant to applicable provisions of the Bankruptcy Code and Bankruptcy Rule 3013.

    **2.2**   **Classes of Claims and Interests**.

    All Claims and Interests are divided into the following Classes, which Classes shall be mutually exclusive:

        **2.2.1**   **Class 1 Claims.**  Class 1 shall consist of all Other Priority Claims.

        **2.2.2**   **Class 2 Claims.**  Class 2 shall consist of the Secured Claim of CWF.

        **2.2.3**   **Class 3 Claims.**  Class 3 shall consist of the Secured Claim of AVN.

        **2.2.4**   **Class 4 Claims.**  Class 4 shall consist of the Secured Claim of Sotheby's.

        **2.2.5**   **Class 5 Claims.**  Class 5 shall consist of Other Secured Claims.

        **2.2.6**   **Class 6 Claims.**  Class 6 shall consist of all Unsecured Claims.

        **2.2.7**   **Class 7 Interests.**  Class 7 shall consist of all Interests.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

    **3.1**   **Administrative Claims.**  Each Allowed Administrative Claim, unless the holder of such Claim has agreed to a different treatment, shall be paid in full by the Reorganized Debtor from Available Cash on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such other date as the holder of such Claim and the Reorganized Debtor may agree.

    **3.2**   **Administrative Claim Bar Date.**  All requests for payment of Administrative Claims must be filed by the Administrative Claim Bar Date or the holders thereof shall be

forever barred from asserting such Administrative Claims against the Debtor or the Reorganized

Debtor or from sharing in any distribution under the Plan.  Holders of Administrative Claims

based on liabilities incurred in the ordinary course of the Debtor's business following the Petition

Date shall not be required to comply with the Administrative Claim Bar Date, *provided, that,*

(i) such holders have otherwise submitted an invoice, billing statement or other evidence of

indebtedness to the Debtor in the ordinary course of business, and (ii) such Claims are not past

due according to their terms.

   **3.3   Claims for Professional Fees.**  Each party seeking an award by the Bankruptcy

Court of Professional Fees: (a) must file its final application for allowance of compensation for

services rendered and reimbursement of expenses incurred through the Effective Date on or

before the Administrative Claims Bar Date; and (b) if the Bankruptcy Court grants such an

award, each such party shall be paid in full in Cash by the Reorganized Debtor in such amounts

as are allowed by the Bankruptcy Court as soon thereafter as practicable.  All final applications

for allowance and disbursement of Professional Fees must be in compliance with all of the terms

and provisions of any applicable order of the Bankruptcy Court, including the Confirmation

Order.

   **3.4   Tax Claims.**  Each Allowed Tax Claim, unless the holder of such Claim has

agreed to a different treatment, shall receive at the option of the Reorganized Debtor, one of the

following:  (i) payment in full in Cash, without interest, by the Reorganized Debtor from

Available Cash and/or the Effective Date Cash Contribution on the latest of:  (a) the Effective

Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court,

or as soon thereafter as practicable; (c) the fourteenth Day after such Claim is Allowed, or as

soon thereafter as practicable; and (d) such other date as the holder of such Claim and the

Reorganized Debtor may agree, or (ii) deferred cash payments to the extent permitted by section

1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the

statutory rate under applicable non-bankruptcy law or at a rate to be agreed upon by the

Reorganized Debtor and the appropriate governmental unit or, if they are unable to agree, to be

determined by the Bankruptcy Court; *provided, however*, that the Reorganized Debtors may prepay any or all such Claims at any time, without premium or penalty. In the event the Reorganized Debtor elects payment option (ii) the payment of each Allowed Tax Claim shall be made in equal quarterly installments with the first installment due on the latest of: (x) the first Business Day following the end of the first full calendar quarter following the Effective Date, (y) the first Business Day following the end of the first full calendar quarter following the date an order allowing such Claim becomes a Final Order, and (z) such other time or times as may be agreed with the holder of such Claim. Each installment shall include simple interest on the unpaid balance of the Allowed Tax Claim, without penalty of any kind, at the non-default rate of interest prescribed, agreed to or determined under option (ii). In addition, to the extent the Reorganized Debtor elects payment option (ii), the holder of any Secured Tax Claim shall retain its underlying liens on the applicable collateral pending full payment.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1     **Class 1 (Other Priority Claims).**

    **4.1.1     Impairment and Voting.** Class 1 shall consist of Other Priority Claims, including Priority Employee Claims. Class 1 Claims are unimpaired, and holders thereof are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

    **4.1.2     Treatment.** Each holder of an Allowed Other Priority Claim shall receive full payment of the Allowed amount of such Claim on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim.

    **4.1.3     Source of Payment.** Distributions to holders of Allowed Class 1 Claims shall be paid by the Reorganized Debtor, using Available Cash, the Effective Date Cash Contribution, the Post-Emergence Cash Contributions and/or any combination thereof.

