## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Bankruptcy Case No: 11-51330 |
| CARTER'S GROVE, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| THE COLONIAL WILLIAMSBURG | ) |
| FOUNDATION, | ) |
| | ) |
| Movant | ) |
| | ) |
| v. | ) |
| | ) |
| CARTER'S GROVE, LLC, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| | ) |

## <u>NOTICE</u>

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one)**

**If you do not wish the Court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within 14 days from the date of service of this motion, you must file a written response explaining your position with the Court and serve a copy on the movant. Unless a written response is filed and served within this 14-day period, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.**

**If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the expiration of the 14-day period.**

**You will be notified separately of the hearing date on the motion.**

**MOTION OF THE COLONIAL WILLIAMSBURG FOUNDATION FOR ENTRY OF
AN ORDER TO PROTECT AND PRESERVE CARTER'S GROVE EITHER THROUGH
(1) APPOINTMENT OF A CHAPTER 11 TRUSTEE, (2) CONVERSION OF THE CASE
TO CHAPTER 7, OR (3) AN ORDER GRANTING THE COLONIAL WILLIAMSBURG
FOUNDATION RELIEF FROM STAY TO FORECLOSE OR CONDITIONING THE
CONTINUANCE OF THE STAY ON THE DEBTOR PROVIDING ADEQUATE
<u>PROTECTION OF THE MANSION</u>**

The Colonial Williamsburg Foundation ("CWF"), by counsel, respectfully moves ("Motion") this Court for entry of an order that, in the judgment of the Court, will most appropriately provide for the protection of Carter's Grove and ensure that all necessary repairs and ongoing maintenance are timely performed, through one of the following forms of relief: (1) appointment of a chapter 11 trustee; (2) conversion of this chapter 11 case to a case under chapter 7; or (3) granting relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1) permitting CWF to foreclose on it first priority liens in its collateral, or requiring the Debtor to provide adequate protection through the immediate funding and completion of necessary repairs and ongoing maintenance. Each proposed remedy is an alternative mechanism to protect the historic mansion located at Carter's Grove (the "Mansion") from further deterioration as the result of the Debtor's failure to maintain and repair the structure, including without limitation the Debtor's failure to repair the flashing that the Debtor knew required extensive repairs when the Debtor originally purchased the property from CWF nearly four years ago.

**I**

**<u>JURISDICTION AND VENUE</u>**

1.      This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory basis for the relief requested herein is sections 1104, 1112, 362(d) and 361 of the United States Bankruptcy Code, 11 U.S.C., 101, <u>et</u> <u>seq</u>.

## II

## BACKGROUND

**A.      Debtor's Filing of Chapter 11 Case and Venue Transfer.**

3.      On February 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of California ("California Bankruptcy Court") (Case No. 11-30554).  On July 14, 2011, venue of the chapter 11 case was transferred from the California Bankruptcy Court to this Court.

**B.      The Parties and the Property.**

4.      The Debtor bought the real property commonly known as "Carter's Grove" (the "Property") which consists of 406.9 acres of real property and the Carter's Grove Mansion (the "Mansion), from CWF in December of 2007.  The Mansion was built from 1750 to 1755 and stands as a significant example of Georgian-style and Colonial Revival-style architecture.  The Mansion has been designated a National Historic Landmark and is listed on the National Register of Historic Places and the Virginia Landmarks Register.  The Mansion is noted among historians and architects for its exquisite brickwork and finely crafted, fully-paneled interior.  See, National Park       Service,       "James       River       Plantations:       Carter's       Grove," http://www.nps.gov/nr/travel/jamesriver/car.htm.

5.      The Debtor was "formed for the sole purpose of holding title to Carter's Grove." Disclosure Statement In Support of Amended Plan of Reorganization of Carter's Grove, LLC [Docket No. 79] ("Disclosure Statement"), p. 1.  The Debtor owns a single asset:  the Property and the improvements thereon, including the Mansion.  The sole member of the Debtor is the Halsey McLean Minor Revocable Trust 110304 ("Minor Trust").  According to the Disclosure Statement, Halsey Minor "is the sole member of the Minor Trust, the designated manager of the Debtor, and the sole beneficiary of the Minor Trust." Disclosure Statement, p. 15.  At least since the Petition Date, the Property and the Mansion have "been under the direct supervision of

Mr. Minor and certain of his employees, two of whom live on the [Property]." Disclosure Statement, p. 20.

6.      The Debtor acquired the Property subject to an easement designed to insure the preservation of the historic Mansion, including without limitation, the irreplaceable original material in the Mansion. A true and correct copy of the easement is attached hereto as Exhibit "A", and incorporated herein by this reference (the "Easement"). The easement describes the "Conservation Values of the Property" as including "the historic and architectural value of the Mansion and other historic structures. . . ." Easement Section I. The Easement obligates the Debtor to preserve the Mansion:

> Grantor agrees at all times to maintain the interior and exterior architectural elements of the Mansion in good repair such that the physical integrity of its historic features is not compromised. Grantor's obligation to maintain the Mansion shall include replacement, repair, and reconstruction by Grantor whenever necessary to preserve the 18th- and 20th-Century Mansion Exterior and Mansion Interior Features (defined and identified in Exhibit B).

Easement, Section II.A. (emphasis added). The Mansion interior features to be preserved are described in Section II.A.1.c. and include the 18th-Century woodwork described therein.

7.      The Easement was recorded and runs with the land. Therefore, when the Debtor bought the Property it knowingly assumed the obligation to comply with the Easement. The violation of the easement also constitutes an Event of Default under CWF's Deed of Trust, paragraph 4(e) at page 8. The Deed of Trust also contains a separate covenant providing that the Debtor "shall keep and maintain the Premises in good condition, order and repair . . . ." Deed of Trust paragraph 1(m), at page 4.

