UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CARTER'S GROVE, LLC, | ) | Case No. 11-51330-SCS |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## MOTION FOR INTERIM RELIEF
## AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION, SECURED, SUPER-PRIORITY FINANCING FOR THE PURPOSE OF OBTAINING INSURANCE AND SCHEDULING A FINAL HEARING

The Colonial Williamsburg Foundation ("CWF"), AVN Air, LLC ("AVN") and Sotheby's, Inc. ("Sotheby's") (collectively, the "Parties") hereby move this Court (the "Motion"), pursuant to sections 105, 364(c)(1), 364(c)(2), and 364(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization (i) to obtain post-petition, secured, super-priority financing from CWF for the purpose of obtaining insurance on the Property (the "DIP Financing") and (ii) to schedule a final hearing on the relief requested herein. In support of this Motion, the Parties respectfully represent as follows:

### Jurisdiction and Venue

1.     This is a core proceeding under 28 U.S.C. § 157(b).

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

3.     Venue of the case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief requested herein are sections 105, 364(c)(1), 364(c)(2), and 364(d)(1) and Bankruptcy Rule 4001.

## Background

5.      On February 14, 2011, the Debtor commenced this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

6.      The Debtor was formed for the sole purpose of holding title to Carter's Grove, an historic mansion and 475 acre property located in James City County, Virginia (the "Property")

7.      Following a hearing conduced on March 22, 2012, the Court entered an order granting, in part the motion filed by CWF for the appointment of a Chapter 11 Trustee.

8.      The Parties seek authority for the Debtor to incur secured post-petition financing for the purpose of obtaining real property insurance.

## Concise Statement of Relief Requested

9.      This concise statement of relief requested is made pursuant to Bankruptcy Rule 4001(c)(1)(B). The general terms of the proposed DIP financing are as follows:

A.      Amount Financed: $75,000.00, plus any additional amounts necessary to fund liability insurance.

B.      Interest Rate: The DIP Loan has a Fixed Rate of 6% per annum.

C.      Liens: CWF will have the following liens as to Debtor's Post-Petition Obligations:

(i) a superpriority administrative claim against the Borrower's estate pursuant to Section 364(c)(1) of the Bankruptcy Code, having a priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, a first priority, perfected senior Lien on, and security interest in, all Collateral of the Borrower that is not subject to an existing Lien, and (iii) pursuant to Section 364(d) of the Bankruptcy Code, a first priority perfected senior priming Lien on, and security interest in, all Collateral of the Borrower which is subject to valid, enforceable, non-voidable and perfected Liens existing as of the Petition Date or which are perfected after the Petition Date as

2

permitted by Section 546(b) of the Bankruptcy Code. The security interest and Liens granted to the Lender hereunder pursuant to Sections 364(c) and 364(d) shall not be (x) subject to any lien or security interest which is avoided and preserved for the benefit of the Borrower's estate under Section 551 of the Bankruptcy Code, or (y) subordinated to or made *pari passu* with any other lien or security interest under Section 364(d) of the Bankruptcy Code or otherwise.

## I.        Specific Provisions.

The DIP Financing contains the following provisions listed in Bankruptcy Rule 4001(c)(1)(B)(i) through (xi):

1.      "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)." Yes, CWF is granted a first priority lien on the Property.

2.      "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim." No.

3.      "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim." Yes. The Parties are admitting the validity, enforceability, priority of CWF's claims and liens, however, there is also an acknowledgement that the pending Adversary Proceeding challenges the validity of CWF's proof of claim filed in this case.

4.      "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay." No.

5.      "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364." No.

6.      "[T]he establishment of deadlines for filing a plan of reorganization, for approval

of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order."
No.

7.    "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien." No.

8.    "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action." No.

9.    "[T]he indemnification of any entity." No.

10.    "[A] release, waiver, or limitation of any right under § 506(c)." Yes.  The stipulation prohibits any ability to surcharge.

11.    "[T]he granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)." No.

## II.    Relief Requested

It is of critical importance that insurance on this historic mansion be maintained without interruption. CWF has worked to obtain a policy that it believes will be in place upon expiration of the current policy. The best insurance premium that CWF can obtain on this Property carries a premium of $75,000, which is detailed in the policy attached as **Exhibit A**. As a matter of economic reality, the Parties have concluded that the only available source of funding for the real property insurance is CWF. The Debtor generates no business income and the Debtor's cash on hand and in the Debtor's bank accounts is inadequate to fund the insurance premium.

Consient with Section 1(q) of the Deed of Trust attached as **Exhibit B**, CWF is willing to lend to Debtor on an emergency basis the secured postpetition financing needed to obtain insurance to secure the Property. Upon information and belief, CWF is the only entity that has been willing to provide postpetition financing for the insurance premium. CWF has agreed to provide financing for purposes of funding the insurance premium in the amount of $75,000, plus

any additional amounts necessary to obtain liability insurance at an interest rate of 6%, which is

the non-default rate interest is accruing under the Debtor's obligations on its Note and Deed of

Trust.

The Debtor has an immediate need for funding to ensure that insurance is maintained on

the Property. The initial approval of the DIP Financing is therefore an emergency in order to

maintain insurance coverage on the Property, and such funding is necessary to avoid immediate

and irreparable harm.

### III.    Legal Authority

The Parties request authority for the debtor to incur the DIP Financing consisting of

$75,000, plus any additional amounts necessary to obtain liability insurance. The sole purpose

of the DIP Financing will be for the purpose of obtaining and maintaining insurance on the

Property. Thus, by this Motion, the Parties request that the Court grant the following relief as

provided for in the Interim DIP Order:

1. authorization for the Debtors to obtain financing in the amount of $75,000, plus any additional amounts necessary to obtain liability insurance on an interim basis under the Interim DIP Order;

2. grant CWF an allowed superpriority administrative expense claim status for the DIP Financing;

3. the grant CWF an automatically perfected security interest in and lien on the Property;

4. the scheduling, pursuant to Bankruptcy Rule 4001, of an interim hearing (the "Interim Hearing") on this Motion to be held before this Court to consider entry of the proposed interim order annexed to this Motion;

5. the scheduling, pursuant to Bankruptcy Rule 4001, of a final hearing (the "Final Hearing") for this Court to consider entry of a Final DIP Order authorizing the Debtor on a final basis to incur the DIP Financing and authorizing and approving the relief requested in this Motion to become effective pursuant to the Final DIP Order; and

6. granting an other additional necessary to permit the Debtor to obtain insurance coverage.

A.     **Emergency Consideration of the Motion is Appropriate.**

Bankruptcy Rule 4001(c) and (d) govern the procedure for consideration of motions to use cash collateral and to obtain post-petition financing. Both of these subsections provide for an expedited consideration of the Motion. If the motion so requests, the Court may conduct a hearing before such 14 day period expires, but the Court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. See Fed. R. Bankr. P 4001(c)(2) and 4001(d)(3).

The Parties bring this Motion on an expedited basis in light of the immediate and irreparable harm that will likely be suffered by the estate if they cannot obtain the financing needed to obtain insurance on this Property. Because the Property is the Debtor's only asset, insurance is necessary to preserve, maintain and maximize the Debtor's value.

B.     **Approval of the DIP Loan and Priming Lien are Necessary and Appropriate.**

If a debtor cannot obtain postpetition credit on an unsecured basis, a court may authorize such debtor to obtain credit or incur debt that is entitled to super-priority administrative expense status, secured by a senior lien on unencumbered property or secured by a junior lien on encumbered property. *See* 11 U.S.C. § 364(c)(1), (2) and (3); *see also In re The Rowe Cos.*, Case No. 06-11142-KRH (Bankr. E.D. Va. Oct. 16, 2006) (authorizing credit on a super-priority basis); *In re US Airways, Inc.*, Case No. 04-13819-SSM (Bankr. E.D. Va. Feb. 28, 2005) (same); *In re NTELOS Inc.*, Case No. 03-32094-DOT (Bankr. E.D. Va. Mar. 24, 2003) (same); *In re AMF Bowling Worldwide, Inc.*, Case No. 01-61119-DHA (Bankr. E.D. Va. Aug. 8, 2001) (same).

No other party is willing to provide more favorable financing that the DIP Financing being offered by CWF on an unsecured or any other basis. Accordingly, in light of the current state of the credit markets and the circumstances of this chapter 11 case, the Debtor satisfies the

statutory requirements of section 364(c).  *See also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th

Cir. 1986) ("[t]he statute imposes no duty to seek credit from every possible lender before

concluding that such credit is unavailable").  Moreover, where few lenders likely can or will

extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the

debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113

(Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117,

120 n.4 (N.D. Ga. 1989).

Pursuant to section 364(d), a court may authorize postpetition credit secured by a senior

or equal lien on encumbered property (*i.e.*, a "priming" lien) without consent from affected

secured parties if the debtor cannot obtain credit elsewhere and the interests of existing

lienholders are adequately protected.  *See* 11 U.S.C. § 364(d)(1).  Specifically, section 364(d)(1)

provides, in relevant part, that a court may, after notice and a hearing:

> authorize the obtaining of credit or the incurring of debt secured by a
> senior or equal lien on property of the estate that is subject to a lien only if
> —
>
> (A)    the [debtor] is unable to obtain credit otherwise; and
>
> (B)    there is adequate protection of the interest of the holder of
> the lien on the property of the estate on which such senior
> or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

Given the financial situation of the Debtor, no other lender or creditor is willing to infuse

the type of capital the Debtor requires to obtain insurance on the property on an unsecured or

even on an administrative priority basis.  Moreover, given the first-priority nature and extent of

the interest asserted by CWF and AVN and Sotheby's who assert junior secured liens on the

Property, no lender would be willing to extend any significant amount of credit without receiving

the "priming" lien allowed under Section 364(d) of the Bankruptcy Code.   Absent these

protections, CWF is unwilling to provide the DIP Financing, nor, as discussed above, was the Debtor able to identify any credible potential lending source that would be willing to make a loan sufficient to satisfy the Debtor's minimum needs without all of the protections available under Sections 364(c) and (d) of the Bankruptcy Code.

It is vital that insurance be maintained on this Property and the DIP Financing will provide the Debtor the means to ensure that insurance is obtained promptly. The DIP Financing is in the best interest of the Debtor and all creditors and other parties in interest in this case.

## IV.  Interim Approval Should Be Granted

The Parties respectfully request that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtors (from and after the entry of the Interim DIP Order and pending the final hearing) to enter into the DIP Financing and thereby authorize the Debtor to obtain credit from CWF in the amount of not more than $75,000, except as necessary to obtain liability insurance, which the Debtors can use for the sole purpose of obtaining insurance on the Property. Interim access to the DIP Financing will ensure that the Property and avoids immediate and irreparable harm and prejudice to the Debtor's estates and all parties in interest pending the final hearing.

Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain postpetition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).

### V. **Request for Final Hearing**

Pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the final hearing that is as soon as practicable, but in no event later than 14 days following the Petition Date, and fix the time and date prior to the final hearing for parties to file objections to this Motion.

### VI. **Request for Waiver of Stay**

The Parties seek a waiver of any stay of the effectiveness of the DIP Orders that may be imposed by any applicable Bankruptcy Rule. As set forth above, the financing to be provided under the DIP Financing is essential to prevent potentially irreparable damage to the Debtor's Property. Accordingly, the Debtors submit that ample cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

### VII. **Request for Waiver of Local Rule 9013-1(G)**

The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Rule 9013-1(G) of the Local Rules.

### VIII. **Notice**

Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) AVN Air, LLC; (c) Sotheby's Inc.; (d) counsel for the Debtor. The Debtors submit that no other or further notice need be provided.

WHEREFORE, the Parties respectfully request that the Court (a) enter the DIP Orders granting the relief requested herein, and (b) grant such other and further relief as the Court may deem proper.