4.2     **Class 2 (Secured Claim of CWF).**

**4.2.1    Impairment and Voting.** Class 2 shall consist of the Secured Claim of CWF on account of the CWF Note. The Class 2 Claim is impaired, and CWF is not entitled to vote under the Plan because the CWF Secured Claim is disputed; *provided, however,* CWF shall be entitle to vote under the Plan provided the Bankruptcy Court has authorized CWF to vote its Secured Claim pursuant to Bankruptcy Rule 3018 on or before the Confirmation Date.

**4.2.2    Treatment.** The holder of an Allowed Class 2 Claim shall receive, in full satisfaction of its Class 2 Claim, the New CWF Deed of Trust and New CWF Note, both of which shall reflect the terms and conditions specifically set forth below:

a) Interest Payments: Interest only shall be payable quarterly in arrears at the rate of 3.25% per annum, with default interest accruing following an uncured Plan Default at the default rate of 5.25% per annum.

b) Payment Intervals: On the Effective Date, the Debtor shall deposit Cash into the Escrow Account equal to the amount of five (5) quarterly interest payments (determined the amount of CWF's asserted Secured Claim). After the initial payment is made on the Effective Date, the next interest payment shall be due no later than the 15th day of the month of the quarter ending after the conclusion of the month in which the Effective Date occurs, and each interest payment thereafter shall be due on the 15th day of the month of each succeeding quarter until the CWF Maturity Date. As of the Effective Date, the Escrow Account will contain an amount equal to five (5) quarterly interest payments. The Escrow Account will always contain an amount equal to five (5) quarterly interest payments because the Debtor will begin making interest payments each quarter after the Effective Date thereby supplementing the amount of cash in the Escrow Account after the Effective Date.

c) Distributions: CWF shall be entitled to all accrued interest payments to the extent that CWF's Secured Claim has been approved pursuant to an order that has not been stayed by a court having jurisdiction over such claim. If CWF's Secured Claim is approved after the Effective Date, CWF shall receive all accrued interest payments equal to the aggregate amount that would have otherwise been paid up to that point if the CWF Secured Claim had been approved as of the Effective Date in accordance with the foregoing interest payment schedule in paragraph (b) hereof. All interest payments in the Escrow Account at the time of the CWF Maturity Date shall be applied toward the principal amount of the CWF Secured Claim.

d) Maturity: All unpaid amounts due under the CWF Secured Claim, including principal, shall be due and payable on the CWF Maturity Date.

e) Cure Period upon Default: The Reorganized Debtor shall have fifteen (15) days following receipt of a written Plan Default Notice of a Plan Default to cure any monetary Plan Default and thirty (30) days to cure any other asserted Plan Default

under the New CWF Note. After any Plan Default is not timely cured, the sole remedy shall be the Orderly Sale Process.

Except as otherwise provided in the Plan or the New CWF Note, and notwithstanding section 1146(a) of the Bankruptcy Code or any other provision of the Bankruptcy Code, any and all valid, enforceable, and perfected prepetition liens, deeds of trust, or security interests against Carter's Grove and/or any other Estate Asset shall survive the Effective Date and continue in accordance with the terms of the CWF Deed of Trust and/or applicable nonbankruptcy law until the holder's Allowed Class 2 Claim is satisfied pursuant to this Plan; *provided, however*, said holder shall be prohibited from exercising any rights and remedies pursuant to the CWF Deed of Trust so long as the Reorganized Debtor is in compliance with section 4.2.2 of the Plan; *provided, further* that upon receipt of the payments required hereunder, the Reorganized Debtor and CWF shall promptly make such customary arrangements and execute such customary documents, as mutually agreed upon, to effectuate a release of CWF's security interests or liens in the Reorganized Debtor's assets. The Court shall retain jurisdiction to resolve any disputes which may arise in connection with the foregoing matters.

**4.2.3    Liens.** As of the Effective Date, the holder of the Class 2 Claim shall retain its underlying liens on the applicable collateral on account of its Claim pending full payment as provided herein.

**4.2.4    Source of Payment.** Distributions to the holder of the Class 2 Claim shall be paid by the Reorganized Debtor, using Available Cash, the Effective Date Cash Contribution, the Post-Emergence Cash Contributions, Cash deposited in the Escrow Account, and/or any combination thereof.

**4.3    Class 3 Claims (Secured Claim of AVN).**

**4.3.1    Impairment and Voting.** Class 3 shall consist of the Secured Claim of AVN on account of the AVN Lease Documents. The Class 3 Claim is impaired, and the holder thereof is entitled to vote on the Plan.

**4.3.2    Treatment.**  The holder of an Allowed Class 3 Claim shall retain, unaltered, all of the legal, equitable and contractual rights to which such Claim entitles the holder except that in the event of a Plan Default, in addition to the remedies AVN may have against Mr. Minor, the sole remedy on account of the AVN Guarantee and the AVN Deed of Trust will be the Orderly Sale Process, rather than foreclosure.