**C.      The Debtor's Commitment to Repair the Flashing to Prevent Water Damage.**

8.      When the Debtor purchased the Property from CWF, the parties agreed that flashing repair work was necessary to prevent leaks and to protect the historic Mansion. The estimated cost of the repair work was more than $400,000. The Debtor offered to "arrange for the repairs immediately" after the sale closed, if CWF would give the Debtor a credit against the

purchase price for the estimated cost. A true and correct copy of the letter offering to make immediate repairs is attached hereto as Exhibit "B" and incorporated herein by this reference. The parties then agreed to reduce the purchase price for the Property by $200,000 (approximately 50% of the estimated flashing repair cost), in reliance on the Debtor's proposal to "arrange for the repairs immediately" after the sale closed. The purchase closed in December 2007. As of the date hereof, the Debtor has not commenced, much less completed, the flashing repair work.

**D. The Debtor Defaulted Because it Has Never Had an Independent Source of Cash.**

9. As part of the purchase price for the Property, the Debtor delivered to CWF a promissory note in the amount of $10,300,000, payable in six bi-annual payments, commencing July 15, 2008 and running through January 15, 2011. That note is secured by a first priority deed of trust on the Property. True and correct copies of the note and the deed of trust are attached hereto as Exhibits "C" and "D," respectively, and incorporated herein by this reference. The Debtor made the first four payments under the note, but failed to make the payments due on July 15, 2010 or January 15, 2011. Disclosure Statement, p. 16. The Debtor's failure to make those payments appears to be the direct result of financial difficulties encountered by Mr. Minor. The Disclosure Statement states that during the prepetition period Mr. Minor experienced significant liquidity issues, which caused the Debtor to default. Disclosure Statement, p. 19. The current balance due to CWF exceeds $4.1 million, with interest and attorneys' fees continuing to accrue under the note.

10. The Debtor has never had any operations or any independent cash flow. It has always been entirely dependent upon Mr. Minor to fund its expenses, including without limitation, property taxes, payments to CWF, and the costs of maintaining and repairing the Mansion. The Debtor agreed to: (1) perform $400,000 of flashing repair work, (2) insure and

maintain the Mansion, as mandated by the Easement, (3) pay the balance of the purchase price reflected by the note payable to CWF, and (4) pay property taxes as they accrued. The Debtor's sole source of cash to pay its expenses is Mr. Minor.

**E.     The Debtor Incurred Fraudulent Debts and Made Fraudulent Transfers for the Sole Benefit of Mr. Minor When He Encountered Financial Difficulties.**

11.     At some point during 2009 (or earlier) Mr. Minor encountered significant financial difficulties. On the California Franchise Tax Board's website, Mr. Minor is listed as the individual taxpayer with the largest delinquency in the State, owing a total of $14,247,341.09. See, http://www.ftb.ca.gov/individuals/txdlnqnt.shtml. The website indicates that a lien was filed against him in July of 2009. The unpaid taxes must, therefore, be for tax years prior to 2009.

12.     Mr. Minor renegotiated his aircraft lease with AVN Air, LLC ("AVN") effective February 1, 2010. See, Disclosure Statement, p. 16-17. This restructuring is an indication that Mr. Minor's financial difficulties date back to at least this time period. On February 1, 2010, Mr. Minor caused the Debtor to guarantee the payment due to AVN under the re-negotiated aircraft lease for up to $5 million, and to grant AVN a second priority deed of trust on the Property to secure that guarantee.

13.     Granting the AVN deed of trust was a willful breach of the covenant contained in CWF's deed of trust, which barred the granting of junior liens on the Property. See, Exhibit "D", paragraph 1(u) at page 6 (the Debtor "shall not . . . transfer [or] assign . . . the Premises . . . or any interest therein, without the prior written consent of [CWF] . . ..") It was also a fraudulent transfer, because as of the date Mr. Minor caused the Debtor to guaranty his debts and to grant the AVN deed of trust, the Debtor had no cash with which to pay its own obligations, much less the obligations being assumed under the guarantee. As a result, the Debtor knew or should have known that it would default under its obligations when it executed the guarantee and the AVN deed of trust. Indeed, the Debtor had already defaulted on its obligation to perform the flashing

repair work. Moreover, the Debtor failed to perform every major obligation that came due after it guaranteed Mr. Minor's personal debt to AVN. The Debtor defaulted on the very next property tax installment due on the Property in June 2010, as well as the next installment due to CWF on July 15, 2010. The Debtor has not paid any property taxes or any installments due to CWF on its note since guaranteeing Mr. Minor's personal debt to AVN.

14.     The Debtor received no consideration for the AVN guarantee or deed of trust. The AVN guarantee and deed of trust are an example of Mr. Minor using the Debtor's assets for his own personal benefit, to the direct detriment of the Debtor's creditors.

15.     Mr. Minor repeated this pattern of self-dealing on February 14, 2011, when he granted a third priority deed of trust on the Property to Sotheby's, Inc. ("Sotheby's"). The Sotheby's deed of trust and the Debtor's guarantee of Mr. Minor's personal debts to Sotheby's were executed on the very same day the above-captioned chapter 11 case was filed. As of that date, in addition to its existing defaults on its obligation to perform the extensive flashing repair work, to make payments to CWF, and to keep property taxes on the Property current, the Debtor had failed to pay its employees and payroll withholding taxes to the IRS and had allowed the insurance on the Property to lapse. <u>See, Amended Schedules</u> [Dkt. No. 7] at Doc. No. 18 (*originally filed in California Bankruptcy Court, Case No. 11-30554).*[1] The Debtor received no consideration in exchange for its promise to pay Mr. Minor's personal debts to Sotheby's and, when it incurred this obligation, it was not meeting its own debts as they became due. It still had no independent source of cash flow and the sole source from which it had ever received cash to meet its debts (Mr. Minor) was having such severe financial difficulties that he was wrongfully committing the Debtor to pay his personal debts.