Dated: March 29, 2012
     Richmond, Virginia

THE COLONIAL WILLIAMSBURG
FOUNDATION

By:   /s/ Tara L. Elgie
     Gregory N. Stillman
     HUNTON & WILLIAMS, LLP
     500 East Main, Suite 1000
     Norfolk, Virginia 23510-3889
     Telephone: (757) 640-5300
     Facsimile: (757) 625-7720
     gstillman@hunton.com

     Tara L. Elgie, VSB No. 48259
     HUNTON & WILLIAMS, LLP
     Riverfront Plaza, East Tower
     951 E. Byrd Street
     Richmond, VA 23219
     Telephone: (804) 788-8200
     Facsimile: (804) 788-8218
     telgie@hunton.com

     Jeffrey C. Krause[*]
     Stutman Treister & Glatt
     1901 Avenue of the Stars
     12th Floor
     Los Angeles, CA 90067
     Telephone: (310) 228-5740
     Facsimile: (310) 228.5788
     Email: JKrause@Stutman.com
     *Counsel for The Colonial Williamsburg
     Foundation*

---

[*] Admitted *pro hac vice* by Order dated February 1, 2012 [D.I. 122].

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March 2012, a true copy of the foregoing *Motion* was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all registered users in this case and I further certify that I have sent a copy of the foregoing by First Class Mail to:

Debra I. Grassgreen
John W. Lucas
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: (415) 263-7000
Telecopy: (415) 263-7010
Email:       dgrassgreen@pszjlaw.com
                jlucas@pszjlaw.com
*Counsel for Carter's Grove, LLC, Debtor*

Robert S. Westermann
Sheila deLa Cruz
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
Telephone: (804) 771-9500
Telecopy: (804) 644-0957
Email:  rwestermann@hf-law.com
             sdelacruz@hf-law.com
*Counsel for Carter's Grove, LLC, Debtor*

The Office of the United States Trustee
Attn:       Debera F. Conlon and
                Kenneth N. Whitehurst III
Room 625 Federal Building
200 Granby Street
Norfolk, VA 23510

Curtis G. Manchester (VSB No. 32696)
Alison Wickizer Toepp (VSB No. 75564)
Reed Smith LLP
Riverfront Plaza, West Tower
901 East Byrd Street, Suite 1700
Richmond, Virginia 22319
Telephone: (804) 344-3400
Facsimile: (804) 244-3410

and

Harvey S. Schochet, Esq.
Davis Wright Tremain, LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6507
Facsimile: (415) 276-6599
*Counsel for AVN Air, LLC*

John A. Trocki, III (VSB No. 28656)
Morrison & Foerster LLP
1650 Tysons Boulevard, Suite 200
McLean, Virginia 22102
Telephone:  (703) 760-7712
Facsimile:  (703) 760-7777
Email: jtrocki@mofo.com

and

Adam A. Lewis, Esq.
Vincent J. Novak, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, California  94105
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
Email: ALewis@mofo.com
        VNovak@mofo.com

*Counsel for Sotheby's, Inc.*

/s/ *Tara L. Elgie*



EXHIBIT

A

ALL-STATE LEGAL®

**William F. Curley**
*Regional Vice President*
*National Accounts Property*
Phone: (860) 277-4723
Fax: (877) 228-9341
*WCURLEY@travelers.com*

One Tower Square
Hartford, CT 06183

## PROPERTY/BOILER QUOTATION

**March 27, 2012**

WELLS FARGO INS SVCS USA
9020 STONY POINT PKWY STE 200
RICHMOND, VA 23235

**ATTN:**    GEORGE BOOTH

**Re:**    CARTER'S GROVE, LLC
8797 POCAHONTAS TRAIL
WILLIAMSBURG, VA 23187

**Effective from:**    03/31/2012    **to**    03/31/2013

I'm pleased to offer a Property and Boiler & Machinery quotation on the above account.

**THE FOLLOWING OUTLINES THE COVERAGE FORMS, LIMITS OF INSURANCE, POLICY ENDORSEMENTS AND OTHER TERMS AND CONDITIONS PROVIDED IN THIS QUOTATION.  ANY POLICY COVERAGES, LIMITS OF INSURANCE, POLICY ENDORSEMENTS, COVERAGE SPECIFICATIONS, OR OTHER TERMS AND CONDITIONS THAT YOU HAVE REQUESTED THAT ARE NOT INCLUDED IN THIS QUOTATION HAVE NOT BEEN AGREED TO BY TRAVELERS. PLEASE REVIEW THIS QUOTATION CAREFULLY AND IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT YOUR TRAVELERS REPRESENTATIVE.**

**Coverage, Limits and Deductibles:**
See the attached outline of the coverage forms, Limits of Insurance and policy amendments provided in this quotation.

**THIS QUOTATION DOES NOT AMEND, OR OTHERWISE AFFECT, THE PROVISIONS OF COVERAGE OF ANY RESULTING INSURANCE POLICY ISSUED BY THE TRAVELERS. IT IS NOT A REPRESENTATION THAT COVERAGE DOES OR DOES NOT EXIST FOR ANY PARTICULAR CLAIM OR LOSS UNDER ANY SUCH POLICY.  COVERAGE DEPENDS ON THE APPLICABLE PROVISIONS OF THE ACTUAL POLICY ISSUED, THE FACTS AND CIRCUMSTANCES INVOLVED IN THE CLAIM OR LOSS AND ANY APPLICABLE LAW.**

**Total Insured Values:** $17,789,937

**Premium:**    $75,000

The premium is based on total insured value as outlined in the quotation. Any fees, taxes and/or surcharges which carriers are required to collect on behalf of local jurisdictions, are in addition to the policy premium shown.

**Rate:**    .4216

**Insuring Company:** The Travelers Indemnity Company (a Stock Company)

**Payment Plan:**    Lump sum as provided by the Agency Bill System

**Commission:**
The attached is net of commission.
Commission is not applied to any fees, taxes and surcharges that may apply in addition to the premium.

**Terms and Conditions:**
1.    Please accept this proposal as the Broker for the captioned account.

2.    The policy will be subject to all state-mandated endorsements.

3.    Consult Policy for Actual Terms and Conditions.

4.    A Claim Customer Service Representative is available 24 hours a day, 7 days a week to take the first notice of loss, or provide assistance on any existing claim.  To report, ask a question or discuss a claim, please call 1-800-832-7839.

This proposal expires automatically on 03-30-12.

Please call me with any questions you may have after you have had a chance to review.

Regards,

William F. Curley
Regional Vice President

### Important Notice Regarding Compensation Disclosure

For information about how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website:
http://www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348.  Or you can write to us at Travelers, Enterprise Development, One Tower Square, Hartford, CT 06183.

---

**VISIT OUR WEB SITES**

As a value-added service to its customers, Travelers offers a variety of online tools and resources.

**RISK CONTROL**
Travelers Risk Control offers a wealth of resources to help clients in their every day safety and risk management needs. To see an overview, launch our Risk Control Customer Portal Tour.

In addition to our property Risk Control services, which include on-site surveys, consultations, and future construction and sprinkler plan reviews, customers can find even more valuable safety and risk management resources by logging in to the Risk Control Customer Portal at travelers.com/riskcontrol. Upon *registering* as a Travelers insured, our customers gain exclusive access to more than 1,500 products and services.

Here are just a few noteworthy tools available exclusively to registered Travelers customers:

- Travelers Virtual Risk Manager$^{SM}$ – an online self-assessment tool that helps identify safety performance gaps and delivers a customized action plan to assist in addressing safety needs.

- TravSources$^{SM}$ – a collection of safety and risk management resources packaged by industry or topic.

- Online Education Center – a wide selection of classroom, Webinar and computer-based training courses, as well as multimedia products.

- Newsletters and alerts to stay current on safety news and emerging issues.

- Customer link to the Institute for Business & Home Safety/Travelers co-branded *Open for Business*® interactive Web-based natural hazards assessment and planning tool, plus a multitude of other natural disaster and business continuity products.

**CLAIM**

Each year, Travelers receives more than one million claim loss notices, issues almost six million checks and pays out more than $14 billion in claims. Travelers has approximately 13,000 skilled claim professionals in 100 claim offices and additional points of service across the country and internationally. We have a team devoted exclusively to property losses and a Major Case Unit that specializes in high-severity claims.

Dedicated catastrophe response teams are on call 24/7 to immediately respond to a disaster anywhere in the country.

For a more in-depth look at our claim services, visit our Claim Web site at travelers.com/claim.

## Terrorism Risk Insurance Act of 2002 Disclosure

On December 26, 2007, the President of the United States signed into law amendments to the Terrorism Risk Insurance Act of 2002 (the "Act"), which, among other things, extend the Act and expand its scope. The Act establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in the Act) caused by "acts of terrorism". An "act of terrorism" is defined in Section 102(l) of the Act to mean any act that is certified by the Secretary of the Treasury – in concurrence with the Secretary of State and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The federal government's share of compensation for Insured Losses is 85% of the amount of Insured Losses in excess of each Insurer's statutorily established deductible, subject to the "Program Trigger", (as defined in the Act). In no event, however, will the federal government or any Insurer be required to pay any portion of the amount of aggregate Insured Losses occurring in any one year that exceeds $100,000,000,000, provided that such Insurer has met its deductible. If aggregate Insured Losses exceed $100,000,000,000 in any one year, your coverage may therefore be reduced.

The charge for Insured Losses is included in the total premium for this policy. The charge that has been included for this exposure under this policy is the amount indicated below, and does not include any charge for the portion of losses covered by the federal government under the Act:

$ 2,500

This coverage may be declined. If declined, the premium for this policy will be $ 72,500.



CARTER'S GROVE, LLC
Date of Proposal:03/28/2012

MS C0 02 07 99

## INDEX OF FORMS

| | |
|---|---|
| Index of Forms | MS C0 02 07 99 |
| Supplemental Coverage Declarations | MS C0 03 07 99 |
| Property Coverage Form | MS C1 00 08 07 |
| Extra Expense | MS C1 03 07 99 |
| Earthquake,Volcanic Eruption, Landslide and Mine Subsidence | MS C2 04 03 00 |
| Flood | MS C2 06 04 08 |
| Boiler And Machinery | MS C2 10 01 00 |
| Vacancy Permit | MS C2 15 07 99 |
| Exclusion Nuclear Hazard War Military Action Electronic VMM & Pathogenic | MS C2 39 12 02 |
| Exclusion of Loss Due to Virus or Bacteria | MS C2 42 02 07 |
| Preservation and Protection of Property | MS C3 43 12 11 |
| General Conditions | MS C5 02 01 00 |
| Replacement Cost | MS C5 05 07 99 |
| Claim Data Expense | MS C5 30 10 02 |
| High Hazard Wind Counties and Specific Cities | MS C6 06 11 05 |
| High and Moderate Hazard Earthquake, Volcanic Eruption, Landslide Counties | MS C6 09 02 07 |
| Additional Insured | MS C6 12 07 99 |
| Exclusion Certain Computer Losses Due to Dates or Times (Prop & BM Coverages) | MS C8 02 07 99 |
| Virginia Changes - Cancellation And Nonrenewal | MS C9 72 01 00 |
| Virginia Changes | MS C9 73 01 00 |
| NOTICE - IMPORTANT INFO RE YOUR INS - VA | PN T1 01 05 10 |
| POL NOTICE-JURISDICTION INSPECTIONS | PN T1 89 06 99 |
| IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION | PN T4 54 01 08 |
| Terrorism Risk Insurance Act of 2002 Disclosure | TR IA 01 01 08 |
| Cap on Losses from Certified Acts of Terrorism | TR IA 04 01 08 |

CARTER'S GROVE, LLC
Date of Proposal: 3/28/2012
REAL ESTATE

MS C0 03 07 99

# Supplemental Coverage Declarations

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

**A.** **POLICY LIMIT:** In no event shall liability under this policy arising out of one occurrence exceed $17,789,940, nor shall liability exceed any specific Limit of Insurance applying to any insured loss, coverage or location(s).