**4.3.3    Liens.**  As of the Effective Date, the holder of the Class 3 Claim shall retain its underlying liens on the applicable collateral on account of its Claim pending full payment as provided herein.

**4.3.4    Source of Payment.**  Distributions to the holder of an Allowed Class 3 Claim shall be paid by the Reorganized Debtor, using Available Cash, the Effective Date Cash Contribution, the Post-Emergence Cash Contributions and/or any combination thereof.

**4.4    Class 4 Claims (Secured Claim of Sotheby's).**

**4.4.1    Impairment and Voting.**  Class 4 shall consist of the Secured Claim of Sotheby's on account of the Sotheby's Settlement Agreement.  The Class 4 Claim is impaired, and the holder thereof is entitled to vote on the Plan.

**4.4.2    Treatment.**  The holder of an Allowed Class 4 Claim shall retain, unaltered, all of the legal, equitable and contractual rights to which such Claim entitles the holder except that (i) in the event of a Plan Default, in addition to any remedies Sotheby's has against Minor, the sole remedy against the Reorganized Debtor will be the Orderly Sale Process, rather than foreclosure and (ii) section 2(a) of the Sotheby's Agreement shall be amended to replace December 31, 2011 with March 31, 2012.

**4.4.3    Liens.**  As of the Effective Date, the holder of the Class 4 Claim shall retain its underlying liens on the applicable collateral on account of its Claim pending full payment as provided herein.

**4.4.4    Source of Payment.**  Distributions to the holder of an Allowed Class 4 Claim shall be paid by the Reorganized Debtor, using Available Cash, the Effective Date Cash Contribution, the Post-Emergence Cash Contributions and/or any combination thereof.

**4.5   Class 5 Claims (Other Secured Claims).**

**4.5.1   Impairment and Voting.** Class 5 shall consist of Other Secured Claims. Class 5 Claims are impaired, and the holders thereof are entitled to vote on the Plan. For purposes of distributions under the Plan, each holder of an Other Secured Claim in Class 5 is considered to be in its own separate subclass within Class 5, and each such subclass is deemed to be a separate Class for purposes of the Plan.

**4.5.2   Treatment.** On or prior to the Effective Date, the Debtor shall select, in its discretion, one of the following alternative treatments for each Allowed Other Secured Claim in Class 5, which treatment shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Other Secured Claim:

(a)   <u>Abandonment or Surrender</u>: The Debtor will abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

(b)   <u>Cash Payment</u>: The Debtor will pay to the holder of such Claim Cash equal to the amount of such Claim, or such lesser amount to which the holder of such Claim and the Debtor shall agree, in full satisfaction and release of such Claim.

(c)   <u>Unimpairment</u>: The Debtor will leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

**4.5.3   Source of Payment.** In the event that the foregoing option (b) is selected by the Debtor or Reorganized Debtor, distributions to the holder of an Allowed Class 5 Claim shall be paid by the Reorganized Debtor, using Available Cash, the Effective Date Cash Contribution, the Post-Emergence Cash Contributions and/or any combination thereof.

**4.6   Class 6 (Unsecured Claims).**

**4.6.1   Impairment and Voting.** Class 6 shall consist of all Unsecured Claims. Class 6 Claims are unimpaired, and the holders thereof are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.6.2   Treatment.** Except to the extent that the holder of an Allowed Unsecured Claim accepts, or has accepted, less favorable treatment, each holder of an Allowed Unsecured Claim shall receive payment in full in Cash equal to the amount of 100% of its Allowed Claim on the later of (i) the Effective Date or (ii) the date the holder's Unsecured Claim is Allowed.

**4.6.3   Source of Payment.** Distributions to the holder of Allowed Class 6 Claims shall be paid by the Reorganized Debtor, using Available Cash and/or the Effective Date Cash Contribution.

**4.7   Class 7 (Interests).** Class 7 shall consist of all Interests. Class 7 is unimpaired. The legal, equitable, and contractual rights of the holder(s) of the Interests shall be left unaltered. Because Class 7 is unimpaired, Class 7 is conclusively presumed to have accepted the Plan, and the holder(s) of Interests in Class 7 is not entitled to vote to accept or reject the Plan.

**4.8   Nonconsensual Confirmation.** In the event that any impaired Class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor (i) requests that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and in accordance with the Plan, and (ii) may modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for implementation of the Plan.

**5.1   Overview of Plan Implementation.** Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from Minor's infusion of the Effective Date Cash Contribution and subsequent Post-Emergence Cash Contributions, Available Cash (if any), any proceeds from the sale or other disposition of assets of the Reorganized Debtor, as deemed necessary and appropriate by the Reorganized Debtor, and from any other lawful source.

**5.2   Effective Date Transactions.** Without limiting the generality of the foregoing, and without altering or amending the terms of the Plan in any manner, on (or, where appropriate, after) the Effective Date, the following actions shall occur:

a) The transactions contemplated under the Plan shall be consummated;

b) Mr. Minor shall cause the Effective Date Cash Contribution to be provided to the Debtor;

c) The Escrow Account shall be established; and

d) The Reorganized Debtor or Disbursing Agent, if any, shall make all Cash distributions required under the Plan on the Effective Date.