16.     Like the AVN deed of trust, the Sotheby's deed of trust constituted a willful breach of the anti-encumbrance covenant in CWF's deed of trust. <u>See</u> Exhibit "D", paragraph 1(u) at page 6.

---

[1]     It appears that Mr. Minor provided the Debtor with the cash needed to pay its employees and for insurance after the petition was filed, but as of the time the Sotheby's deed of trust was granted the Debtor had no cash to pay these most basic operating expenses.

17.    The foregoing guarantees and transfers are obvious examples of Mr. Minor's conscious decision to cause the Debtor to pledge its only asset to secure the repayment of his personal obligations at a time when he lacked sufficient cash to ensure that the Debtor was able to meet its obligations to its legitimate creditors – including, most importantly, preserving and maintaining the Mansion.

**F.    Debtor's Neglect and Mismanagement of Carter's Grove and Ongoing Threat of Irreparable Harm to Historic Exterior Brickwork and Interior Woodwork of Carter's Grove.**

18.    The critical lack of cash to repair and maintain the Mansion has continued throughout the chapter 11 case.  The Debtor has failed to repair or maintain the Mansion, including failing to commence the flashing work that it knew required immediate repair at the closing of the transaction in December 2007 - nearly four years ago.

19.    In March of 2011, CWF inspected the Mansion and provided the Debtor with an inspection report demonstrating that there was an extensive amount of work that needed to be performed to protect the Mansion against water damage (the "March Inspection Report").  A true and correct copy of the March Inspection Report is attached hereto as Exhibit "E" and incorporated herein by this reference.  The issues reflected in the March Inspection Report included the following, each of which relates directly to prevent water damage to the Mansion and the woodwork therein: (1) the flashing work the Debtor agreed to perform when it bought the Property 4 years ago, (2) repairs to the tiles and replacement of missing tiles on the slate roof, (3) repairing the stair dormers, (4) repairing deteriorating and partially missing bricks on the east wing, joints under the window sills and open cracks and joints, and (5) repairing, cleaning and inspecting all of the rain gutters and drains to prevent back-ups or the water inundation of porous brick work.  In addition, extensive HVAC maintenance and repairs are required to eliminate fluctuations in the temperature and humidity in the Mansion, which can damage the colonial period woodwork   A copy of the March Inspection Report was provided to Debtor's counsel with a request that the Debtor provide CWF with a repair plan.  In March of 2011, the Debtor represented that it would promptly (1) engage an expert to analyze the work required at the

Mansion and the March Inspection Report prepared by CWF, and (2) respond to CWF's demand that the Mansion be maintained.

20.     A significant number of the necessary repairs identified in the March Inspection Report were time sensitive, because the failure to perform the work was resulting in ongoing water damage to the Mansion and potential damage to the irreplaceable colonial period woodwork and plaster in the Mansion.  As of September 2011, the Debtor had neither performed the work nor responded with a plan delineating when it would perform the work or how it would pay for the work.

21.     CWF inspected the Property again in September of 2011 and generated another inspection report (the "September Inspection Report").  A true and correct copy of the September Inspection Report is attached hereto as Exhibit "F" and incorporated herein by this reference. The September Inspection Report demonstrated that many of the issues reflected in the March Inspection Report were becoming more critical and required immediate redress before the onset of the winter season.  All of the items listed above from the March Inspection Report are also reflected as still needing to be completed in the September Inspection report.

22.     CWF's counsel sent Debtor's counsel a copy of the September Inspection Report and requested that the Debtor immediately address the issues reflected therein.  The Debtor responded to the September Inspection Report with complete disdain.  The Debtor refused to commit to perform any of the work identified in the September Inspection Report – even the flashing repair work that it had agreed to perform in December 2007.  Rather, the Debtor informed CWF that the Debtor contended that maintaining or preserving the Mansion would supposedly require the destruction of evidence.  A true and correct copy of the Debtor's response is attached hereto as Exhibit "G" and incorporated herein by this reference.

23.     CWF inspected the Property again on October 24, 2011.  On October 26, 2011, CWF delivered an additional demand to the Debtor together with a copy of the October inspection report (the "October Inspection Report").  A true correct copy of the October 26 letter, including the October Inspection Report, is attached hereto as Exhibit "H" and incorporated

hereby by this reference.  CWF requested a response to its concerns regarding preservation of the Mansion no later than November 2, 2011.  The Debtor has failed to respond.

24.     With another winter quickly approaching, the next few weeks represent the last opportunity to address some of the more significant issues at Carter's Grove.  The failure to correct some of the problems will result in continued leaks throughout the winter months, which will likely cause irreparable damage to the interior.  Carter's Grove is prized both for its exterior brickwork and for its elaborate, interior wood work.  Damage to the historic structure could have long-term impacts that cannot be remedied.