**B.** **LIMITS OF INSURANCE** – For application of Limits of Insurance refer to Section O. Limits of Insurance in the General Conditions:

| | | | |
|---|---|---|---|
| **1.** | Buildings, in any one occurrence: | | Included |
| | Included means included in the Policy Limit. | | |
| **2.** | Business Personal Property, in any one occurrence: | $ | 1,336,541 |
| **3.** | Outdoor Property including Debris Removal, in any one occurrence: | $ | 250,000 |
| | Trees, shrubs and plants are subject to a maximum per item of: | $ | 5,000 |
| **4.** | Pollutant Cleanup and Removal, aggregate in any one policy year: | $ | 100,000 |
| **5.** | Claim Data Expense, in any one occurrence: | $ | 25,000 |
| **6.** | Ordinance or Law | | |
| | Loss to the Undamaged Portion, in any one occurrence: | $ | 1,000,000 |
| | Demolition, in any one occurrence: | | Included |
| | Increased Cost of Construction, in any one occurrence: | | Included |
| | Included means, included in the Limit shown for Loss to the Undamaged Portion. | | |
| **7.** | Extra Expense, in any one occurrence: | $ | 250,000 |
| | Civil Authority 30 days. | | |
| **8.** | Earthquake, Volcanic Eruption, Landslide and Mine Subsidence - aggregate in any one policy year, for all losses covered under this policy, commencing with the inception date of this policy: | | |
| | **a.** Occurring in Alaska, Hawaii or Puerto Rico: | | Not Covered |
| | **b.** Occurring in California: | | Not Covered |
| | **c.** Occurring in counties identified as High and Moderate Hazard Counties as per MS C6 09: | | Not Covered |
| | **d.** Occurring in covered territory other than above: | $ | 2,500,000 |

CARTER'S GROVE, LLC
Date of Proposal: 3/28/2012
REAL ESTATE

MS C0 03 07 99

If more than one Annual Aggregate Limit applies in any one occurrence, the most the Company will pay is the highest involved Aggregate Limit. The most the Company will pay during each annual period is the largest of the Annual Aggregate Limits shown.

9. Flood – aggregate in any one policy year, for all losses covered under this policy, commencing with the inception date of this policy:

Occurring at all Insured Premises, except this policy does not cover loss resulting from Flood to buildings, structures or property in the open within Zone A, Zones prefixed A, Zone V or Zones prefixed V as classified under the National Flood Insurance Program or to property in or on buildings or structures located within such Flood Zones:  $  2,500,000

Any loss resulting from Flood to a building, structure or property in the open which is, at the time of loss, within more than one Flood Zone will be subject to the insurance and Annual Aggregate, if any, that would apply under this policy if that building, structure or property in the open was wholly located within the most hazardous of the Flood Zones, as identified in MS C2 06, in which it is located. The Flood Zone that applies to a building or structure will also apply to any property in or on such building or structure.

If more than one Annual Aggregate Limit applies in any one occurrence, the most the Company will pay is the highest involved Aggregate Limit. The most the Company will pay during each annual period is the largest of the Annual Aggregate Limits shown.

10. Boiler and Machinery (Insured's Locations only)
Property Damage, in any one accident:  $  1,000,000

Extra Expense, in any one accident:  Included

Hazardous Substance, in any one accident:
Ammonia Contamination:  $  100,000
Any other substance:  $  100,000
Water Damage, in any one accident:  $  100,000

Included means, included in the Limit of Insurance that otherwise applies under this policy to the coverage for which included is indicated.

Boiler and Machinery (Insured's Locations only) all coverages combined, maximum in any one accident:  $  1,000,000

C. **DEDUCTIBLES:** For application of Deductibles refer to Section B. Application of Deductibles in the General Conditions

CARTER'S GROVE, LLC
Date of Proposal: 3/28/2012
REAL ESTATE

MS C0 03 07 99

1.  By Earthquake, Volcanic Eruption, Landslide and Mine
    Subsidence in any one occurrence:                                $       100,000

    As respects Extra Expense, the deductible is included
    in the occurrence deductible.

2.  By Flood, in any one occurrence:                                 $       100,000

    As respects Extra Expense, the deductible is included in the
    occurrence deductible.

    Any loss resulting from Flood to a building, structure or
    property in the open which is, at the time of loss, within more
    than one Flood Zone will be subject to the Flood deductible, if
    any, that would apply under this policy if that building,
    structure or property in the open was wholly located within the
    most hazardous of the Flood Zones, as identified in MS C2 06,
    in which it is located. The Flood Zone and Flood deductible
    that applies to a building or structure will also apply to any
    property in or on such building or structure.

3.  By "Named Windstorm" meaning wind, wind driven rain
    or hail named by the National Weather Service or
    National Hurricane Center  for all losses covered under
    this policy:

        Occurring in the following State(s): Virginia

        In any one occurrence:                          2   %   $       250,000
        Percentage applies per Unit

        Occurring in counties identified as High Hazard
        Wind Counties as per MS C6 06, in any one
        occurrence:                                     2   %   $       250,000
        Percentage applies per Unit

        Occurring at all other locations, in any one
        occurrence:                                             $       250,000

    As respects Extra Expense, the deductible is included in
    the occurrence deductible.

4.  To any other covered loss, in any one occurrence:               $        50,000

D.  **VALUATION PROVISION**:

    Replacement Cost applies as per MS C5 05, except as otherwise stated
    within endorsement MS C5 05, within this Supplemental Declarations or
    elsewhere in this policy.

E.  **SOLE AGENT PROVISION:** For any insurance afforded by this policy, CARTER'S GROVE, LLC
    shall act on behalf of all insureds with respect to the giving and receiving of notice of cancellation
    or nonrenewal, the payment of premiums and the receiving of return premiums, and accepting of
    any endorsement issued to form a part of this policy.

CARTER'S GROVE, LLC
Date of Proposal: 3/28/2012
REAL ESTATE

MS C0 03 07 99

**F.**  **PREMIUM ADJUSTMENT:** This policy will be adjusted as needed for any changes in values and premiums.

**G.**  **ISSUING COMPANY:** Travelers Indemnity Company (a Stock Company)

Page 4 of 4

CARTER'S GROVE, LLC
Date of Proposal: 3/28/2012
REAL ESTATE



EXHIBIT
B

### DEED OF TRUST NOTE

County of James City, Virginia

December 17, 2007

U.S. $10,300,000.00

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

FOR VALUE RECEIVED, CARTER'S GROVE, LLC, a Virginia limited liability company, as maker (the "Maker"), promises to pay, without offset or deduction, to the order of THE COLONIAL WILLIAMSBURG FOUNDATION ("Holder"), the principal sum of TEN MILLION THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($10,300,000.00), together with interest from the date hereof on the unpaid principal balance at the rate of six percent (6%) per annum at P. O. Box 1776, Williamsburg, Virginia 23187, or at such other place as the holder hereof may hereafter from time to time designate in writing, in lawful money of the United States of America which shall be legal tender in the payment of all debts and dues, public and private, at the time of payment.

This Note shall be payable in six consecutive semi-annual installments of principal in the amount of ONE MILLION SEVEN HUNDRED SIXTEEN THOUSAND SIX HUNDRED SIXTY-SIX AND 67/100 DOLLARS ($1,716,666.67) each, together with all accrued and unpaid interest as of the date of such principal payment, beginning July 15, 2008 and thereafter continuing on January 15, 2009, July 15, 2009, January 15, 2010, July 15, 2010, and January 15, 2011.

If not paid earlier, all outstanding principal, interest, and other applicable fees, costs and charges, if any, shall be due and payable in full on January 15, 2011 ("Maturity Date").

If Maker fails to make timely payment within fifteen (15) days of its due date, the Maker agrees to pay a late charge of five percent (5%) of any payment due. This Note may be prepaid in whole or in part at any time and from time to time without any prepayment premium or penalty.

The happening of any of the following events shall constitute an event of default ("Event of Default"): (1) the failure to make when due any payment demanded herein, whether of principal, interest, late charges or otherwise and such failure continues for a period of fifteen (15) days following the date due; (2) the failure after expiration of applicable cure periods, if any, to perform, observe or comply with any of the terms, warranties, covenants, obligations or conditions, other than the obligations to pay monies, contained in this Note or in any deed of trust (the "Security Documents") which may now be executed for the purpose of securing this Note to the Holder; (3) the termination of, or occurrence of any other event affecting the validity of this Note or the validity and priority of any of the Security Documents; (4) the intentional dissolution or termination of existence of the Maker; (5) the application by a third party for the appointment of a receiver or custodian for Maker or the property of Maker or any guarantor of this Note, or the entry of an order

for relief or the filing of an involuntary petition against Maker or any guarantor of this Note, under the provisions of any bankruptcy or insolvency law, or any assignment for the benefit of creditors against Maker or any guarantor of this Note, and any such involuntary appointment, order, bankruptcy proceeding, or assignment is not dismissed within ninety (90) days of execution, filing or commencement; or (6) the application for the appointment of a receiver or custodian for Maker or any guarantor of this Note, or the property of Maker or the filing of a voluntary petition by Maker or any guarantor of this Note, under the provisions of any bankruptcy or insolvency law, or any assignment for the benefit of creditors by Maker or any guarantor of this Note.

Upon the happening of any Event of Default, and expiration of the applicable notice and cure periods, if any, this Note shall, at the sole option of the Holder, become immediately due and payable without further notice to or demand on Maker. If payment is not made upon demand, Maker shall be deemed to be in default and Holder shall be entitled to interest on the unpaid balance of this Note at the lesser of (a) the prime rate as published periodically in the Wall Street Journal plus 4.00% per annum or (b) the maximum rate allowed by law (the "Default Rate") from the time of demand until paid in full. The remedies provided in this Note and any other agreement between Maker and Holder are cumulative and not exclusive of any other remedies provided by law.

This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement or any waiver, change, modification or discharge is sought.

Any notice shall be conclusively deemed to have been received by a party hereto and be effective on the day on which delivered personally to such party at the address set forth below (or at such other address as such party shall specify to the other party in writing) or if sent by registered or certified United States mail, postage prepaid, on the second business day after the day on which mailed, addressed to such party at such address:

(a)     If to the Maker, to:

c/o Minor Ventures
199 Fremont Street, 12th Floor
San Francisco, CA 94105

With a copy to:

Steven W. Blaine, Esq.
LeClairRyan
123 East Main Street, 8th Floor
Charlottesville, VA 22902

(b)      If to the Holder, to:

The Colonial Williamsburg Foundation
P.O. Box 1776
Williamsburg, VA 23187
Attn:  Senior Vice President for Finance and Administration

With a copy to:

Paul W. Gerhardt, Esq.
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Williamsburg, VA  23188

Maker hereby waives presentment, demand, protest, notices of dishonor and of protest, the benefits of homestead, and all other waivable exemptions, and all defenses and pleas on the ground of any extension(s) of the time of payment or of the due dates of this Note, in whole or in part, before or after maturity, with or without notice, it being further agreed by all parties that Maker will pay any collection expense, court costs, and reasonable attorney's fees which may be incurred in the collection or enforcement of this Note or any part hereof.

## JUDGMENT BY CONFESSION

THE UNDERSIGNED HEREBY DULY CONSTITUTE AND APPOINT GAIL M. WADDELL AS THE TRUE AND LAWFUL ATTORNEY-IN-FACT FOR THEM IN ANY OR ALL OF THEIR NAMES, PLACE AND STEAD, AND UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, TO CONFESS JUDGMENT AGAINST THEM, OR ANY OF THEM, IN THE CIRCUIT COURT FOR THE CITY OF WILLIAMSBURG, VIRGINIA, UPON THIS NOTE AND ALL AMOUNTS OWED HEREUNDER, INCLUDING ALL COSTS OF COLLECTION, REASONABLE ATTORNEYS' FEES AND COURT COSTS, HEREBY RATIFYING AND CONFIRMING THE ACTS OF SAID ATTORNEY-IN-FACT AS IF DONE BY THEMSELVES, EXPRESSLY WAIVING BENEFIT OF ANY HOMESTEAD OR OTHER EXEMPTION LAWS.

This Note is secured by a deed of trust ("Deed of Trust"), of even date herewith, conveying certain real estate in the County of James City, Virginia, and commonly known as Carter's Grove (the "Property"), to Manus E. Holmes, as trustee (who countersigns this Note to identify it as the note described in said Deed of Trust), which Deed of Trust is intended to be recorded forthwith in the Clerk's Office of the Circuit Court of the County of James City, Virginia.