**5.3   Revesting of Estate Assets.** Except as otherwise provided in any provision of the Plan including with respect to the CWF Deed of Trust, the AVN Deed of Trust, and the Sotheby's Deed of Trust, upon the Effective Date, the Reorganized Debtor shall be vested with all right, title and interest in the Estate Assets free and clear of all Claims and Liens other than any obligations under this Plan.

**5.4   Continued Existence.** As of the Effective Date, the Reorganized Debtor shall continue to maintain its legal existence for all purposes under the Plan, and retain all the powers of a legal entity under applicable law.  The Reorganized Debtor shall be authorized to execute such other documents as are necessary and appropriate to carry out the provisions of this Plan, without the necessity of filing such documents with the Bankruptcy Court.

**5.5   Management of Reorganized Debtor.** The Minor Trust, the trustee and sole beneficiary of which is Halsey Minor, is the owner and sole member of the Debtor.  Mr. Minor, as trustee of the Minor Trust, manages the Debtor, and will manage the Reorganized Debtor in accordance with the Plan, the Debtor's Articles of Organization, as may be amended from time to time, and applicable nonbankruptcy law.

**5.6   Continued Business of Reorganized Debtor.** On and after the Effective Date, the Reorganized Debtor shall continue in accordance with its Articles of Organization, as may be amended from time-to-time, and may use, acquire and dispose of the Estate Assets without

supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

    **5.7**    **Retained Claims and Defenses.**  On and after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce the Retained Claims and Defenses (including through objections to Claims) with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code to the extent of and consistent with its authority under the Plan.  The Reorganized Debtor may investigate Retained Claims and Defenses and may assert, settle or enforce any such claims or defenses in a manner consistent with the Plan.  To the extent any Retained Claims and Defenses are already pending on the Effective Date, the Reorganized Debtor as successor to the Debtor may continue the prosecution of such Retained Claims and Defenses.  Any proceeds received from or on account of the Retained Claims and Defenses shall constitute Estate Assets and shall vest entirely in the Reorganized Debtor.  In connection with the Retained Claims and Defenses, the Reorganized Debtor shall be authorized to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, and (ii) employ and compensate Professionals.  From and after the Effective Date, except as otherwise provided in this Plan or in the Confirmation Order, the Reorganized Debtor shall be free to operate without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

    **5.8**    **Distribution Procedures.**  Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Reorganized Debtor or the Disbursing Agent, as applicable, under the Plan shall be distributed in such amounts and at such times as is reasonably prudent, with sufficient reserves established in the Reorganized Debtor's discretion to satisfy any Disputed and unpaid Professional Fees.  Unless otherwise provided in this Plan, all distributions to Creditors shall be: (i) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (ii) by first-class mail (or by other equivalent or superior means as appropriate).

**5.9    Resolution of Disputed Claims.**  All objections to Claims shall be filed and served not later than 90 days following the Effective Date, *provided, that*, such date may extended by the Bankruptcy Court for cause shown.  If an objection is not timely filed by the deadline established in this Section, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of this Plan.  Unless otherwise provided in the Confirmation Order, the Reorganized Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claim following the Confirmation Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan, *provided, however*, that the Bankruptcy Court shall retain jurisdiction to hear and adjudicate the allowance or disallowance of Claims, as provided for in Article IX of this Plan.  Under no circumstances will any distributions be made on account of Disallowed Claims.

**5.10    Allocation of Distributions.**  Distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**5.11    Rounding.**  Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**5.12    De Minimis Distributions.**  Notwithstanding any other provision of this Plan, distributions of less than $25.00 need not be made by the Reorganized Debtor or the Disbursing Agent, if any, on account of any Allowed Claim.

**5.13    Disputed Payments.**  In the event of any dispute between and among Creditors as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Reorganized Debtor or the Disbursing Agent, as applicable, may, in

lieu of making such payment or distribution to such entity, instead hold such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

**5.14   Unclaimed Property.**  Any entity which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan.  Upon forfeiture, such Cash (including interest thereon) shall be made available for distribution to (i) in the event of forfeiture of a payment made on account of an Allowed Unsecured Claim, to the holders of Allowed Unsecured Claims; or (ii) in the event of a forfeiture of a payment made on account of any other claim, to the Reorganized Debtor. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Reorganized Debtor or the Disbursing Agent, as applicable, or any holder of an Allowed Claim to whom distributions are made under this Plan, *provided*, *however*, that the Disbursing Agent shall undertake reasonable efforts, in its business judgment, to locate creditors whose distributions are returned to the Disbursing Agent without any return or forwarding address.

**5.15   Setoffs.**  Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment the Debtor or the Reorganized Debtor may have against any Creditor or Interest Holder.