25.     The foregoing facts demonstrate that:

a.     The Debtor is not adequately maintaining the Mansion;

b.     Failure to repair the leaks that currently exist, including, without limitation, the flashing problems that the Debtor committed to repair when it first bought the Property nearly four years ago, will reduce the value of the Mansion and could destroy colonial period original material, including woodwork that cannot be replaced;

c.     The Debtor does not have any cash at the present time with which to fund the necessary repairs;

d.     When Mr. Minor encountered his own financial difficulties, he abandoned the Debtor, failing to provide it with the cash needed to perform its obligations under the original purchase contract or to pay property taxes, and he forced the Debtor to guarantee his personal debts and to pledge the Debtor's sole asset to secure his personal debts (in willful violation of the Debtor's commitments under the CWF deed of trust).  The Debtor received no consideration for its agreement to guarantee Mr. Minor's debts to AVN and Sotheby's, which it made when it had no cash and no ability to pay its own debts; and

e.     Although the Debtor has proposed a plan of reorganization, that plan is not feasible because it is entirely dependent on Mr. Minor contributing enough cash to the Debtor to fund all creditor payments due under the plan and to fund the repair, insurance, upkeep and maintenance of the Property.  Mr. Minor has provided no evidence that he has the cash necessary

to fund these significant obligations.  Rather, the success of Mr. Minor's plan depends upon the success of a speculative future liquidity event.  The Mansion continues to deteriorate pending Mr. Minor's hoped for liquidity event, because the Debtor simply does not have the cash needed to secure the Mansion from further water damage.

## III

## RELIEF REQUESTED

26.     Based upon the foregoing facts, CWF requests that this Court enter an order that protects the Mansion from any further damage resulting from the Debtor's neglect and failure to perform its obligations to maintain and preserve the historic Mansion.  Such protection of the Mansion can be provided by (a) the appointment of a chapter 11 trustee, (b) the conversion of the Debtor's bankruptcy case to a case under chapter 7, or (c) granting CWF relief from the stay to foreclose on the Debtor.  An independent third party trustee could prevent further damage to and deterioration of the Mansion.  If this Court orders the appointment of an independent third party trustee or the conversion of the case to a chapter 7, CWF will fund the reasonable costs of repairs to and maintenance of the Mansion through protective advances to the trustee secured by CWF's first priority deed of trust.  Alternatively, CFW should be granted relief from the automatic stay to foreclose or the continuation of the automatic stay should be conditioned on the Debtor providing adequate protection pursuant to Bankruptcy Code § 361, by performing immediately all repairs necessary to preserve the Mansion and continuing to maintain the Mansion going forward, in accordance with a schedule to be established by the Court.

## IV

## ARGUMENT

**A.     The Appointment of a Chapter 11 Trustee is Appropriate.**

27.     Bankruptcy Code Section 1104(a) states that a court <u>shall</u> appoint a trustee for any of the three following reasons:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current

management, either before or after the commencement of the case, or similar cause…;

> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate…; or

> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

28.     The general rule in a chapter 11 case is that a debtor remains in possession of, and continues to operate, its various assets and performs most of the functions and duties that would be served by a trustee appointed under chapter 11 of the Bankruptcy Code.  See 11 U.S.C. § 1107(a).   Even though appointment of a chapter 11 trustee is generally considered an extraordinary remedy, under § 1104(a)(1), if cause is found appointment of a chapter 11 trustee is mandatory.  In re Funge Systems, Inc., 2002 Bankr. LEXIS 1937 (Bankr. E.D. Va. October 17, 2002) (citing In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998)); In re Plaza De Retiro, Inc., 417 B.R. 632, 640 (Bankr. D.N.M. 2009).

29.     Courts have the discretionary authority to determine if cause exists. Comm. Of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 242 (4th Cir. 1987).  Grounds to appoint a chapter 11 trustee are set forth in section 1104(a)(1), and include incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case.  In re Ricco, Inc., 2010 Bankr. LEXIS 1916 (Bankr. N.D. W. Va. June 28, 2010); Gomez v. United States, 2010 U.S. Dist. LEXIS 14403, 4-5 (W.D. Va. Feb. 18, 2010); In re Daily, 2009 Bankr. LEXIS 3337 (Bankr. M.D. Tenn. Oct. 19, 2009) (citing In re The 1031 Tax Group, LLC, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007)).  The Fourth Circuit has held that section 1104(a) should be flexibly applied because the "concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide spectrum of conduct." Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 242 (4th Cir. 1987).

30.     In making the determination about whether "cause" exists, courts have considered the materiality of any misconduct, the debtor-in-possession's evenhandedness or lack thereof in

dealings with insiders and affiliated entities in relation to other creditors, the existence of pre-petition voidable preferences or fraudulent conveyances, whether any conflicts of interest on the part of the debtor-in-possession are interfering with its ability to fulfill its fiduciary duties, and whether there has been self-dealing or squandering of estate assets. In re Nartron Corp., 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005); Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.), 838 F.2d 1133 (10th Cir. 1988); In re Sharon Steel Corp., 871 F.2d 1217, 1228 (3rd Cir. 1989); In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3rd Cir. 1998); Cajun Electric Power Coop. v. Central Louisiana Electric Coop. (In re Cajun Electric Power Coop.), 74 F.3d 599, 600 (5th Cir. 1996); and Lowenschuss v. Selnick (In re Lowenschuss), 171 F.3d 673 (9th Cir. 1999)).   Ample cause exists in this chapter 11 case for the appointment of a chapter 11 trustee.

31.    Mr. Minor's mismanagement of the Debtor has been ongoing and significant and has resulted in the material risk of irreparable harm to the Debtor's only asset – Carter's Grove. Substantial evidence exists regarding the myriad of repair and maintenance issues that imminently threaten to irreparably harm the Mansion.  Even assuming arguendo that the Debtor presently had access to sufficient cash to repairs the historic Mansion, there is little reason for this Court to believe that the necessary work would be completed in the short order that is required given the immediacy of the problems.  Mr. Minor has yet to fund the Debtor's repair of the flashing that the Debtor knew required immediate repair at the closing of the transaction in December 2007 – nearly four years ago.  Why then should the Court believe that Mr. Minor will fund the critical repair work necessary to preserve the Mansion?