WITNESS the following signature and seal thereunto duly authorized:

**CARTER'S GROVE, LLC,** a Virginia limited
liability company

By: _____

Halsey M. Minor, Manager

STATE OF _____ )
                                                                      )    to Wit:
CITY/COUNTY OF _____ )

The foregoing Deed of Trust Note was acknowledged before me in the
_____, _____, the ____ day of _____, 20__ by Halsey
M. Minor, who is _____ personally known to me, or _____ who produced
_____ as identification, as Manager of Carter's Grove, LLC, a Virginia
limited liability, on its behalf.

_____

Notary Public

My commission expires: _____
My registration number is: _____

The undersigned endorser and guarantor ("Guarantor") agrees to be bound by all the terms
of this Note and to absolutely and unconditionally guaranty full and timely payment of all amounts
due under this Note and payment and performance under any other document or agreement securing
the Note, in accordance with their respective terms, including, without limitation, payment of all
unpaid principal, interest, late charges, costs and expenses of collection, including, without
limitation, reasonable attorneys' fees, if incurred.

This is a guaranty of payment and not of collection, and the Guarantor expressly waives any
right to require that any action be brought against the Maker or to require that resort be had to any
security. This guaranty shall be a continuing guaranty, not affected or diminished by any
indulgence or extension of time that may be granted by the Holder to the Maker, or, by any
amendment to the Note or documents securing the same, or by Maker's discharge in bankruptcy, or
the cessation from any cause whatsoever of the liability of the Maker under this Note or any
documents securing the same. The Guarantor subordinates all obligations of the Maker owing to the
Guarantor, whether now existing or hereafter arising, to the full and prompt payment of all
obligations and indebtedness of the Maker now or hereafter owing to the holder of this Note.
Following the occurrence of an Event of Default as defined herein, above, any amounts received by

Guarantor as payment on subordinated indebtedness shall be deemed to be held in trust for the holder of this Note by Guarantor and shall be paid over to such holder without reducing or affecting in any manner the liability of the Guarantor except to the extent of such payment.  So long as any amount is due under this Note or under any other document or agreement securing this Note, the Guarantor waives, relinquishes and renounces any right of subrogation, indemnity, reimbursement or any claim whatsoever that the Guarantor may have against the Maker arising out of or in any way connected with this Guaranty of Maker's obligations hereunder; and the Guarantor hereby agrees that the Guarantor will not assert any such claim against the Maker in any proceeding, legal or equitable, including any bankruptcy, insolvency or reorganization proceeding.  The provisions of this Guaranty shall inure to the benefit of, and shall be enforceable by, the holder of this Note, its successors and assigns, including any trustee in bankruptcy or debtor-in-possession.

_____
Halsey McLean Minor

STATE OF _____ )
                                                             )  to Wit:
CITY/COUNTY OF _____ )

    The foregoing Deed of Trust Note was acknowledged before me in the _____, _____, this the ____ day of _____, 20__ by Halsey McLean Minor, who is ____ personally known to me, or _____ who produced _____ as identification.

_____
Notary Public

My commission expires: _____
My registration number is: _____

COUNTERSIGNED for identification only:

_____
Manus E. Holmes, Trustee

617163\14

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _12/17/07_, before me, _Sharron Callender Craig_
Date                          Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Halsey M. Minor_
Name(s) of Signer(s)

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Sharron Callender Craig_
Signature of Notary Public

**SHARRON CALLENDER CRAIG**
Commission # 1571530
Notary Public - California
Los Angeles County
My Comm. Expires May 19, 2009

Place Notary Seal Above

──────── **OPTIONAL** ────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Deed of Trust Note_

Document Date: _12/5/07_                Number of Pages: _5_

Signer(s) Other Than Named Above: _none_

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _Manager LLC_

Signer Is Representing: _Carter's Grove, LLC_

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5007    Reorder: Call Toll-Free 1-800-876-6827

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _12/17/07_, before me, _Sharron Callender Craig_
Date                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Halsey McLean Minor_,
Name(s) of Signer(s)

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**SHARRON CALLENDER CRAIG**
Commission # 1571530
Notary Public - California
Los Angeles County
My Comm. Expires May 19, 2009

Place Notary Seal Above

WITNESS my hand and official seal.

_Sharron Callender Craig_
Signature of Notary Public

──────── **OPTIONAL** ────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _Deed of Trust Note - Guaranter_

Document Date: _12/17/07_        Number of Pages: _5_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**
Signer's Name: _Halsey McLean Minor_

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
| --- |
| Top of thumb here |

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

Tax ID Nos: 591-01-00-030          *O7D034970*          Consideration: $10,300,000.00
582-01-00-002

## DEED OF TRUST

**THIS DEED OF TRUST** is made this 17th day of December, 2007, by and among **CARTER'S GROVE, LLC,** a Virginia limited liability company, ("Grantor"), and **MANUS E. HOLMES** the business address of whom is c/o First American Title Insurance Company, 1051 East Cary Street, Suite 1111, Richmond, Virginia 23219, as Trustee (the "Trustee") (index as a "Grantee"), and **THE COLONIAL WILLIAMSBURG FOUNDATION,** a Virginia non-stock, non-profit corporation ("Beneficiary") (index as a "Grantee");

## WITNESSETH:

WHEREAS, Grantor is the owner of certain parcels of land, together with all appurtenances thereunto belonging, located in the County of James City, Virginia and more particularly described in EXHIBIT A attached hereto (the "Land"); and

WHEREAS, Grantor is indebted to the Beneficiary for a purchase money loan in the amount of Ten Million Three Hundred Thousand and no/100 Dollars ($10,300,000.00) (the "Loan"); and

WHEREAS, Grantor has executed and delivered to the Beneficiary a Deed of Trust Note of even date herewith (the "Note"), payable to the order of the Beneficiary in the original principal sum of Ten Million Three Hundred Thousand and no/100 Dollars ($10,300,000.00); and

WHEREAS, to induce the Beneficiary to make the Loan, Grantor has agreed to secure such debt and interest and the undertakings prescribed in the Note and this Deed of Trust by the conveyance of the Premises (hereinafter defined);

NOW, THEREFORE, for and in consideration of the Loan and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby grants and conveys with general warranty the Premises to the Trustee;

TOGETHER with all buildings and other improvements (the "Improvements") now or hereafter erected on the Land and all rights, appurtenances, easements, privileges, remainders and reversions now or hereafter appertaining thereto; all fixtures and equipment now or hereafter owned by the Grantor and now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the use, enjoyment, occupancy or operation of the Improvements or the Land (with the Improvements and the Land being sometimes hereinafter

Prepared By/return to:
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188

*23*

Page 1 of 22

collectively referred to as the "Premises"), including, but not limited to, all plumbing and electric apparatus and equipment, cleaning and maintenance equipment, all boilers, tanks, engines, motors, power equipment, piping and plumbing fixtures, pumps, heating and air conditioning equipment and systems and lighting equipment and systems and replacements of all of the foregoing, all building materials and equipment now or hereafter delivered to the Premises and stored thereon, and all interest of any owner of the Premises in any of the foregoing items at any time acquired under conditional sales or installment sales contracts.

TOGETHER with all leases and contracts of or relating to the Premises, and all guarantees thereof, in each case whether written or oral, whether now existing or hereafter entered into, and all rents, income, revenue, issues and profits (the "Rents and Profits") now or hereafter arising from the Premises, provided that until the occurrence of an Event of Default (as hereinafter defined) and the election of the Beneficiary to collect the Rents and Profits after an Event of Default, the Grantor shall have a revocable license to collect and dispose of the Rents and Profits without restriction, and provided further that this assignment shall not impose on the Trustee or the Beneficiary any of the Grantor's obligations under such leases and contracts or otherwise.

TOGETHER with all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Premises or under or above the same or any part thereof, and all estate, rights, titles, interests, minerals, royalties, easements, privileges, liberties, tenements, hereditaments and appurtenances, reversion or reversions, remainder and remainders whatsoever, in any way belonging, relating or appertaining to the Premises or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Grantor.

TOGETHER with all insurance policies, contracts, permits, approvals, licenses or plans now or hereafter pertaining to, affecting or concerning the Premises, including, without limitation, all rights accruing to the Grantor from any and all contracts with all contractors, architects, engineers, subcontractors or others relating to the design, development, construction, use, enjoyment, occupancy or operation of the Improvements on or upon the Land, including performance and materialmen's bonds and any other related items; and

TOGETHER with all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims including, without limitation, proceeds of insurance and condemnation awards.

IN TRUST to secure the payment of the Note, together with any and all renewals, extensions, substitutions, modifications and consolidations thereof, and the performance of the covenants contained in this Deed of Trust and any modification hereof and thereof.

1.  Representations, Warranties and Covenants of Grantor. Grantor represents, warrants, covenants and agrees with the Trustee and the Beneficiary (and its respective successors and assigns) as follows:

(a) <u>Authority</u>. The Grantor has taken all necessary action to authorize the execution, delivery and performance of the Note, this Deed of Trust and the other Loan Documents (as hereinafter defined) and all transactions and documents contemplated hereby and thereby.

(b) <u>Binding Effect and Enforceability</u>. The Note and this Deed of Trust, when issued and delivered to the Beneficiary for value received, will constitute legal, valid and binding obligations of Grantor, enforceable in accordance with the terms thereof.

(c) <u>Approvals</u>. The execution, delivery and performance of the Note and this Deed of Trust and the transactions contemplated hereby and thereby, do not require any approval or consent of, or filing or registration with, any governmental or any other agency or authority, or of any other party, or if any such approval is required, the same has been obtained.

(d) <u>No Default</u>. Grantor is not in default in the payment of the principal of or interest on any indebtedness for borrowed money and is not in default under any instrument under and subject to which any indebtedness has been incurred, and no event has occurred and is continuing under the provisions of any such agreement that with the lapse of time or the giving of notice, or both, would constitute an event of default thereunder.

(e) <u>Litigation</u>. No litigation at law or in equity or any proceeding before any governmental agency involving the Grantor is pending or, to the knowledge of the Grantor, threatened in which any liability of the Grantor is not adequately covered by insurance or in which any judgment or order would have a material adverse effect upon the business or assets of the Grantor or that would affect its capacity to do business, the validity of the Note, this Deed of Trust or any other Loan Document or the performance of the Grantor's obligations hereunder and thereunder.

(f) <u>No Conflict</u>. The execution and delivery of the Note, this Deed of Trust and each of the other Loan Documents to which the Grantor is a party and the performance by the Grantor of its obligations hereunder and thereunder and the consummation of the transactions contemplated herein and therein will not (1) violate the Articles of Organization, Operating Agreement or other organizational documents of Grantor, (2) constitute a default under any agreement or other instrument, or (3) result in a violation of any constitutional or statutory provision or order, rule, regulation, decree or ordinance of any court, government or governmental authority having jurisdiction over the Grantor or its property.

(g) <u>No Material Misstatements</u>. Neither the Note, this Deed of Trust nor any written statements furnished by or on behalf of the Grantor in connection with the Loan or the Loan Documents contain any untrue statement of a material fact or omit a material fact necessary to make the statements contained therein or herein not misleading. There is no fact that the Grantor has not disclosed in writing to the Beneficiary that materially affects adversely the properties, business, prospects, profits or condition (financial or otherwise) of Grantor or the ability of the Grantor to perform his obligations under the Note or this Deed of Trust.

23

(h) Priority.  Upon the recordation of this Deed of Trust, the Beneficiary will hold a first priority security interest in and lien on the Premises, free and clear of any other liens, security interests and encumbrances.

(i) Note Payments.  Grantor shall make timely payments on the Note in the amounts, in the manner and at the place set forth therein, together with all other sums due thereunder and hereunder, when and as the same shall become due.  This Deed of Trust secures payment of the Note according to its terms, which are incorporated herein by reference.

(j) Performance.  Grantor shall perform and comply fully with the provisions of the various documents and instruments executed by the Grantor in connection with the Loan, including, without limitation, the Note and this Deed of Trust (collectively, the "Loan Documents").

(k) Taxes.  Grantor shall pay when due all taxes, charges and assessments levied against it and the Premises or which may become a lien upon the Premises before any penalty or interest accrues thereon.  In the event of the passage after the date of this Deed of Trust of any law changing in any way the laws now in force for state or local taxation of mortgages, deeds of trust or debts secured thereby, or the manner of the collection of any such taxes, so as to affect this Deed of Trust, the whole principal sum (together with interest) secured by this Deed of Trust shall, at the option of the Beneficiary and without notice, become immediately due and payable.