**5.16   No Distributions on Late-Filed Claims.**  Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was first filed after the Bar Date shall be a Disallowed Claim, and no distribution shall be made to a holder of such a Claim, *provided*, *that*, to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, such Claim shall be treated as an Allowed Claim in the amount in which it was so listed.

**5.17   Withholding Taxes.**  Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtor or the Disbursing Agent, if any, shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as

appropriate.  The Reorganized Debtor or the Disbursing Agent, as applicable, shall comply with all reporting obligations imposed on it by any governmental unit.

 **5.18 Post-Effective Date Reports.**  Upon the Effective Date, the Reorganized Debtor shall prepare and submit to the Bankruptcy Court and the Office of the United States Trustee, post-confirmation reports for a revested debtor in the form suggested by the Office of the United States Trustee for Region 4.  The first post-confirmation report shall be due within fifteen (15) days following the end of the first calendar quarter from the Effective Date and reports shall be filed on a quarterly basis thereafter until the Chapter 11 Case is closed, unless otherwise agreed by the Reorganized Debtor and the Office of the United States Trustee.

 **5.19 Post Effective Date Employment and Compensation of Professionals.**  After the Effective Date, professionals for the Debtor shall take only those actions as are authorized by the Reorganized Debtor.  Professionals shall not be required to file formal applications for Bankruptcy Court approval of post-Effective Date employment or payment of post-Effective Date fees and expenses.  To the extent that the Reorganized Debtor requires Professionals to perform services following the Effective Date, the Reorganized Debtor is authorized to compensate Professionals without further order of the Bankruptcy Court with respect to fees and expenses incurred subsequent to the Effective Date.

 **5.20 Final Decree.**  Upon substantial consummation of the Plan, the Reorganized Debtor shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code.  Concurrently with the motion for entry of final decree, the Reorganized Debtor shall also file a report with the Court and the Office of the United States Trustee that sets forth the distributions made by the Reorganized Debtor pursuant to the Plan.

## ARTICLE VI

## EXECUTORY CONTRACTS

**6.1    Executory Contracts and Unexpired Leases**.

**6.1.1    Assumption.**  Upon the Effective Date, the Debtor will assume each of the Assumed Contracts except for any Rejected Contracts identified in the Plan Supplement.  The Debtor reserves the right to make additions to the schedule of rejected contracts up to fourteen (14) days prior to the date on which objections must be filed to the Plan with respect to the Confirmation Hearing.  The Reorganized Debtor shall be responsible for all Cure Obligations with respect to the Assumed Contracts which estimated obligations will also be set forth in an exhibit to the Plan Supplement.

**6.1.2    Rejection.**  The Rejected Contracts are any contracts and leases listed in the Plan Supplement.  Inclusion of a contract or lease on the schedule of Rejected Contracts in the Plan Supplement does not constitute a waiver by the Debtor or the Reorganized Debtor of the right to contend that some or all of such contract or lease is not executory.  Any Rejection Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan shall be filed within thirty (30) days of entry of the Confirmation Order, *provided, that* such deadline is not applicable to any executory contract or unexpired lease rejected prior to the Effective Date and for which a different Rejection Claim Bar Date was previously fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3002(c)(4).  The notice of entry of the Confirmation Order shall provide the Rejection Claim Bar Date for agreements rejected pursuant to the Plan.  Any Rejection Claim not filed by the applicable Rejection Claims Bar Date shall be a Disallowed Claim and shall be forever barred as a Claim against the Debtor, the Reorganized Debtor, or any property of the Debtor and from sharing in any distribution under this Plan.

**6.2    Satisfaction of Cure Obligations.**  The Reorganized Debtor shall satisfy any Cure Obligations for the Assumed Contracts by making a Cash payment, in the manner provided in Section 3.1 of this Plan, equal to the lesser of the amount: (a) set forth in any other notice, motion or supplement to the Plan filed and served in connection with the Confirmation Hearing

or as may be determined in an Assumption and Cure Order, or (b) agreed to in writing between the Reorganized Debtor and the non-debtor parties to such contracts or leases. The Debtor shall attach a schedule of proposed Cure Obligations to the Disclosure Statement approved by the Court pursuant to section 1125 of the Bankruptcy Code. Objections, if any, to the Cure Obligations must be filed fourteen (14) days prior to the Confirmation Hearing. The Reorganized Debtor shall satisfy the Cure Obligations within fourteen (14) days from the date from which an Assumed Contract is assumed pursuant to section 365(b) of the Bankruptcy Code.

**6.3    Post-Petition Executory Contracts and Unexpired Leases.** Except as may be provided otherwise by the Confirmation Order, all agreements and stipulations entered into by the Debtor on or after the Petition Date, and all executory contracts and unexpired leases previously assumed by the Debtor on or after the Petition Date, shall remain in full force and effect following Confirmation to the extent and in the manner set forth in such agreements, stipulations and assumed contracts or leases, in each case as approved and authorized by the Bankruptcy Court, and as the same may have been amended, modified or transferred.