32.    Similar actions have justified the appointment of a chapter 11 trustee pursuant to Bankruptcy Code section 1104(a)(1) in other cases.  See, e.g., In re TP, Inc., 2011 Bankr. LEXIS 1464 (Bankr. E.D.N.C. Apr. 21, 2011) (appointing chapter 11 trustee where debtor was alleged to have failed to properly manage the collateral, including by failing to keep the collateral insured and pay property taxes on the collateral); Kwitchurbeliakin, LLC v. Laporte Sav. Bank, 2011 U.S. Dist. LEXIS 2851, 14-15 (N.D. Ind. Jan. 10, 2011) (affirming appointment of

chapter 11 trustee in a case where debtor failed to pay debt service or provide certain documents to secured creditor, pay real estate taxes and make necessary repairs to property).

33. Courts also have found that cause exists to appoint a chapter 11 trustee under section 1104(a)(1) when the Debtor's management has an actual conflict of interest. See e.g., In re Funge Systems, Inc., 2002 Bankr. LEXIS 1937 at *17-19. Courts generally focus on whether a conflict of interest on the part of the Debtor's management interferes with its ability to fulfill its fiduciary duties to the debtor and the debtor's estate. Id. 2002 Bankr. LEXIS 1937 at *17 (citing In re Intercat, Inc., 247 B.R. 911, 922). Mr. Minor's granting junior liens against the Property to secure his personal debts in direct violation of the deed of trust granted to CWF and to the detriment of the Debtor's legitimate creditors constitutes additional "cause" to appoint a chapter 11 trustee in this case. These transfers are particularly troublesome because the Debtor received no consideration and Mr. Minor caused the Debtor to guarantee his personal debts when the Debtor was not paying and had no ability to pay its own debts as they came due. These transfers give rise to an actual conflict of interest and interfere with Mr. Minor's ability to fulfill his fiduciary duties to the debtor and the debtor's estate. A trustee must be appointed in this case to analyze these likely fraudulent conveyances, as Mr. Minor cannot be expected to do so. See, In re Veblen West Dairy, LLP, 434 B.R. 550 (Bankr. D.S.D. 2010) (creditors had established cause for appointment of chapter 11 trustee under section 1104; independent entity needed to assess case for possible voidable pre-petition preferences and fraudulent or constructively fraudulent conveyances); Sharon Steele, 871 F.2d at 1221 (bankruptcy court determined that "sum" of DIP's behavior "amounted at best to voidable preferences and at worst to fraudulent conveyances" and that debtor could not continue to operate under current management); In re William H. Vaughan & Co., 40 B.R. 524 (Bankr. E.D. Pa. 1984) (appointing trustee where corporate debtor in possession fails to act to avoid probable preferential transfer to debtor's president; it is not necessary that every element of preference be proven in order to show that trustee should be appointed).

**B.** **Grounds Exist to Convert This Chapter 11 Case to Chapter 7 Pursuant to Bankruptcy Code Section 1112 or to Appoint a Chapter 11 Trustee Pursuant to Bankruptcy Code Sections 1112 and 1104(a)(3) .**

34.    Bankruptcy Code section 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

35.    Section 1112(b)(4) includes a list of examples of "cause," including the substantial or continuing loss to or diminution of the estate and gross mismanagement of the estate. Id. at (A)-(P).[2]   Courts, however, have wide discretion in determining what constitutes cause. In re Products International Co., 395 B.R. 101 (Bankr. D. Ariz. 2008).  "Although the language of section 1112(b) provides a list of possible circumstances for 'cause,' this is not an exhaustive list, and in fact the court is not limited to the enumerated grounds for making its determination of some cause." In re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990) (internal quotation marks and citation omitted).  Thus, in determining cause under § 1112(b), the bankruptcy court "may consider other factors as they arise and use its powers to reach appropriate results in individual cases." Id.

36.    Conversion of this case is appropriate under Bankruptcy §1112(b) for the same reasons and on the same grounds that the appointment of a chapter 11 trustee is warranted under §1104(a).  See, e.g., In re TP, Inc., 2011 Bankr. LEXIS 1464, 9-10 (Bankr. E.D.N.C. Apr. 21, 2011) ("Obviously, there is substantial overlap between § 1104(a)(1) and the factors determining whether the court should, under § 1112(b)(1), convert or dismiss for cause.").  Specifically, the Debtor, through its ultimate owner and sole manager Mr. Minor, has failed to protect and

---

[2]   One ground is sufficient, standing alone, to establish cause under the statute.  In re Reagan, 403 B.R. 614 (B.A.P. 8th Cir. 2009), aff'd, 374 F. App'x 683 (8th Cir. 2010); 7 Alan N. Resnik, Collier on Bankruptcy § 1112.04[5] (16th ed. 2011) ("[i]f one of the enumerated examples of cause set forth in section 1112(b)(4) is proven by the movant by a preponderance of the evidence, the court must find that [the] movant has established cause").

preserve the Debtor's only asset to the detriment of the Debtor's creditors. Further, Mr. Minor caused the Debtor to make avoidable fraudulent transfers that violated specific restrictions in CWF's deed of trust and were of no benefit to the Debtor. The liens granted to AVN and Sotheby's benefitted only Mr. Minor and were made when the Debtor was unable to pay its debts as they became due and owing.