(l) Insurance.  Grantor shall continually maintain liability insurance (naming the Beneficiary as an additional insured), in such a manner and in such amounts as the Beneficiary may from time to time reasonably require on the Premises with coverages including, without limitation, liability for bodily injury, death and property damage, but in no event shall the liability limit be less than Five Million Dollars ($5,000,000) per occurrence and Ten Million Dollars ($10,000,000) in the aggregate.  All policies of insurance shall be reasonably satisfactory in form and substance to the Beneficiary and shall be written with a company or companies licensed to do business in the Commonwealth of Virginia.

(m) Repairs.  Grantor shall keep and maintain the Premises in good condition, order and repair and shall not commit or permit any waste or any other thing whereby the value of the Premises might be impaired.  Grantor shall not materially alter or demolish the Improvements without the prior written consent of the Beneficiary.

(n) Escrow Deposits.  Upon the failure of the Grantor to pay the taxes and/or insurance as requested hereunder and after demand of the Beneficiary, the Grantor shall add to each periodic payment required under the Note the amount estimated by the Beneficiary to be sufficient to enable the Beneficiary to pay, as they come due, all taxes, charges, assessments and insurance premiums which the Grantor is required to pay hereunder.  Any deficiency occasioned by an insufficiency of such additional payments shall be forthwith deposited by the Grantor with the Beneficiary upon demand.

(o) <u>Compliance with Laws</u>.  Grantor shall promptly comply with any applicable legal requirements of the Commonwealth of Virginia or other federal, state or local governmental entity, agency or instrumentality relating to the Premises or any part thereof.

(p) <u>Condemnation Award</u>.  Any award for the taking of, or damages to, all or any part of the Premises or any interest therein upon the lawful exercise of power of eminent domain, or under threat of the exercise of such power, shall be payable to the Beneficiary.  Grantor hereby appoints the Beneficiary its attorney-in-fact to receive and give all appropriate discharges for any such award.  This power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked.  The Beneficiary may apply the sums so received to the portion of the debt secured hereby in such manner as the Beneficiary may desire.

(q) <u>Payments by Beneficiary</u>.  If Grantor shall be in default in the timely payment or performance of any of its obligations under the Loan Documents, the Beneficiary, at its option, may pay the sums (or any portion thereof) for which Grantor is obligated.  Further, the Beneficiary, at its option, may advance, pay or expend such sums as may be proper and necessary for the protection of the Premises and the maintenance of this trust including but not limited to sums to satisfy taxes or other levies, and assessments or liens, to maintain insurance (including title insurance), to make repairs and to provide security guards.  Any amounts so advanced, paid or expended shall be deemed principal advances secured by this Deed of Trust and its payment enforced as if it were a part of the original debt.  Any such sum expended, paid or advanced shall be at the Beneficiary's sole option and not constitute a waiver of any default or right arising from the breach by Grantor of any covenant or agreement contained in the Loan Documents.

(r) <u>Continuing Lien</u>.  The lien of this Deed of Trust shall not be affected by any or all of the following: (a) the sale of all or a part of the Premises, (b) the assumption by another party of Grantor's obligations hereunder, (c) the forbearance or extension of time for payment or performance of any obligation hereunder, or (d) the release of all or any part of the Premises securing such obligations or the release of any party who assumes payment of the same.

(s) <u>Attorneys' Fees</u>.  In the event Grantor shall default in any of its obligations under the Loan Documents and in the opinion of the Beneficiary it becomes necessary or proper to employ an attorney to assist in the enforcement or collection of the indebtedness owed by Grantor to the Beneficiary or to enforce compliance by Grantor with any of the provisions of the Loan Documents, or in the event the Beneficiary or the Trustee voluntarily or otherwise shall become a party to any suit or legal proceeding (including a proceeding conducted under any bankruptcy law) to protect the Premises, to protect the lien of this Deed of Trust, to enforce collection of the indebtedness owed by Grantor to the Beneficiary or to enforce compliance by Grantor with any of the provisions of the Loan Documents, then Grantor agrees to pay reasonable attorneys' fees and all of the costs that may reasonably be incurred, and such fees and costs shall be secured by this Deed of Trust and its payment enforced as if it were a part of the original debt.  Grantor shall be liable for such reasonable attorneys' fees and costs whether or not any suit or proceeding is commenced.

(t) <u>Anti-Marshalling Provision</u>.  The right is hereby given by the Grantor to the Trustee and the Beneficiary to make partial releases or releases of security hereunder (whether or not such releases are required by agreement among the parties) agreeable to the Trustee and the Beneficiary without notice to, or the consent, approval or agreement of other parties and interests, including junior lienors and purchasers subject to the lien of this Deed of Trust, which partial release or releases shall not impair in any manner the validity or priority of this Deed of Trust on the Premises remaining hereunder.  Notwithstanding the existence of any other security interests in the Premises held by the Beneficiary or by any other party, the Beneficiary shall have the right to determine the order in which any or all of the Premises shall be subjected to the remedies provided herein.  The Beneficiary shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein.  The Grantor and all other persons liable hereunder hereby waive any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

(u) <u>Transfer of Premises or Interest in Grantor</u>.  Grantor shall not sell, convey, transfer, assign or permit any sale, conveyance, transfer or assignment of the Premises or any part thereof or any interest therein, by operation of law or otherwise, without the prior written consent of the Beneficiary (which consent, which need not be given, may be conditional upon such modification of the terms of the Note and the payment of such fees and other charges as the Beneficiary may in its sole discretion require).  The Grantor shall maintain its existence as a Virginia limited liability company and shall not consolidate with or merge into any other Person, wind up, liquidate or dissolve its affairs or enter into any agreement to do any of the foregoing, without the prior written consent of the Beneficiary.  The Grantor shall not consolidate or merge with or into any other entity or convey or transfer its properties and assets substantially as an entirety to any entity.  For so long as the lien of this Deed of Trust exists on any of the Premises, (A) the Grantor will not voluntarily or involuntarily commence a case with respect to itself, as debtor, under the Federal Bankruptcy Code or any similar federal or state statute, and (B) no material amendment to the Articles of Organization or Operating Agreement, including, without limitation, a change of control, may be made without first obtaining approval of the Beneficiary.  Any indemnification of the Grantor to its beneficiaries or any guarantor of the Loan or "Affiliates" (hereinafter defined) or otherwise shall be fully subordinated to any obligations respecting the Premises and shall not constitute a claim against the Grantor in the event that cash flow in excess of amounts necessary to pay holders of such obligations is insufficient to pay such obligations.  For purpose of the clause above, the following terms shall have the following meanings:

"Affiliate" means any person controlling or controlled by or under common control with the Grantor including, without limitation (A) any person who has a familial relationship, by blood, marriage or otherwise with any partner or employee of the Grantor, or any Affiliate thereof and (B) any person which receives compensation for administrative, legal or accounting services from the Grantor, or any Affiliate of it.  For purposes of this definition, "control" when used with respect to any specified person, means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership

23
Page 6 of 22

of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization, or government or any agency or political subdivision thereof.

(v) <u>Application of Payments</u>. Until the occurrence and continuance of any Event of Default, all payments and other sums of money received by the Beneficiary shall be applied by the Beneficiary first to amounts due the Beneficiary pursuant to subparagraph 1(q) hereof, then to amounts payable by Grantor under the Note, then to the principal of the Note. Following the occurrence and continuance of an Event of Default, all such amounts shall be applied in such order as the Beneficiary may elect.

(w)<u>Indemnity</u>. Except as otherwise provided herein, the Grantor shall protect, indemnify and save harmless the Trustee and the Beneficiary from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against any Trustee or the Beneficiary in connection with the Premises, the Loan, the Loan Documents or any related matter.

2. <u>Environmental</u>. Grantor represents and warrants that (i) Grantor has no knowledge of any discharge, spillage, uncontrolled loss, seepage or filtration (a "Spill") of oil, petroleum or chemical liquids or solids, liquid or gaseous products or any hazardous waste or hazardous substance, as those terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 or in any other federal, state or local law, regulation or ordinance governing toxic wastes, toxic or hazardous substances, petroleum hydrocarbons, asbestos, PCB's, liquid wastes and any other environmental contaminants as such laws may be amended from time to time (collectively the "Act"), at, upon, under or within the Premises or any contiguous real estate, and (ii) Grantor has not caused or permitted to occur, and shall not permit to exist, any condition which may cause a Spill at, upon, under or within the Premises or any contiguous real estate.

3. <u>Security Agreement</u>. This Deed of Trust, to the extent that it relates to personal property located on the Land only (the "Collateral"), is a security agreement and shall support any financing statement filed showing the Beneficiary's interest as a secured party, lienholder or creditor with respect to any personal property mentioned in such financing statement. Grantor shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all costs and expenses (including reasonable legal fees) of any record searches for financing statements the Beneficiary may reasonably require. Without the prior written consent of the Beneficiary, Grantor shall not create, or suffer to be created pursuant to the Uniform Commercial Code (the "UCC"), as adopted in the Commonwealth of Virginia, any other security interest in said personal property, including replacements and additions thereto. In the event of a default of any covenant or agreement of Grantor contained in this Deed of Trust, the Beneficiary shall, in addition to all other rights and remedies herein provided, have all the remedies accorded a secured party under the UCC.

23

    4. <u>Event of Default</u>.  Upon the occurrence of any one or more of the following events, there shall be an event of default (an "Event of Default") hereunder:

    (a) Failure to make due and punctual payment of any sum when due under the Note or this Deed of Trust if such failure continues for fifteen (15) days.

    (b) Failure by Grantor to perform or comply with any of the other covenants, agreements, terms and conditions contained in the Loan Documents and such failure shall continue for thirty (30) days after written notice thereof from the Beneficiary to Grantor, except no such notice and opportunity to cure is required with respect to Grantor's failure to obtain the required insurance coverages.

    (c) Failure by Grantor to insure the Premises as required by this Deed of Trust at any time until the Note and Deed of Trust are fully released to the satisfaction of the Beneficiary.

    (d) Grantor's transfer of all or a portion of the Premises, or any interest in the owner thereof, without Seller's prior written consent.

    (e) Grantor's breach of that Deed of Gift of Easement, dated December 14, 2007, among Beneficiary, Virginia Outdoors Foundation and Virginia Board of Historic Resources, that Deed of Lease (Pasture), dated the same date hereof between Grantor, as landlord, and Beneficiary, as tenant, that Deed of Lease (Museum Building), dated the same date hereof, between Grantor, as landlord, and Beneficiary, as tenant, and/or that Archaeological Agreement, dated the same date hereof, between Grantor and Beneficiary.

    (f) Failure by Grantor to timely release mechanic's liens, judgment liens, or such liens within fifteen (15) days of being filed.

    (g) The death, declaration of incompetency, dissolution, liquidation, transfer of substantially all the assets, termination or a material adverse change since the date of the Note in the financial condition of any Obligor.

    (h) If any Obligor shall file a voluntary petition in bankruptcy or shall be adjudicated insolvent or a bankrupt or shall file a petition seeking any arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or if any Obligor shall seek or consent to or acquiesce in the appointment of any Trustee, receiver or liquidator of any of them or of the Premises, or shall make any general assignment for the benefit of creditors.

    (i) If a petition shall be filed against any Obligor seeking any arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation, and shall remain undismissed for an aggregate of ninety (90) days, or if any Trustee, receiver or liquidator of any Obligor or of all or any substantial part of the properties owned by any Obligor or of the Premises shall be appointed without the consent or acquiescence of such Obligor, and such appointment shall remain unvacated for an aggregate of ninety (90) days.

Page 8 of 22
23

(j) If any Obligor shall suffer any judgment or decree for payment of money in an amount greater than $25,000 which is not provided for in full by insurance or any writ of attachment or execution or any similar process is issued or levied against the Premises.

As used herein, the term "Obligor" shall individually and collectively refer to the Grantor and any person or entity that is primarily or secondarily liable on the Note.