**6.4    Order Authorizing Assumption or Rejection.** The Confirmation Order (or if set forth in a separate order from the Confirmation Order, the Assumption and Cure Order applicable to such Assumed Contract) shall constitute an order of the Bankruptcy Court approving (effective only upon the occurrence of the Effective Date) the assumption or rejection, as the case may be, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code of all executory contracts and unexpired leases under this Article of the Plan. The contracts and leases under this Article 6 will be assumed or rejected, respectively, only to the extent that such contracts or leases constitute executory contracts or unexpired leases, and the identification of such agreements on **Exhibit A** shall not constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder.

## ARTICLE VII

## **CONDITIONS PRECEDENT**

**7.1    Conditions to Confirmation.**  Confirmation of this Plan is conditioned upon the entry of an order confirming the Plan which shall, among other things, (1) authorize the implementation of the Plan in accordance with its terms; (2) contain findings supported by evidence adduced at the Confirmation Hearing that the Plan is proposed in good faith, that all actions contemplated by the Plan are necessary to implement the restructuring contemplated by the Plan are authorized by all corporate action, and pursuant to section 1145(a) of the Bankruptcy Code the issuance of securities, if any, and the grant of liens and security interests pursuant to the Plan are not subject to any stamp, real estate, or transfer tax; (3) issue the injunction set forth in the Plan, effective as of the Effective Date; (4) decree that on the Effective Date, the revesting of assets in the Debtor contemplated by the Plan is or will be legal, valid and effective, and vest or will vest in the Reorganized Debtor good and marketable title to such property free and clear of all Liens, Claims, and Interests except as provided in the Plan; and (5) confirm the Plan and authorize implementation in accordance with its terms.  If any of the foregoing terms and conditions is not met, the Debtor may, at its sole option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**7.2    Conditions to Effective Date.**  The effectiveness of the Plan is subject to the Confirmation Order becoming a Final Order, unless waived by the Debtor.  If no stay of the Confirmation Order is then in effect, this Plan shall become effective.

## ARTICLE VIII

## **EFFECTS OF CONFIRMATION**

**8.1    Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such

Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder

has accepted or rejected the Plan. All Claims and Debts shall be as fixed and adjusted pursuant

to this Plan. With respect to any taxes of the kind specified in Bankruptcy Code section 1146(a),

this Plan shall also bind any taxing authority, recorder of deeds or similar official for any county,

state, or governmental unit or parish in which any instrument related to under this Plan or related

to any transaction contemplated under this Plan is to be recorded including the transfer of any

property pursuant to the Orderly Sale Process.

**8.2    Revesting of Property Free and Clear.** Upon the Effective Date, title to all

Estate Assets will vest in the Reorganized Debtor for the purposes contemplated under the Plan

and will no longer constitute property of the Estate pursuant to section 541 of the Bankruptcy

Code. Upon the Effective Date, all Estate Assets will be free and clear of all Claims, Liens and

Interests, including Unsecured Claims to the full extent allowed by sections 1141(b) and (c) of

the Bankruptcy Code; *provided, however*, those Estate Assets that were subject to the CWF Deed

of Trust, the AVN Deed of Trust, and the Sotheby's Deed of Trust prior to the Petition Date will

be subject to the New CWF Deed of Trust, and the AVN Deed of Trust and Sotheby's Deed of

Trust, each as modified by the terms of the Plan. Following the Effective Date, the Reorganized

Debtor may use, acquire or dispose of any such property free of any restrictions imposed by the

Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules and without further approval of

the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan

and the Confirmation Order, and the New CWF Deed of Trust and New CWF Note, and the

AVN Deed of Trust, AVN Lease Documents, the Sotheby's Deed of Trust, and the Sotheby's

Settlement Agreement, each as modified by the terms of the Plan. For the avoidance of doubt,

the Debtor's property governed by the *Deed Gift of Easement*, dated December 14, 2007, among

CWF, Virginia Outdoors Foundation, and the Virginia Board of Historic Resources will remain

subject to the provisions thereof. Except as otherwise expressly provided in the Plan or

Confirmation Order, all rights or causes of action are hereby preserved and retained for

enforcement solely and exclusively by and at the discretion of the Reorganized Debtor.

**8.3    Discharge of Debtor.** Except with respect to the Assumed Obligations and as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims. Confirmation of the Plan shall discharge the Debtor and the Reorganized Debtor from all Claims or other debts that arose at any time before the Effective Date (other than the Assumed Obligations), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a Proof of Claim based on such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is Allowed under section 502 of the Bankruptcy Code; or (iii) the holder of a Claim has accepted the Plan. As of the Effective Date all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim as a liability of the Debtor or the Reorganized Debtor to the full extent permitted by section 524 of the Bankruptcy Code. For the avoidance of doubt, any discharge of the Debtor shall not serve as a discharge of Mr. Minor's personal obligations, except as provided in Section 8.6 hereof.