37.     Finally, conversion under Bankruptcy Code section 1112 is warranted because this chapter 11 case involves a debtor with no business operations, no income, and <u>no meaningful prospects for rehabilitation</u>. A chapter 7 trustee can maintain and market the Property. The success of the Debtor's chapter 11 plan depends upon the speculative commitment of Mr. Minor to fund all of the payments due under the plan as well as the ongoing expenses associated with the repair and ongoing maintenance of the Property. There is no evidence that Mr. Minor has the financial wherewithal to make these contributions to the Debtor's reorganization efforts or that the necessary funds will be readily available when needed. Indeed, the Debtor has not even attempted to estimate the cost of repairing the Mansion.

38.     Other courts have found that speculative plans dependent on future liquidity events cannot be confirmed. <u>See</u>, <u>e.g.</u>, <u>In re Om Shivai, Inc.</u>, 447 B.R. 459 (Bankr. D.S.C. 2011) (finding cause for conversion of dismissal existed under §1112 where the debtor had proposed through its plan to pay significantly more to its creditors than it had shown the ability to pay in the past, the debtor's principal asset required significant repairs and, under such circumstances, the court concluded that the debtor's plan did not present a workable scheme with a reasonable expectation of success); <u>In re Whitney Lake, LLC</u>, 2009 Bankr. LEXIS 4273 (Bankr. D.S.C. May 5, 2009) (finding cause for conversion or dismissal existed under §1112 where debtor did not have sufficient cash to meet its basic operating expenses and could not demonstrate ability to access funds necessary to fund projected payments under a plan, but electing to appoint appointing chapter 11 trustee).

39.     The Court cannot wait until the confirmation hearing to address the absence of funding because the Debtor's lack of cash is resulting in the risk of immediate irreparable

damage to the irreplaceable wood work in the Mansion. The repairs needed at the Mansion are time sensitive because the Debtor has chosen to do nothing to repair the existing leaks for many months and in some cases for the four years since the Debtor bought the Property. Waiting until after winter storms to determine whether Mr. Minor might be able to raise cash at some point in the future is simply not a practical option.

40.     Based on the foregoing, cause to convert this chapter 11 case to chapter 7 exists. This Court can either convert this chapter 11 case to a chapter 7 case or, based on the existence of such cause, this Court can appoint a chapter 11 trustee. Bankruptcy Code section 1104(a)(3) states that a chapter 11 trustee should be appointed if grounds exist to convert or dismiss the case under Bankruptcy Code section 1112, <u>but the court determines that the appointment of a trustee is in the best interests of creditors and the estate.</u>

41.     When read together, Bankruptcy Code sections 1112(b)(1) and 1104(a)(3) allow this court to consider alternative remedies. <u>In re Products</u>, 395 B.R. at 108. "If cause has been shown by the moving party, the [c]ourt must consider whether to dismiss the case, convert the case to one under Chapter 7, or appoint a Chapter 11 trustee, whichever results in the best interest of creditors." <u>Id</u>.; <u>see also</u> <u>In re TP, Inc.</u>, 2011 Bankr. LEXIS 1464 (Bankr. E.D.N.C. Apr. 21, 2011) ("'Section 1112 and Section 1104 read together require the court to make a finding as to what remedy is in the best interest of the creditors and the estate.'") (quoting <u>In re Sydnor</u>, 431 B.R. 584, 600 (Bankr. D. Md. 2010)); <u>In re LG Motors, Inc.</u>, 422 B.R. 110 (Bankr. N.D. Ill. 2009) (§1104(a)(3) gives the court discretion to appoint a trustee instead of converting or dismissing the case if the court determines the appointment is in the best interest of the creditors and the estate); 7 <u>Collier on Bankruptcy</u> § 1112.04[7] (once cause has been shown, instead of either conversion or dismissal, a court may appoint a trustee if such appointment is in the best interest of the creditors and the estate). The court is charged with determining which approach is appropriate based upon the record in the case. <u>In re Products</u>, 395 B.R. 101.

42.     An independent third party trustee will be able to ensure that the Property is properly repaired and maintained, and that the prepetition transfers to AVN and Sotheby's (and

any additional issues that may not yet be known) are properly investigated and addressed. Whether the trustee is a chapter 11 trustee or a chapter 7 trustee is not critical: either remedy will assure that an independent third party can protect the Mansion and investigate Mr. Minor's fraudulent transfers and self-dealing.

**C.    Alternatively, the Court Should Grant CWF Relief From the Automatic Stay to Foreclose on the Property Pursuant to Bankruptcy Code § 362(d)(1) or Condition the Continuation of the Stay on the Debtor Providing Adequate Protection.**

43.    The Debtor's pattern of failing to maintain the Mansion justifies granting relief from the automatic stay to allow CWF to foreclose on its first priority lien on the Property pursuant to Bankruptcy Code section 362(d)(1).

44.    Section 362(d) sets forth the grounds for relief from the stay:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

45.    A party is entitled to relief under section 362(d)(1) for "cause," which includes lack of adequate protection of an interest in property.  The secured creditor "must, therefore, prove this decline in value – or the threat of a decline – in order to establish a prima facie case." In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (collecting cases) (emphasis added).   The erosion, or threatened erosion, of a secured creditor's position "may be shown through evidence of declining property values, the increasing amount of the secured debt through interest accruals or otherwise, the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position." In re Anthem Communities, 267 B.R. 867, 870-871 (Bankr. D. Colo. 2001) (emphasis added).

46. The Debtor has failed to adequately maintain the Mansion by failing to make necessary repairs.[3] Accordingly, the current condition of the Property and its potential to further deteriorate has left CWF in a precarious position such that it is not adequately protected. Worse still, the Debtor has not indicated that it has either the willingness or the means to make any of the repairs or perform any of the ongoing maintenance at the Property.