5. <u>Remedies.</u>

(a) Upon the occurrence of an Event of Default, the Beneficiary may, at its option and without further notice (unless specifically required by applicable law), declare the Note immediately due and payable and shall have the Trustee (or other person or entity designated by the Beneficiary), take possession of the Premises and proceed to sell the Premises at public auction, for cash or credit, upon any terms the Trustee shall deem appropriate. Before such sale at public auction is made, there shall first be advertisement of the time, place and terms of sale in accordance with applicable law, and there shall be given, at least fourteen (14) days prior to such sale, written notice of the time, place and terms of sale by certified or registered mail to the then owner of the Premises at its last known address, as such owner and address appear on the records of the Beneficiary. The Beneficiary may become the purchaser of the Premises so sold and, except as is otherwise provided by Section 58.1-3340 of the Code of Virginia, 1950, as amended, no purchaser shall be required to see to the proper application of the purchase money. The proceeds of any such sale shall be applied in accordance with the provisions of Section 55-59.4 of the Code of Virginia, 1950, as amended.

(b) Upon the occurrence of an Event of Default, without limitation of Beneficiary's rights of enforcement with respect to the Premises or any part thereof in accordance with the procedures for foreclosure of real estate, Beneficiary may exercise its rights of enforcement with respect to the Collateral or any part thereof under the Virginia UCC (or under the UCC in force in any other state to the extent the same is applicable law) and in conjunction with, in addition to or in substitution for those rights and remedies: (1) Beneficiary may enter upon Grantor's premises to take possession of, assemble and collect the Collateral or, to the extent and for those items of the Collateral permitted under applicable law, to render it unusable; (2) Beneficiary may require Grantor to assemble the Collateral and make it available at a place Beneficiary designates which is mutually convenient to allow Beneficiary to take possession or dispose of the Collateral; (3) written notice mailed to Grantor as provided herein at least ten (10) days prior to the date of public sale of the Collateral or prior to the date after which private sale of the Collateral will be made shall constitute reasonable notice; (4) any sale made pursuant to the provisions of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with and upon the same notice as required for the sale of the Premises under power of sale as provided in paragraph (i) above (5) in the event of a foreclosure sale, whether made by Trustee under the terms hereof, or under judgment of a court, the Collateral and the Premises may, at the option of Beneficiary, be sold as a whole; (6) it shall not be necessary that Beneficiary take possession of the Collateral or any part thereof prior to the time that any sale pursuant to the provisions of this Section is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; (7) Beneficiary may appoint or delegate

any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Beneficiary, including the sending of notices and the conduct of the sale, but in the name and on behalf of Beneficiary.

(c) Upon the occurrence of an Event of Default, the Trustee (or other person or entity designated by the Beneficiary) at the request of the Beneficiary, shall also have the absolute right to enter the Premises and take possession thereof, and Grantor agree to surrender the Premises promptly upon demand. All the Rents and Profits received by the Trustee shall be applied to a reasonable compensation to the Trustee for its services and to the expenses of operating the Premises, with any excess to be applied to payment of amounts due under the Loan Documents. The Beneficiary and the Trustee (at the direction of the Beneficiary) may grant any extension, forbearance or other indulgence as they may deem appropriate.

(d) No right, power or remedy conferred upon or reserved to the Beneficiary or the Trustee by this Deed of Trust is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

6. <u>Trustee</u>. The Trustee shall be under no duty to take any action hereunder except as expressly required, or to perform any act which would involve the Trustee in expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to its satisfaction. All reasonable expenses, charges, counsel fees and other disbursements incurred or made by the Trustee in and about the administration and execution of the trust hereby created, and the performance of its duties and powers hereunder, shall be secured by this Deed of Trust prior to the indebtedness evidenced by the Note, and shall bear interest at the rate prescribed in the Note. Pursuant to the provisions of Section 26-49 of the Code of Virginia, 1950, as amended, or any successor provision, the Beneficiary, with or without cause, is hereby authorized and empowered to substitute and appoint, by an instrument recorded wherever this Deed of Trust is recorded, a trustee or trustees in the place of the Trustee.

7. <u>Miscellaneous</u>.

(a) <u>Successors and Assigns</u>. All the grants, covenants, terms, provisions and conditions herein shall bind Grantor and their successors and assigns and inure to the benefit of the successors and assigns of the Trustee and the endorsees, transferees, successors and assigns of the Beneficiary.

(b) <u>Governing Law</u>. This Deed of Trust shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

(c) <u>Notices</u>. Any notice shall be conclusively deemed to have been received by a party hereto and be effective on the day on which delivered personally to such party at the address set forth below (or at such other address as such party shall specify to the other party in writing) or if sent by registered or certified United States mail, postage prepaid, on the third business day after the day on which mailed, addressed to such party at such address:

23

| | |
|---|---|
| If to the Beneficiary at: | Colonial Williamsburg Foundation<br>P.O. Box 1776<br>Williamsburg, VA 23187<br>Attention: Senior Vice President for Finance and Administration |
| If to the Trustee: | Manus E. Homes<br>c/o First American Title Insurance Company<br>1051 East Cary Street, Suite 1111<br>Richmond, Virginia 23219 |
| If to the Grantor, at: | c/o Minor Ventures<br>199 Fremont Street, 12th Floor<br>San Francisco, CA 94105 |
| and to: | Steven W. Blaine, Esq.<br>LeClairRyan<br>123 East Main Street<br>Charlottesville, VA 22902 |

(d) Further Assurances. Grantor shall, at its cost and without expense to the Trustee or the Beneficiary, do, execute, acknowledge and deliver every such further act, deed of trust, conveyance, mortgage, assignment, notice of assignment, transfer and assurance as the Trustee or the Beneficiary shall from time to time reasonably require for the better assuring, conveying, assigning, transferring and confirming unto the Trustee or the Beneficiary the property and rights hereby conveyed or assigned or intended now or hereafter so to be or which Grantor may be or may hereafter become bound to convey or assign to the Trustee or the Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering or recording this Deed of Trust.

(e) Severability. If any term, covenant or condition of this Deed of Trust, or the application thereof to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Deed of Trust, or the application of such term, covenant or condition to other persons or circumstances, shall not be affected thereby, and each term, covenant or condition of this Deed of Trust shall be valid and enforceable to the fullest extent permitted by law.

(f) Captions: Gender; Number. The captions hereof are for convenience of reference only and shall neither limit nor enlarge the provisions hereof. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders. The singular shall include the plural and vice versa unless the context specifically requires otherwise.

(g) Survival. All representations, warranties and covenants made by Grantor pursuant to Section 1 of this Deed of Trust shall survive (a) the sale of all or a part of the Premises, (b) the assumption by another party of the Grantor's obligations hereunder, (c) the forbearance or

Page 11 of 22

extension of time for payment or performance of any obligation hereunder, whether granted to Grantor or a subsequent owner of the Premises, or (d) the release of all or any part of the Premises securing such obligations or the release of any party who assumes payment of the same until such time as the Note has been paid in full.

8.  Applicable Law.  This Deed of Trust is made under the provisions of Article 2 of Chapter 4 of Title 55 of the Code of Virginia of 1950, as amended, and except to the extent hereinabove expressly provided otherwise, shall be construed to impose and confer upon the parties hereto and the Beneficiary secured hereby all of the duties, rights and obligations prescribed in short from by Section 55-60 or 55-59.2, as follows:

    (a) Identified by Trustee's Signature;

    (b) Deferred Purchase Money:

    (c) Exemptions Waived and Subject to Call Upon Default;

    (d) Renewal, Extension or Reinstatement Permitted;

    (e) Substitution of Trustee(s) permitted for any reason whatsoever;

    (f) Any Trustee may act;

    (g) Right of Anticipation Reserved;

    (h) Insurance Required:  Full Replacement Cost of the Improvements;

    (i) Advertisement Required:  Once a day for three (3) consecutive days.

NOTICE:  THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

IN WITNESS WHEREOF, Grantor has caused this Deed of Trust to be executed as of the day and year first above written.

CARTER'S GROVE, LLC,
a Virginia limited liability company

By: _____

Halsey M. Minor, Manager

STATE OF _____ )
                                                         )   to Wit:
CITY/COUNTY OF _____ )

The foregoing Deed of Trust was acknowledged before me in the _____, _____, this the _____ day of _____, 20__ by Halsey M. Minor, who is _____ personally known to me, or _____ who produced _____ as identification, as  Manager of Carter's Grove, LLC, a Virginia limited liability company, on its behalf.

_____

Notary Public

My commission expires: _____
My registration number is: _____

Page 13 of 22 ~~23~~

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _12/17/07_, before me, _Sharron Callender Craig_
Date                          Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Halsey M. Minor_
Name(s) of Signer(s)

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Sharron Callender Craig_
Signature of Notary Public

SHARRON CALLENDER CRAIG
Commission # 1571530
Notary Public - California
Los Angeles County
My Comm. Expires May 19, 2009

Place Notary Seal Above

――――――――――― OPTIONAL ―――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Deed of Trust_

Document Date: _12/17/07_          Number of Pages: _23_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☒ Other: _Manager, LLC_

Signer Is Representing: _Carter's Grove LLC_

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

**Exhibit A**

**LEGAL DESCRIPTION**

**"CARTER'S GROVE" PARCELS**

CG PARCEL A

ALL that certain parcel or tract of land together with all improvements thereon and all rights (including riparian), ways, easements, privileges and appurtenances thereto belonging, situate and lying in Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia, commonly known as "Carter's Grove", containing approximately 406.90 acres, shown as Parcel I on a plat of survey made by Chas. H. Fleet & Associates, Civil Engineers and Surveyors, dated December 18, 1963, entitled "Map of Properties Situated on Route No. 60 and East of the James River being known as 'Carter's Grove', James City Co., Va.", a copy of which is attached to and made a part of that certain deed dated March 1, 1964 made by and between Ada McCrea Donaldson, Sallie Harrison Eddy and Frederick A. Stahl, as Executors and Trustees of the Estate of Mary Corling McCrea, deceased, Sealantic Fund, Inc., et als., a copy of such plat of survey being recorded in the Office of the Clerk of the Circuit Court for the City of Williamsburg and James City County, Virginia, in Plat Book 21 at page 35, and according to which plat is more particularly described by metes and bounds as follows:

BEGINNING at a point where the southerly line of State Route No. 667 intersects the westerly boundary line of State Route No. 60, which point is marked by a rod; thence continuing along and fronting on the westerly boundary line of State Route No. 60 as follows:  S. 39° 30' E. 610.04 feet to a stone; along a curve to the right a distance of 496.0 feet to a stone; S. 18° 04' E. 1305.60 feet to a rod; along a curve to the left a distance of 336.0 feet to a rod which marks the point where the boundary line common to this property and property now or formerly owned by B. C. Green intersects the westerly line of Route No. 60; thence leaving Route No. 60 and running along the Green common boundary line S. 38° 42' W. 126.0 feet to a rod on an old ditch line which marks the Green common boundary line thence running along said old ditch line as follows;  S. 8° 46' 30" W. 374.38 feet to a pipe; S. 13° 53' 40" W. 578.50 feet to a rod; S. 13° 20' W. 402.45 feet to a pipe; S. 41° 53' W. 123.0 feet to a pipe; S. 38° 15' W. 208.0 feet to a pipe; S. 33° 14' W. 134.20 feet to a pipe; S. 24° 11' W. 219.20 feet to a pipe; S. 19° 58' W. 231.44 to a pipe; S. 24° 18' W. 220.65 feet to a pipe in a marsh; thence running through said marsh as follows;  S. 54° 22' W. 433.15 feet to a pipe; S. 35° 26' W. 369.73 feet to a post; S. 5° 15' W. 331.32 feet to a point; S. 9° 00' E. 194.04 feet to a point; S. 1° 30' W. 288.42 feet to a point at the head of Grice's Creek; thence along Grice's Creek as follows:  S. 30° 00' W. 262.02 feet to a point; S. 71° 00' W. 354.42 feet to a point; and S. 63° 09' W. 380 feet more or less to the mean low water mark on the eastern bank of the James River; thence running northwesterly along the mean low water mark of the James River 6125 feet more or less to a point which is S. 52° 04' W. of a pipe which is in the common boundary line of this property and property now or formerly owned by Edloe; thence leaving the mean low water mark of the James River and running N. 52° 04' E. 100 feet to a stone; thence S. 62° 11' E. 219.45 feet to a pipe on the easterly side of an old road; thence continuing along the easterly and northerly side of the old road as follows; S. 26° 39' E. 137.85 feet to a pipe; S. 26° 19' E. 147.73 feet to a rod; S. 59° 20' E. 170.13 feet to a pipe;

S. 78° 40' E. 229.96 feet to a pipe; S. 50° 41' E. 135.50 feet to a stone; S. 89° 26' E. 39.60 feet to a pipe; N. 40° 41' E. 355.10 feet to a rod; and N. 59° 58' E. 1060.04 feet to the westerly boundary line of State Route No. 667; thence along the westerly boundary line of Route No. 667 S. 29° 40' E. 20.0 feet to the southerly boundary line of Route No. 667; thence along the southerly boundary line of Route No. 667 N. 60° 16' 30" E. 2480.0 feet to the point of beginning.