**8.4    Injunction.** The Confirmation Order shall be a judicial determination, effective on the occurrence of the Effective Date, of discharge and termination of all liabilities and of all claims against the Debtor and the Reorganized Debtor as provided in the Plan. On the Effective Date, and except as otherwise provided by the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Debtor's estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Reorganized Debtor with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Reorganized Debtor or any assets or property of the Reorganized Debtor with respect to any such

Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or

encumbrance of any kind against the Reorganized Debtor or any property of the Reorganized

Debtor with respect to any such Claim; (d) asserting, directly or indirectly any obligation against

the Reorganized Debtor or any property of the Reorganized Debtor with respect to any such

Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform

to or comply with the provisions of the Plan with respect to such Claim or Interest. Except as

otherwise provided in the Plan, no claims of the Debtor or Reorganized Debtor against any

person or entity shall be discharged, released, or compromised pursuant to the Plan or

Confirmation Order. For the avoidance of doubt, this provision shall not serve as an injunction

against parties with respect to claims subject to the obligation of Mr. Minor, except as provided

in Section 8.6 hereof.

     **8.5**    **Full and Final Satisfaction.**  Commencing upon the Effective Date, the

Reorganized Debtor or the Disbursing Agent, as applicable, shall be authorized and directed to

distribute the amounts required under this Plan to the holders of Allowed Claims according to the

provisions of the Plan. Upon the Effective Date, all Debts of the Debtor shall be deemed fixed

and adjusted pursuant to this Plan and the Debtor and the Reorganized Debtor shall have no

further liability on account of any Claims or Interests except as set forth in this Plan. All

payments and all distributions made by the Reorganized Debtor or the Disbursing Agent, as

applicable, under the Plan shall be in full and final satisfaction, settlement and release of all

Allowed Claims.

     **8.6**    **Limitation of Liability.**  The Debtor, the Reorganized Debtor and their

respective members, officers, directors, managers, employees, agents, and representatives

(collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for

any action in good faith taken or omitted to be taken in connection with or related to the Chapter

11 Case or the formulation, preparation, dissemination, implementation, Confirmation or

consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in

connection with the Plan or incident to the Chapter 11 Case, *provided, that,* this limitation will

not affect or modify the rights of any holder of an Allowed Claim to enforce its rights under the Plan or the non-debtor party to an Assumed Contract to enforce its rights under the Assumed Contract, nor shall the foregoing exonerate any of the Exculpated Parties from any liability that is determined that would otherwise result from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct. In addition, notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Exculpated Party for any act or omission in connection with, relating to or arising out of the Chapter 11 Case or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

## ARTICLE IX

## **RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

a) To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

b) To administer or enforce the Plan;

c) To liquidate any Disputed Claims;

d) To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

e) To hear and determine the Sale Procedures Motion and any and all motions for the rejection of executory contracts and unexpired leases and to fix and allow any Claims arising therefrom;

f) To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any other agreement, document or instrument contemplated by the Plan;

g) To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

h) To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

i) To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; and

j) To close the Chapter 11 Case when administration of the case has been completed.

**ARTICLE X**

**MISCELLANEOUS**

**10.1    Severability of Plan Provisions.**  In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**10.2    Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Virginia.

**10.3    Headings.** The headings contained in this Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Plan.

**10.4    Language Interpretation.** In the interpretation of this Plan, unless the context otherwise requires, references in this Plan to the singular shall be construed to include references to the plural and vice versa; words importing the singular shall be deemed to import the plural and vice versa; words denoting gender shall include all genders; references to sections, schedules, and exhibits shall mean sections, schedules, and exhibits of and to this Plan; references to part includes the whole, except where the context clearly requires otherwise; "or" has the inclusive meaning represented by the phrase "and/or," and the words "hereof," "herein," "hereunder," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan.

**10.5    Quarterly Fees to the United States Trustee.** All fees payable under 28 U.S.C. § 1930(a)(6), and interest and penalties payable under 31 U.S.C. § 3717, shall be paid by the Debtor in the amounts and at the times such amounts may become due up to and including the Effective Date. Thereafter, the Reorganized Debtor shall pay all fees payable under 28 U.S.C. § 1930(a)(6), and interest and penalties payable under 31 U.S.C. § 3717, until the Chapter 11 Case is closed, dismissed, or converted.

**10.6    Exhibits.** All exhibits attached to this Plan or the Disclosure Statement are, by this reference, hereby incorporated into the Plan. The final version of all exhibits to the Plan and the Disclosure Statement will be substantially in the forms attached hereto or thereto. The Debtor reserves the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing. If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

**10.7    Exemption from Transfer Taxes.**  Pursuant to the provisions of section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities, if any, under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Debtor or Reorganized Debtor to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including transfer by way of the Orderly Sale Process, will not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

**10.8    Notices.**  All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first class mail or via facsimile with electronic confirmation of receipt as follows:

> If to the Debtor:
> (By Mail or Facsimile)
>
> Halsey M. Minor
> Carter's Grove, LLC
> 3800 and 3810 Washington St.
> San Francisco, CA  94108
> (310) 275-0858 (Facsimile)
>
> With a copy to:
>
> Debra I. Grassgreen
> John W. Lucas
> Pachulski Stang Ziehl & Jones LLP
> 150 California Street, 15th Floor
> San Francisco, CA  94111
> (415) 263-7000
> (415) 263-7010 (Facsimile)
>
>      and
>
> Robert S. Westermann (VSB No 43294)
> Sheila deLa Cruz (VSB No. 65395)
> Hirschler Fleisher, P.C.
> The Edgeworth Building
> 2100 Cary Street
> Richmond, Virginia
> P.O. Box 500
> Richmond, VA 23218-0500
> (804) 771-9500

(804) 664-0957 (Facsimile)

**10.9    Reservation of Rights.**  Neither the filing of the Plan nor any statement or

provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in

interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission

against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any

party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any

other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In

the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the

Disclosure Statement, nor any statement contained in the Plan or in the Disclosure Statement,

may be used or relied upon in any manner in any suit, action, proceeding or controversy within

or without this Chapter 11 Case involving the Debtor, except with respect to Confirmation of the

Plan.

**10.10    Computation of Time Periods.**  In computing any period of time prescribed or

allowed by the Plan, the day of the act, event, or default from which the designated period of

time begins to run shall not be included.  The last day of the period so computed shall be

included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the

filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made

the clerk's office inaccessible, in which event the period runs until the end of the next day which

is not one of the aforementioned days.

**10.11    Defects, Omissions and Amendments.**  The Debtor, with the approval of the

Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not

materially and adversely affect holders of Claims, may correct any defect, omission or

inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to

expedite the execution of the Plan.  The Plan may be altered or amended before or after

Confirmation as provided in section 1127 of the Bankruptcy Code.

**10.12    Post-Confirmation Date Notices.**  From and after the date the Confirmation

Order becomes a Final Order, notices of appearances and demands for service of process filed

with the Court prior to such date shall no longer be effective. No further notices (other than notice of entry of the Confirmation Order) shall be required to be sent to any entities other than the Office of the U.S. Trustee and any party who files a renewed request for service of pleadings.

**10.13 Filing of Additional Documents.** The Debtor shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**10.14 Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

**10.15 Implementation.** Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

**10.16 Certain Actions.** By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, members, directors, managers, or officers of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable limited liability company and/or other applicable business entity laws of the state in which the Debtor or the Reorganized Debtor is chartered, organized or incorporated, without any requirement of further action by the owners, members, directors, managers, or officers of the Debtor.

Dated:    October 14, 2011                  CARTER'S GROVE, LLC

                                  By _____
                                      Halsey M. Minor,
                                      Trustee for the Halsey McLean
                                      Revocable Trust 11304

Dated:  October 14, 2011

Respectfully Submitted,

By:_____
     Robert S. Westermann (VSB No. 43294)
     Sheila deLa Cruz (VSB No. 65395)
     Hirschler Fleischer, P.C.
     The Edgeworth Building
     2100 East Cary Street
     Richmond, Virginia 23223
     P.O. Box 500
     Richmond, Virginia 23218-0500
     Phone: (804) 771-9500
     Facsimile: (804) 644-0957
     Email:  rwestermann@hf-law.com
            sdelacruz@hf-law.com

     and

     Debra I. Grassgreen (*pro hac vice*)
     John W. Lucas (*pro hac vice*)
     Pachulski Stang Ziehl & Jones LLP
     150 California Street, 15th Floor
     San Francisco, California 94111-4500
     Phone: (415) 263-7000
     Facsimile: (415) 263-7010
     Email: dgrassgreen@pszjlaw.com
           jlucaspszjlaw.com

     Counsel to the Debtor and Debtor in Possession

Dated:   October 14, 2011              CARTER'S GROVE, LLC

                                       By _____
                                          Halsey M. Minor,
                                          Trustee for the Halsey McLean
                                          Revocable Trust 11304

Dated:  October 14, 2011

Respectfully Submitted,

By: /s/ Robert S. Westermann          _____
      Robert S. Westermann (VSB No. 43294)
      Sheila deLa Cruz (VSB No. 65395)
      Hirschler Fleischer, P.C.
      The Edgeworth Building
      2100 East Cary Street
      Richmond, Virginia 23223
      P.O. Box 500
      Richmond, Virginia 23218-0500
      Phone: (804) 771-9500
      Facsimile: (804) 644-0957
      Email:  rwestermann@hf-law.com
              sdelacruz@hf-law.com

      and

      Debra I. Grassgreen (*pro hac vice*)
      John W. Lucas (*pro hac vice*)
      Pachulski Stang Ziehl & Jones LLP
      150 California Street, 15th Floor
      San Francisco, California 94111-4500
      Phone: (415) 263-7000
      Facsimile: (415) 263-7010
      Email: dgrassgreen@pszjlaw.com
             jlucaspszjlaw.com

      Counsel to the Debtor and Debtor in Possession