47. By demonstrating that the Debtor's failure to maintain the Property has resulted in, or at the very least threatens to result in, significant harm to the value of the Property, CWF has met its burden of proof for relief from stay under Bankruptcy Code section 362(d)(1). See, 3 Collier on Bankruptcy § 362.10 (16th ed. 2011) ("if a movant relies on a lack of adequate protection as grounds for relief, the movant must demonstrate a decline or a threatened decline in the value of the collateral. Once the moving party makes this showing, the burden of going forward and the ultimate burden of persuasion shift to the party opposing the relief…") (citing Elmira Litho, 174 B.R. 892). Accordingly, courts have granted relief from stay to secured creditors under Bankruptcy Code section 362(d)(1) in other cases where the movant has demonstrated that the debtor has failed to maintain the collateral in good repair and that such failure either has harmed or threatens to harm the value of the collateral. See, e.g., In re Strug-Division LLC, 380 B.R. 505, 515 (Bankr. N.D. Ill. 2008) (granting relief from stay under section 362(d)(1) where "the properties are in need of substantial repairs to improve them and the capital to pay for repairs is not available"). see also, In re Carson, 30 B.R. 637, 642 (Bankr. D. Kan. 1983) (granting relief from stay to secured creditor where debtor had failed to pay for needed repairs to the property, had failed to protect the property from further deterioration or vandalism

---

[3] In addition, the Debtor has not made a debt service payment to CWF since January 15, 2010. Interest at the default rate of prime plus 4% (7.25% today) per annum continues to accrue on the debt, as do fees and costs associated with the collection of such amounts in this case. While the Debtor has asked this Court to confirm a plan that reduces this rate that reduction should not be permitted in light of the fact that Mr. Minor has guaranteed the debt, including the interest rate and but for the fraudulent transfers intended to benefit his personal creditors the Debtor would be solvent. The Debtor has failed to pay property taxes with respect to the Property, which increases the senior lien on the Property. All of these amounts have eroded CWF's position with respect to the Property such that it is not adequately protected in the Property.

and had failed to pay insurance, taxes, or utilities with respect to the property; stating that "equity cushion may not provide adequate protection when the property is depreciating and interest is accumulating, because at some point, the cushion will be dissipated"); but cf. In re Budryk, 2009 Bankr. LEXIS 1253 (Bankr. D. Mass. May 18, 2009) (movant failed to establish prima facie case where debtor provided evidence of significant repair and rehabilitation work to the property in the postpetition period and a reasonable prospect of funding a plan).

48.     The burden shifts to the Debtor to show that it has a plan to protect the Mansion from further damage and the funds to pay for the necessary repairs. If it does not present both a concrete repair plan and proof of funding, then the Debtor cannot provide adequate protection.

49.     If the Debtor provides a maintenance and repair plan that the Court deems adequate and proof that the Debtor can fund the required repairs, then the Debtor should be ordered to complete the required repairs promptly to provide adequate protection. Relief from the stay should be granted immediately if the Debtor does not present a viable repair plan and proof it has the cash to pay for the necessary work, or if the Debtor presents such a plan and proof of available cash, but then fails to perform all required repairs in the time frame promised.

50.     The Debtor must be compelled, as the bare minimum necessary to provide adequate protection as required by Bankruptcy Code Sections 361 and 362(d)(1), to perform all repairs necessary to preserve the Property and to maintain the Property going forward in accordance with a schedule to be established by the Court. See, In re May, 2002 Bankr. LEXIS 1847, 2002 WL 32114562, *3 (Bankr. E.D. Ark. 2002) (holding that a creditor is entitled to adequate protection against factor's jeopardizing its collateral, such as failure to maintain or insure the collateral). CWF submits that the Debtor should only be permitted to continue to enjoy the protections afforded by the automatic stay if the Debtor is adequately protecting its only asset, the Property, by ensuring that it is repaired and maintained, thereby protecting it against damage and deterioration. See, e.g., In re Las Vegas Monorail Co., 429 B.R. 317, 341-342 (Bankr. D. Nev. 2010) (citing cases wherein courts have found that a debtor's use of cash collateral to maintain properties to be an appropriate form of adequate protection). The Debtor

must present a concrete schedule to perform the needed repairs in a set time and proof of the cash needed to pay for the repairs. If it provides these initial indications of a willingness and ability to prevent further harm to the Mansion, the Debtor should be required to provide monthly reports proving actual completion of the promised repair and maintenance work to the Court and CWF.

## V

## NOTICE

51.     Notice of this Motion will be given to (a) counsel for the Debtor, (b) the Office of the United States Trustee; and (c) the secured and unsecured creditors of the Debtor and/or their known counsel.

## VI

## WAIVER OF MEMORANDUM OF LAW

52.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Motion and all applicable authority is set forth in this Motion, CWF requests that the requirement that all motions be accompanied by a separate written memorandum of law be waived.

## VII

## CONCLUSION

**WHEREFORE**, The Colonial Williamsburg Foundation respectfully prays that this Court enter an order that, in the judgment of the Court, most appropriately protects the Property either by: (1) appointing a chapter 11 trustee; (2) converting this case to a case under chapter 7 of the Bankruptcy Code; or (3) granting CWF relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1) to foreclose on the Property or conditioning the continuation of the automatic stay on the Debtor providing adequate protection of the Mansion.