IT BEING a part of the same real estate conveyed to Colonial Williamsburg, Incorporated, a Virginia corporation, by two instruments from Sealantic Fund, Inc., a New York corporation, 1) Gift Instrument for personal property dated December 19, 1969, recorded December 30, 1969, in the Clerk's Office of the Circuit Court of the County of James City and City of Williamsburg, Virginia, in Deed Book 124, Page 633; 2) Deed of Gift and Assumption, dated December 30, 1969, recorded December 30, 1969, in the aforesaid Clerk's Office, in Deed Book 124, Page 634.

LESS AND EXCEPT that real property conveyed by The Colonial Williamsburg Foundation to The County of James City, Virginia by deed dated January 15, 1992, recorded in the Clerk's Office of the Circuit Court of the County of James City and City of Williamsburg, Virginia in Deed Book 545, at page 426, and as set out as "PARCEL I TOTAL PARCEL = 32.8242 ACRES NET DEVELOPABLE AREA = 30.8000 ACRES" on plat entitled "SUBDIVISION OF PROPERTY OF COLONIAL WILLIAMSBURG FOUNDATION BEING PART OF THE CARTER'S GROVE & LOCUST GROVE TRACTS SITUATED IN THE ROBERTS DISTRICT JAMES CITY COUNTY, VIRGINIA", by Langley and McDonald, P.C., dated 05/09/91, which plat is recorded in the aforesaid Clerk's Office in Plat Book 55, at Page 44; and

LESS AND EXCEPT that real property conveyed by The Colonial Williamsburg Foundation to Commonwealth of Virginia by deed dated November 21, 1994, recorded in the aforesaid Clerk's Office in Deed Book 716, at Page 48, and as set out on Sheets 3 and 4 of the plans for Route 60 State Highway Project 0060-047-110, RW201, recorded in the aforesaid Clerk's Office.

## CG PARCEL B

ALL those certain lots, pieces, or parcels of land situate, lying and being in Roberts Magisterial District in James City County, Virginia and being more particularly shown and designated as "PROPERTY BEING CONVEYED FROM TAX PARCEL 582-01-00-002 'MARTIN'S BEACH' TO TAX PARCEL 591-01-00-030 'CARTER'S GROVE' 17,237 S.F. (0.3957 ACRE)" on plat entitled " PLAT SHOWING BOUNDARY LINE ADJUSTMENT BETWEEN THE PROPERTIES KNOWN AS 'CARTER'S GROVE' & 'MARTIN'S BEACH' PROPERTY OF THE COLONIAL WILLIAMSBURG FOUNDATION, ROBERTS MAGISTERIAL DISTRICT, JAMES CITY COUNTY, VIRGINIA" made by Vanasse Hangen Brustlin, Inc., last revised 05/08/07, and recorded in the Clerk's Office of the Circuit Court of the County of James City and City of Williamsburg, Virginia as Document No. 070017071, more particularly described by metes and bounds as follows:

I

BEGINNING at a point on the northerly edge of a private road commonly known as "Carter's Grove Country Road", said point being 286.75 feet in a southwesterly direction from the right of way of Ron Springs Road-State Route 667 and also being a point in the southerly property line of the now or formerly Colonial Williamsburg Foundation Property. Thence, crossing "Carter's Grove Country Road" and with the now vacated former property lines of Carter's Grove Estate the following courses and distances:

S52°06'02"W 773.24 feet to a point; S32°49'02"W 355.08 feet to a point; S82°42'02"W 39.60 feet to a point; N58°32'58"W 135.49 feet to a point in the southerly property line of the forementioned Colonial Williamsburg Foundation Property.

Thence with the southerly property lines of the aforementioned Colonial Williamsburg Foundation Property the following courses and distances:

S62°25'07"E 92.00 feet to a point; S82°47'31"E 82.00 feet to a point; N31°58'19"E 301.75 feet to a point; N51°32'14"E 567.00 feet to a point; N50°30'04"E 231.37 feet to a point; S37°53'58"E 20.00 feet to the point of beginning.

II

BEGINNING at a point in the southerly property line of the now or formerly Colonial Williamsburg Foundation Property and being approximately 2020 feet in a southwesterly direction from the right of way of Ron Springs Road-State Route 667. Thence with the now vacated former property lines of Carter's Grove Estate the following courses and distances:

N34°10'59"W 87.54 feet to a point; N34°35'01"W 22.62 to a point in the southerly property line of the aforementioned Colonial Williamsburg Foundation Property.

Thence with the southerly property line of the aforementioned Colonial Williamsburg Foundation Property the following courses and distances:

S45°13'58"E 53.00 feet to a point; S24°25'30"E 59.00 feet to the point of beginning.

THEY BEING a part of the same real estate conveyed to Colonial Williamsburg, Incorporated, a Virginia corporation, by Deed from Virginia E. Greene, dated October 2, 1969, recorded October 3, 1969, the aforesaid Clerk's Office, in Deed Book 123, Page 497.

## CG PARCEL C

### I

ALL that certain piece or parcel of land located in James City County, Virginia, shown and set out as "9.5205 ACRES TO BE TRANSFERRED FROM LOCUST TRACT TO CARTER'S GROVE TRACT", on a plat entitled, "SUBDIVISION OF PROPERTY OF COLONIAL WILLIAMSBURG FOUNDATION, BEING PART OF LOCUST GROVE TRACT TO BE CONVEYED TO WILLIAMSBURG DEVELOPMENT, INC.", made by Langley and McDonald, P.C., and dated April 27, 1992, which plat is recorded in the Clerk's Office of the Circuit Court of the County of James City and City of Williamsburg, Virginia in Plat Book 56, at Page 33.

LESS AND EXCEPT all that real property conveyed by The Colonial Williamsburg Foundation to Williamsburg Development, Inc. by deed dated September 23, 2003, recorded in the Clerk's Office of the Circuit Count of the County of James City and City of Williamsburg, Virginia as Instrument No. 030030432, and as set out as "AREA FROM TAX PARCEL 5910100030A TO BE ADDED TO TAX PARCEL 5920100017" on plat entitled "PLAT SHOWING PARCEL 10 B BEING A SUBDIVISION OF THE PROPERTY OF WILLIAMSBURG DEVELOPMENTS, INC., AND A BOUNDARY LINE ADJUSTMENT BETWEEN THE PROPERTIES OF WILLIAMSBURG DEVELOPMENTS, INC., AND COLONIAL WILLIAMSBURG FOUNDATION AT THE JAMES RIVER COMMERCE CENTER" made by LandMark Design Group and dated 08/14/03, which plat is recorded in the Circuit Court Clerk's Office of James City County and City of Williamsburg, Virginia as Instrument No. 030030432;

### II

ALL certain piece or parcel of land located in James City County, Virginia shown and set out as "AREA FROM TAX PARCEL 5920100017 TO BE ADDED TO TAX PARCEL 5910100030A" on the plat entitled "PLAT SHOWING PARCEL 10 B BEING A SUBDIVISION OF THE PROPERTY OF WILLIAMSBURG DEVELOPMENTS, INC., AND A BOUNDARY LINE ADJUSTMENT BETWEEN THE PROPERTIES OF WILLIAMSBURG DEVELOPMENTS, INC., AND COLONIAL WILLIAMSBURG FOUNDATION AT THE JAMES RIVER COMMERCE CENTER" made by LandMark Design Group and dated 08/14/03, which plat is recorded in the Clerk's Office of the Circuit Court of the County of James City and City of Williamsburg, Virginia as Instrument No. 030030432.

IT BEING the same real estate conveyed to The Colonial Williamsburg Foundation, a Virginia non-stock, non-profit corporation, by deed from Williamsburg Development, Inc., dated September 23, 2003, recorded October 8, 2003, in the Clerk's Office, Circuit Court, James City County, Virginia, as Instrument No. 030030433.

## CG PARCEL D

ALL that certain piece or parcel of land located in James City County, Virginia, shown and set out as "PART OF LOCUST GROVE TRACT" in the northeasternmost corner of a parcel of land shown on a plat entitled "PLAT OF CARTER'S GROVE PROTECTED AREA, EXHIBIT C, BEING PROPERTY OF COLONIAL WILLIAMSBURG FOUNDATION" made by Langley and McDonald, P.C., and dated January 3, 1992, which plat is recorded in Plat Book 55, Page 45.

BEING a part of the same real estate conveyed to Colonial Williamsburg, Incorporated, a Virginia corporation, by Deed from Virginia E. Greene, dated October 2, 1969, recorded October 3, 1969, the Clerk's Office, Circuit Court, James City County, Virginia, in Deed Book 123, Page 497.

## "MARTIN'S BEACH" PARCELS

## MB PARCEL A

ALL that certain tract or parcel of land, situated in Roberts District, formerly Jamestown District, James City County, Virginia, formerly belonging to the estate of the late Charles D. Lee, and lying on the northerly side of Grove Landing Road, and containing eighty-three and thirty-four one-hundredths (83.34) acres, more or less, but being sold and conveyed in gross and not by the acre, and being bounded on the north and east by lands formerly belonging to Mrs. Sadie Lee Taylor; on the southeast and southwest by said Grove Landing Road; and on the northwest and southeast by lands of George S. Martin and of Lillie B. Garner and of Brooks and Richardson, Inc., or their successors in title.  The same being shown upon a plat and survey thereof made by V.D. McManus in June, 1942, entitled "Plat Showing Part of Cedar Grove situated in Jamestown District, James City County, Virginia, Being the Property of the C.D. Lee Estate".