DATED:  December 9, 2011                    THE COLONIAL WILLIAMSBURG
                                            FOUNDATION

                                            By:  /s/ *Benjamin C. Ackerly*
                                            Gregory N. Stillman, VSB No.14308

HUNTON & WILLIAMS, LLP
500 East Main, Suite 1000
Norfolk, Virginia 23510-3889
Telephone: (757) 640-5300
Facsimile: (757) 625-7720
gstillman@hunton.com

Benjamin C. Ackerly, VSB No. 09120
Tara L. Elgie, VSB No. 48259
HUNTON & WILLIAMS, LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
telgie@hunton.com
*Counsel for The Colonial Williamsburg
Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2011, a true copy of the foregoing *Motion Of The Colonial Williamsburg Foundation For Entry Of An Order To Protect And Preserve Carter's Grove Either Through (1) Appointment Of A Chapter 11 Trustee, (2) Conversion Of The Case To Chapter 7, Or (3) An Order Granting The Colonial Williamsburg Foundation Relief From Stay To Foreclose Or Conditioning The Continuance Of The Stay On The Debtor Providing Adequate Protection Of The Mansion* was  filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all registered users in this case and I further certify that I will send a copy of the foregoing by First Class Mail to all parties on the Creditors Mailing Matrix and the following parties:

Stephen J. Darmody
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Blvd. Suite 1900
Miami, FL 33131
Telephone (305) 482-8400
Facsimile (305) 482-8600
Email: Sdarmody@foley.com
*Counsel for Carter's Grove LLC, Debtor*

DEBRA I. GRASSGREEN
JOHN W. LUCAS
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111-4500
Telephone:   (415) 263-7000
Telecopy:   (415) 263-7010
Email:        dgrassgreen@pszjlaw.com
                  jlucas@pszjlaw.com
*Counsel for Carter's Grove, LLC, Debtor*

/s/ *Benjamin C. Ackerly*
Benjamin C. Ackerly, VSB No. 09120
Tara L. Elgie, Esq., VSB No. 48259
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
*Counsel for The Colonial Williamsburg Foundation*

22964.000508 EMF_US 37980946v6

Label Matrix for local noticing
0422-4
Case 11-51330-SCS
Eastern District of Virginia
Newport News
Fri Dec  9 16:59:33 EST 2011

United States Bankruptcy Court
2400 West Avenue, Suite 110
Newport News, VA 23607-4328


Anthem Blue Cross and Blue Shield
P.O. Box 580494
Charlotte, NC 28258-0494


City of Newport News
Office of the City Attorney
2400 Washington Ave.
Newport News, VA 23607-4301


Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346


Natasha K. Loeblich
315 Drexel Drive
Grapevine, TX 76051-5102


Private Client Group (Chartis)
P.O. Box 601148
Pasadena, CA 91189-1148


Sotheby's, Inc.
Attn: General Counsel
1334 York Avenue
New York, NY 10021-4806


Tiger Fuel Company
P.O. Box 1607
Charlottesville, VA 22902-1607


Robert S. Westermann
Hirschler Fleischer, P.C.
2100 East Cary Street
The Edgeworth Building
Richmond, VA 23223-7270

Carter's Grove, LLC
c/o Halsey Minor
3810 Washington Street
San Francisco, CA 94118-1650


AVN Air, LLC
Harvey S. Schochet
Davis Wright Tremaine LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533


Bay Disposal & Recycling
465 E. Indian River Road
Norfolk, VA 23523-1755


Davis Wright Tremaine LLP
Attn: Harvey S. Schochet
505 Montgomery Street
San Francisco, CA 94111-6529


Kaufman & Canoles PC
Paul W. Gerhardt, Esq.
4801 Courthouse ST., Ste 300
Williamsburg, VA 23188-2678


Newport News Waterworks
P.O. Box 979
Newport News, VA 23607-0979


Reed Smith LLP
Attn: James C. Brennan
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042-4535


Tami Mays
8797 Pocahontas Trail
Williamsburg, VA 23185-6025


(p)TREASURER JAMES CITY COUNTY
P O BOX 8701
WILLIAMSBURG VIRGINIA 23187-8701


Sheila G. de la Cruz
Hirschler Fleischer, P.C.
P.O. Box 500
Richmond, VA 23218-0500

Hirschler Fleischer, P.C.
P.O. Box 500
Richmond, VA 23218-0500


Allied Waste
P.O. Box 9001099
Louisville, KY 40290-1099


Charles Steppe
2800 Ridge Road
Charlottesville, VA 22901-9484


(p)DOMINION VIRGINIA POWER
PO BOX 26666
18TH FLOOR
RICHMOND VA 23261-6666


Meeks Disposal Corp.
1328 Cavalier Blvd.
Chesapeake, VA 23323-1502


Phillips Energy, Inc.
P.O. Box 726
Gloucester Point, VA 23062-0726


Rob Mays
8797 Pocahontas Trail
Williamsburg, VA 23185-6025


The Colonial Williamsburg Foundation
c/o Paul K. Campsen, Esq.
Kaufman & Canoles, a professional corpor
P.O. Box 3037
Norfolk, VA 23514-3037


Vandeventer Black LLP
Attn: David W. Lannetti
101 W. Main Street
500 Word Trade Center
Norfolk, VA 23510-1779


W. Clarkson McDow, Jr.
Office of the U.S. Trustee - NN
200 Granby Street
Norfolk, VA 23510-1811

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Dominion-Virginia Power
Bankruptcy Dept.-10th Fl
P.O. Box 26666
Richmond, VA 23261
Attn: Customer Credit Services

Treasurer, James City County
PO Box 8701
Williamsburg, VA 23187-8701

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Sotheby's, Inc.                    (u)The Colonial Williamsburg Foundation          (u)Halsey Minor

End of Label Matrix
Mailable recipients    29
Bypassed recipients     3
Total                  32