LESS AND EXCEPT from the above described tract (i) all that certain piece or parcel of land previously reserved unto Colonial Investors, Incorporated and fronting on County Road number 656, as set out and shown on a plat entitled, "Plat Showing the Proposed Residual Property of Colonial Investors, Incorporated, Situated in James City County, Virginia", dated December 2, 1969, a copy of which said plat is attached to that deed, dated December 12, 1969, between Colonial Investors, Incorporated, and Colonial Williamsburg, Incorporated, and recorded in the Clerk's Office of the Circuit Court of the City of Williamsburg and County of James City, Virginia, in Deed Book 124, at page 652, and to which said plat reference is hereby made for a more complete description of the property reserved unto the said Colonial Investors, Incorporated, and (ii) all those two (2) certain pieces or parcels of land lying and being in Roberts Magisterial District in James City County, Virginia and being more particularly shown and designated as "PROPERTY BEING CONVEYED FROM TAX PARCEL 582-01-00-002 'MARTIN'S BEACH' TO TAX PARCEL 591-01-00-030 'CARTER'S GROVE' 17,237 S.F. (0.3957 ACRE)" on plat entitled " PLAT SHOWING BOUNDARY LINE ADJUSTMENT BETWEEN THE PROPERTIES KNOWN AS 'CARTER'S GROVE' & 'MARTIN'S BEACH' PROPERTY OF THE COLONIAL WILLIAMSBURG FOUNDATION, ROBERTS MAGISTERIAL DISTRICT, JAMES CITY COUNTY, VIRGINIA" made by Vanasse Hangen

Brustlin, Inc., last revised 05/08/07, and recorded in the aforesaid Clerk's Office as Document No. 070017071, more particularly described by metes and bounds as: (1) beginning at a point on the northerly edge of a private road commonly known as "Carter's Grove Country Road", said point being 286.75 feet in a southwesterly direction from the right of way of Ron Springs Road-State Route 667 and also being a point in the southerly property line of the now or formerly Colonial Williamsburg Foundation Property; thence, crossing "Carter's Grove Country Road" and with the now vacated former property lines of Carter's Grove Estate the following courses and distances: S52°06'02"W 773.24 feet to a point; S32°49'02"W 355.08 feet to a point; S82°42'02"W 39.60 feet to a point; N58°32'58"W 135.49 feet to a point in the southerly property line of the forementioned Colonial Williamsburg Foundation Property; thence with the southerly property lines of the aforementioned Colonial Williamsburg Foundation Property the following courses and distances: S62°25'07"E 92.00 feet to a point; N82°47'31"E 82.00 feet to a point; N31°58'19"E 301.75 feet to a point; N51°32'14"E 567.00 feet to a point; N50°30'04"E 231.37 feet to a point; S37°53'58"E 20.00 feet to the point of beginning, and (2) beginning at a point in the southerly property line of the now or formerly Colonial Williamsburg Foundation Property and being approximately 2020 feet in a southwesterly direction from the right of way of Ron Springs Road-State Route 667; thence with the now vacated former property lines of Carter's Grove Estate the following courses and distances: N34°10'59"W 87.54 feet to a point; N34°35'01"W 22.62 to a point in the southerly property line of the aforementioned Colonial Williamsburg Foundation Property; thence with the southerly property line of the aforementioned Colonial Williamsburg Foundation Property the following courses and distances: S45°13'58"E 53.00 feet to a point; S24°25'30"E 59.00 feet to the point of beginning; and (iii) all that certain lot, piece or parcel of land lying and being in situate and lying in Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia, with improvements thereon and appurtenances thereunto belonging, containing 43.108 acres more of less, being more particularly described by plat of Baldwin and Gregg, Engineers, Surveyors, Planners, Norfolk, Virginia dated March 31, 1970, revised December 9, 1970 and entitled "Property of Colonial Williamsburg Inc. to be Conveyed to Hampton Roads Sanitation District, Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia", and by plat conveyed to Hampton Roads Sanitation District by deed dated July 7, 1971, recorded in the aforesaid Clerk's Office in Deed Book 132, at page 119.

BEING part of the same real estate conveyed to Colonial Williamsburg Incorporated, a Virginia corporation, by deed from Colonial Investors, Incorporated, a Virginia corporation, dated December 12, 1969, recorded December 31, 1969, in the Clerk's Office of the Circuit Court of the County of James City and City of Williamsburg, Virginia in Deed Book 124, at page 652.

## MB PARCEL B

### I

ALL that certain lot, piece or parcel of land together with the improvements thereon situate, lying and being formerly in Jamestown District, but now Roberts District, James City County, Virginia, on the shore of the James River beginning at a marked cedar tree at the corner of the

Bath House on the property now or formerly of George W. Martin and running westerly along the low water mark of the James River 181 feet, more or less, to the center of a small stream separating this land from the land now or formerly of J.W. Fletcher, or run which nearly bisects a small swamp in the rear of the property and empties into said River; thence following the said small stream or run in a diagonal course to a large cypress which marks the easterly boundary line of the said land now or formerly of George W. Martin; thence in a direct line along the line of the said land now or formerly of George W. Martin to the low water mark on the river shore; said land containing one or more acres, but not being sold by the acre, but in gross, together with all rights, privileges and appurtenances thereunto belonging or in anywise appertaining.

## II

ALL that certain lot piece or parcel of land, together with the improvements thereon situate, lying and being formerly in Jamestown District, but now Roberts District, James City County, Virginia containing 3.2 acres, more or less, which parcel of land fronts 221 feet, more or less, on the James River and is part of the tract known as "Cedar Grove" and is more particularly shown and designated on a plat made by Paul R. Wilford, C.E., dated August 18, 1926, recorded in the Clerk's Office of the County of James City on that date in Plat Book 4, page 4.

## III

ALL that certain lot, piece or parcel of land, together with the improvements thereon situate, lying and being formerly in Jamestown District, but now Roberts District, James City County, Virginia, containing one (1) acre, more or less, bounded and described as follows:

Bounded on the southwest and west by James River a distance of 190 feet; south and southeast by Carter's Grove and Lee's a distance of 133 feet from River to Mulberry tree, a distance of 74 feet from the Mulberry tree to peg, and from peg to Cypress 78 feet; on the east and northeast by Lee's, a distance of 270 feet from Cypress tree to Cypress tree and on the north by said C.D. Lee, a distance of 120 feet from Cypress to River.

LESS AND EXCEPT from the above described lots, pieces or parcels MB PARCEL B I, II, AND III all that certain lot, piece or parcel of land lying and being in situate and lying in Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia, with improvements thereon and appurtenances thereunto belonging, containing 43.108 acres more or less, being more particularly described by plat of Baldwin and Gregg, Engineers, Surveyors, Planners, Norfolk, Virginia dated March 31, 1970, revised December 9, 1970 and entitled "Property of Colonial Williamsburg Inc. to be Conveyed to Hampton Roads Sanitation District, Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia", and by plat conveyed to Hampton Roads Sanitation District by deed dated July 7, 1971, in the aforesaid Clerk's Office in Deed Book 132, at page 119.

BEING a part of the same real estate conveyed to Colonial Williamsburg, Incorporated, a Virginia corporation, by Deed from Edward D. Edloe and Mamie P. Edloe, husband and wife, dated December 15, 1969, recorded December 30, 1969, in the Clerk's Office of the Circuit

Court of the County of James City and City of Williamsburg, Virginia in Deed Book 124, Page 626.

## MB PARCEL C

ALL that certain tract, piece or parcel of land containing 68.84 acres, more or less, situate in Jamestown District, James City County, Virginia, as shown and set forth on a plat entitled "JAMESTOWN DIST. JAMES CITY COUNTY, VIRGINIA PLAT SHOWING BOUNDARY SURVEY OF A TRACT OF LAND STANDING IN THE NAME OF PROGRESSIVE ENTERPRISES, INC.", dated June 6, 1967 and made by Vincent D. McManus, C.E., said plat is recorded in the Clerk's Office of the Circuit Court for the City of Williamsburg and James City County, Virginia, in Plat Book 24, page 62, on which plat said property is more particularly described as follows:

BEGINNING at an iron pipe on the Southwesterly side of a partly improved road where the tract hereby described, the property now or formerly of Colonial Investors, Inc., and said partly improved road converge, which point is 1142 feet from Grove Landing Road (Virginia State Route No. 667), thence S. 38° 05' West a distance of 297.67 feet to an iron pipe, thence S. 44° 06' West a distance of 236.00 feet to an iron pipe, thence S. 47° 32' West a distance of 326.0 feet to a point, thence S. 48° 12' West a distance of 386.00 feet to an iron pipe; thence S. 55° 19' West a distance of 168.00 feet to an iron pipe thence S. 70° 30' West a distance of 137.00 feet to an iron pipe, thence N. 11° 05' West a distance of 149.0 feet to an iron pipe, thence N. 9° 55' West a distance of 187.5 feet to a corner Cedar, thence S. 66° 00' West a distance of 172.0 feet to an iron pipe in a Cedar stump, thence N. 46° 14' West a distance of 65.00 feet to an iron pipe, thence S. 71° 26' West a distance of 316.0 feet to an iron pipe, thence S. 81° 05' West a distance of 170.51 feet to a steel post, thence continuing in the same course to a point in the mean low water line of the James River, thence in a general Northwesterly course along said mean low water line of the James River a distance of 1910 feet, more or less, to Welhams Run, (base line: N. 36° 59' West a distance of 275.0 feet to an iron pipe, thence N. 37° 01' West a distance of 241.60 feet to an iron pipe, thence N. 38° 52' West a distance of 940.18 feet to an iron pipe, thence N. 47° 37' West a distance of 252.62 feet to an iron pipe, thence N. 77° 23' West a distance of 153.73 feet to an iron pipe), thence in a general easterly, then northerly, then northeasterly direction along said Welhams Run a distance of 2900 feet, more or less, to a point, thence S. 16° 46' East a distance of 300 feet, more or less, along an old fence to an iron pipe, thence continuing in the same course a distance of 69.71 feet to an iron pipe, thence S. 39° 45' East a distance of 251.36 feet to an iron pipe, thence S. 57° 37' East a distance of 500 feet to an iron pipe, thence S. 62° 15' East a distance of 264.0 feet to an iron pipe, thence S. 77° 40' East a distance of 179.0 feet to an iron pipe, thence S. 31° 19' East a distance of 283.55 feet to an iron pipe, which is the point of beginning, and being bounded on the Southwest by the James River, on the Northwest by Welhams Run, on the Northeast by property now or formerly of Colonial Investors, Inc., and on the Southeast by properties now or formerly of Colonial Investors, Inc., and Edward Edloe.

LESS AND EXCEPT all that certain lot, piece or parcel of land lying and being in situate and lying in Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia, with improvements thereon and appurtenances thereunto belonging, containing 43.108 acres more of less, being more particularly described by plat of Baldwin and Gregg, Engineers, Surveyors, Planners, Norfolk, Virginia dated March 31, 1970, revised December 9, 1970 and entitled "Property of Colonial Williamsburg Inc. to be Conveyed to Hampton Roads Sanitation District, Roberts Magisterial District (formerly Jamestown Magisterial District), James City County, Virginia", by plat conveyed to Hampton Roads Sanitation District by deed dated July 7, 1971, in the aforesaid Clerk's Office in Deed Book 132, at page 119.

BEING a part of the same real estate conveyed to Colonial Williamsburg Incorporated, a Virginia corporation, by Deed of Gift from Sealantic Fund, Inc. a New York corporation, dated December 19, 1969, recorded December 30, 1969, in the City of Williamsburg and James City County, Virginia, in James City County in Deed Book 124, Page 639.

VIRGINIA: CITY OF WILLIAMSBURG & COUNTY OF JAMES CITY
This document was admitted to record on _19 Dec 07_
at __11:37_ AM/PM. The taxes imposed by Virginia Code
Section 58.1-801, 58.1-802 & 58.1-814 have been paid.

| STATE TAX | LOCAL TAX | ADDITIONAL TAX |
|---|---|---|
| $ | $ | $ |

TESTE: BETSY B. WOOLRIDGE, CLERK

BY: _Betsy B. Woolridge_ Clerk

6171629\S

23 23
Page 22 of 22

COMMONWEALTH OF VIRGINIA



OFFICIAL RECEIPT
WILLIAMSBURG/JAMES CITY COUNTY CIRCUIT
DEED RECEIPT

DATE: 12/19/07 TIME: 11:37:21 ACCOUNT: 830CLR070034970A    RECEIPT: 07000052772
CASHIER: CHB    REG: WD45 TYPE: DOT PAYMENT: FULL PAYMENT    RECEIPT: 12/19/07 AT 11:37
INSTRUMENT : 070034970 BOOK:       PAGE:                     RECORDED: 12/19/07 AT 11:37
GRANTOR: CARTER S GROVE LLC                                  Ex: N LOC: CO
GRANTEE: HOLMES, MANUS E                                     Ex: N PCT: 100%
AND ADDRESS : =
RECEIVED OF : FIRST AM TITLE INS                  DATE OF DEED: 12/17/07
CHECK: $34,258.33
DESCRIPTION 1: 406.90 AC PARCEL 1 CARTERS GROVE
           2:                                                PAGES: 23
CONSIDERATION: 10,300,000.00 A/VAL:        .00 MAP:          NAMES: 0
                                               PIN:

301 DEEDS                         28.50 145 VSLF                           1.50
039 DEEDS & CONTRACTS          25,660.00 213 COUNTY GRANTEE TAX        8,553.33
106 TECHNOLOGY TRST FND            5.00 036 DEED PROCESSING FEE           10.00

                                              TENDERED  :            34,258.33
                                              AMOUNT PAID:           34,258.33
                                              CHANGE AMT :                 .00

                      CLERK OF COURT: BETSY B. WOOLRIDGE

DC-18 (1/90)