Craig M. Palik, Esquire
McNamee Hosea, et al.
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
(301) 441-2420
cpalik@mhlawyers.com

Ross C. Reeves, Esq.
Stephanie N. Gilbert, Esq.
Willcox & Savage, P.C.
440 Monticello Ave, Suite 2200
Norfolk, Virginia 23510
(757) 628-5500
rreeves@wilsav.com
sgilbert@wilsav.com

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| **In re:** | * | |
| **CARTER'S GROVE, LLC** | * | Case No. 11-51330-SCS |
|  | * | Chapter 11 |
| Debtor. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**TRUSTEE'S AMENDED MOTION FOR ENTRY OF AN ORDER: (A) APPROVING SETTLEMENT AGREEMENT; AND (B) AUTHORIZING TRUSTEE TO OBTAIN POST-PETITION FINANCING AND RELATED RELIEF**
**(Amended to Attach Omitted Exhibits)**

Stanley J. Samorajczyk, the Chapter 11 Trustee ("Trustee") for the Estate of Carter's Grove, LLC (the "Debtor"), by his undersigned counsel, hereby files this amended motion (the "Motion"), for entry of an order: (a) approving the terms of the Settlement Agreement and Mutual Release (the "Settlement Agreement") entered into between the Trustee and The Colonial Williamsburg Foundation ("CWF"); (b) authorizing the Trustee to (i) enter into certain financing arrangements (the "Loan Facility") with CWF and to perform under the Loan Facility, (ii) grant CWF first priority priming liens that are subject and junior only to any statutory liens securing

1

the payment of real property taxes, and (iii) scheduling interim and final hearings in connection with the Loan Facility; and (c) approving the sale process relating to the sale of 476 acres of real property and related personal property, collectively known as "Carter's Grove" (the "Property"), which Property includes a 24,205 square foot mansion (the "Mansion"). In support of this Motion, the Trustee respectfully states as follows:

## Jurisdiction and Venue

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the case and this Motion are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  This is a core proceeding under 28 U.S.C. § 157(b).

3.  The statutory predicates for the relief requested herein are sections 105, 362, 363, 364, and 507 of chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Bankruptcy Rules 2002, 4001, 6004 and 9019.

## Background

4.  On February 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

5.  On July 21, 2011, the Debtor's case was transferred to this Court.

6.  The Debtor's primary asset is real property commonly referred to as "Carter's Grove." The primary structure located on the Real Property is referred to herein as the "Mansion." The real property, together with the Mansion, is referred to, collectively, as the "Property."

7. On April 4, 2012, the United States Trustee appointed Stanley J. Samorajczyk as Chapter 11 Trustee for the Debtor. By order entered on April 6, 2012, the Court confirmed the Trustee's appointment.

8. Prior to the Petition Date, on or about December 2007, the Debtor, through The Halsey Minor Revocable Trust 1104 (the "Minor Trust") and Halsey M. Minor ("Minor"), entered into a contract for the purchase and sale of Carter's Grove from CWF. In the winter of 2010, Minor experienced financial problems that prevented him from making the final two installments due to CWF pursuant to a certain promissory note executed in connection with the sale.

9. After failing to receive the installment payments, CWF initiated foreclosure proceedings on or about January 26, 2011. In order to stave off foreclosure, the Debtor filed its voluntary petition.

10. On June 24, 2011, the Debtor commenced an adversary proceeding (the "Adversary Proceeding") against CWF. As described in greater detail in the complaint filed in the Adversary Proceeding, the Debtor objected to the claim filed by CWF, and asserted certain affirmative causes of action for recovery against CWF, alleging that CWF knew of and failed to disclose and actively concealed significant defects in the Property.

11. On or about August 26, 2011, CWF filed an answer to the complaint, disputing the validity of the Debtor's claims in the complaint.

12. Rather than litigation, the Debtor and CWF commenced discussions in February 2012 to attempt to resolve the Adversary Proceeding and determine the terms under which CWF would support the sale of the Property. The Debtor and CWF agreed to certain settlement terms,

3

including CWF funding necessary repairs to the Mansion, as well as a date certain to sell the Property.

13. On March 21, 2012, the Debtor filed its Motion for Entry of an Order: (A) Approving Settlement Agreement; (B) Authorizing Debtor to Obtain Post-Petition Financing and Related Relief; and (C) Approving Sale Process of the Debtor's Real Property (the "First Motion to Compromise"), seeking approval of its settlement agreement with CWF.

14. On March 27, 2012, the Court denied the First Motion to Compromise on the basis that the Court had ordered the appointment of a Chapter 11 Trustee at the conclusion of a hearing held on March 22, 2012.

15. Upon the Trustee's appointment, the Trustee and his counsel engaged in extensive discussions with CWF, representatives of the Debtor and others (including holders of historic preservation easements on the property) concerning the claims and defenses asserted in Adversary Proceeding. Effort was undertaken to understand and analyze the factual allegations made by each of the parties and to review the extensive amount of documentation (including 13 CD ROMs of documents exchanged in discovery or otherwise related to the Adversary Proceeding) that was provided to the Trustee. Multiple site visits were undertaken to see first-hand the condition of the Property. The Trustee's counsel also researched the applicable federal and state law as it related to the facts that had been discovered and advised the Trustee of their research and legal analysis. The Trustee was unable to find evidence that the Property is contaminated or that CWF had defrauded the Debtor and, thus, concluded that the allegations in the Adversary Proceeding regarding contamination and fraud were unfounded and/or not supported by applicable law.

16. The Trustee then approached CWF regarding the settlement of the Adversary Proceeding. After careful negotiation, the Trustee and CWF have agreed to certain settlement terms which have been reduced to an agreement (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as "Exhibit A." In essence, the Settlement Agreement requires that CWF fund, as a loan to the estate, the necessary repairs and day-to-day costs of operating and maintaining the Mansion, as well as the payment of the Trustee's attorneys and other professional fees in exchange for the Trustee's agreement to dismiss with prejudice the Adversary Proceeding.

## The Settlement Agreement

17. The Trustee and CWF have agreed, subject to the Court's approval, to the following key terms and conditions that resolve all claims that the Trustee and CWF have against one another:

(1) A protocol for the repair and restoration of Carter's Gove to the condition and state of repair existing on December 17, 20007, when it was sold to the Debtor, provided however, that the roof will also be repaired (a repair that the Debtor was contractually obligated to make at the time it acquired the property in 2007, but failed to do).

(2) CWF's agreement to fund, upon a super priority, first position lien basis, (a) the expenses of all repairs to restore Carter's Grove to the same condition at the time it was sold to the Debtor on December 17, 2007, plus additional roof repairs, upon an agreed protocol; (b) the operating expenses of Carter's Grove until Carter's Grove is sold; (c) and the allowed administrative expenses of the Estate for the Trustee's professionals up to $525,000.

(3) The settlement of the claims contained in the Adversary Proceeding with (a) an exchange of mutual releases of all claims raised by the Debtor in the Adversary Proceeding against CWF; and (b) the Trustee's acknowledgment of CWF's first priority lien claim against the estate.

Protocol for Repairs to Carter's Grove

- At no cost to the Trustee, CWF will develop a schedule of the repairs that are necessary to protect the Mansion from further deterioration and to facilitate the sale process (described below) and to comply with the Easement. CWF shall present the proposed list of work to the Trustee. The Trustee shall confer with CWF and VDHR regarding the

5

nature and scope of the repairs needed and the Parties will work in good faith to agree upon the necessary repair work.  CWF agrees to fund the actual costs of the repairs that CWF and the Trustee mutually agree will be completed (the "Required Repairs"). The Required Repairs are currently budgeted at $800,000; however, CWF will agree to the fund the actual cost of the repairs, even to the extent it exceeds the current budget.

- Subject to any necessary Bankruptcy Court approval, the Trustee will engage a consultant acceptable to CWF (the "Trustee's Construction Advisor") to advise the Trustee on the proposals submitted by CWF.  The fees and costs payable to the Construction Advisor shall be administrative expenses of the chapter 11 estate, but shall not be included in the costs of the Required Repairs.  The costs of the Trustee's Construction Advisor may be funded through any source of cash available to the Trustee, including the advances from CWF, (described below), or the proceeds of the sale of the Property after payment in full of the "CWF Claims" (as defined below).

- After consulting with the Trustee and the Virginia Department of Historic Resources ("VDHR") regarding the Required Repairs, CWF will have authority to engage in the following actions:  (a) obtain proposals for the completion of the Required Repairs; (b) provide those proposals to the Trustee and VDHR, as soon as practicable after obtaining them; (c) execute contracts for the completion of all Required Repairs; and (d) oversee and supervise the actual completion of the Required Repairs consistent with the provisions of the Easement and the approval rights of VDHR.  CWF shall serve as general contractor with respect to the completion of the Required Repairs.  The Required Repairs shall be performed in accordance with the *Secretary of the Interior's Standards for the Treatment of Historic Properties* applicable thereto.

- If the Trustee concludes, in the exercise of his reasonable discretion, that any repairs recommended by CWF are not necessary, such repairs will not be included in Required Repairs, and CWF may elect either (a) not to perform those repairs, or (b) to proceed with such repairs and seek to add the costs thereof to its CWF Claim under its Note and Deed of Trust, as protective advances.  The Trustee reserves his right to challenge the addition of the cost of any such repairs performed by CWF that are not Required Repairs to the balance owing to CWF.

- Neither the Trustee nor CWF shall be liable to any party or entity for the manner, timing or scope of the Required Repairs.

- CWF shall remove the piles of debris on the Property and dispose of them in a proper manner off the Property.

Advances to be made by CWF

- CWF shall advance to the Trustee the sum of $113,000 on an interim basis due to the Trustee's need to fund administrative operating expenses and critical and time-sensitive repairs. A separate motion has been filed with the Court to obtain approval of this interim financing.

6

- CWF shall advance directly to the Trustee the funds needed to fund the Required Repairs as and when they are due.

- To fund the Trustee's professionals' administrative expenses, CWF will advance to the Trustee (a) up to $25,000 to pay for accounting services, and (b) up to an additional $500,000 to fund attorneys' fees and such other professional costs as the Trustee elects to pay from such advances.

- CWF agrees to subordinate the CWF Claims, as defined below, to (a) the Trustee's compensation in such amount as is hereafter awarded by the Bankruptcy Court, and (b) all direct costs of sale, including the fees and expenses payable to the "Broker," as defined below. Based on this subordination, the Trustee's compensation and the fees and expenses payable to the Broker, will be paid from the proceeds of the sale of the Real Property before the CWF Claims are paid, and the CWF Claims will thereafter be paid in full from the sale proceeds.

- Upon mutual agreement of the Trustee and CWF, CWF may in its sole and absolute discretion, advance sums in excess of the maximums set forth above (the "New CWF Advances").

- Each advance made that constitutes part of the New CWF Advances shall earn interest from the date actually funded to the Trustee through the date that it is repaid, at the rate of 4% per annum.

- The CWF Claims, including the New CWF Advances, shall be all due and payable on May 31, 2014 (the "Final Extension Date").

Marketing of Real Property

- The Trustee shall engage a licensed real estate broker who is reasonably acceptable to CWF (the "Broker") to list the Real Property. The Broker shall commence marketing the Real Property not later than January 2, 2013, and shall diligently market the Real Property until it is sold or the CWF Claims (as defined below) are indefeasibly paid in full in cash. The Broker shall deliver any written offer received for the Real Property to the Trustee and to CWF simultaneously and promptly after receipt.

- The Trustee shall promptly file a motion to sell the Real Property should an offer acceptable to the Trustee be made.

Settlement of CWF's Claim and Dismissal of Adversary Proceeding

- CWF's secured claim shall be allowed in the full amount owing under the Note and Deed of Trust, including interest at the contract rate, late charges, and attorneys' fees and costs until the Note is fully paid. CWF will be entitled to recover its reasonable attorneys' fees

7

and costs incurred after May 31, 2012.  This total balance as so allowed shall constitute the "CWF Claims."

- The Adversary Proceeding will be dismissed with prejudice immediately after the Effective Date of the Settlement Agreement.

- The Trustee shall not challenge the validity or enforceability of the Easement (as defined in the Settlement Agreement).

- Mr. Minor shall not be released from his obligations under the Guarantee.  CWF reserves the right to enforce that Guarantee at any time.

　　　　1.

Disposition of the Real Property

- If the Trustee has not yet paid the CWF Claims in full in cash by May 1, 2014, the Trustee will sell the Property pursuant to Bankruptcy Code § 363, free and clear of all liens, claims and interests other than secured real property taxes and the Easement, with any such sale scheduled to close by May 31, 2014, or such later date to which the Trustee and CWF may mutually agree.

- The Trustee will conduct an auction pursuant to Bankruptcy Code § 363 should he proceed with CWF as the stalking horse bidder.

- If the sale does not occur by the timeframe listed above, the automatic stay that arose upon the commencement of the Debtor's Chapter 11 Case and any post-confirmation injunction shall be terminated to allow CWF to enforce all of its rights under its loan documents.

Miscellaneous

- The Bankruptcy Court shall have the exclusive jurisdiction to enforce the terms of the Settlement Agreement and resolve any claims, disputes, and rights thereunder asserted by any party in interest; *provided, however*, if a dispute arises with VDHR or the Virginia Outdoors Foundation ("VOF") as to the requirements of the Easement, the administrative procedures for addressing such disputes, as provided by the laws of the Commonwealth of Virginia and the policies and procedures of VOF and VBHR and VDHR, shall be followed by and shall govern their respective rights and responsibilities.

18.　　　The Settlement Agreement includes provisions outlining the Loan Facility that the Trustee proposes to enter into with CWF, which are thoroughly described below.

8

## Relief Requested

19. By this Motion, the Trustee seeks approval of the Settlement Agreement reached by the Trustee and CWF, and authorization to enter into the Settlement Agreement pursuant to Bankruptcy Rule 9019.

20. The Trustee further seeks, pursuant to sections 105(a), 362, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001, the Court's entry of interim and final orders authorizing and/or approving, *inter alia*:

Borrowing: The Trustee to obtain post-petition financing (i) in an amount currently estimated to be $800,000 or in such greater amounts as may be required, to fund the expenses associated with the repairs that are necessary to protect the Mansion and restore it to the condition that it was in December 2007, plus necessary roof repairs; (ii) to fund the actual costs of the reasonably necessary expenses to maintain the Mansion and the Property through the sale and marketing period, including, but not limited to, insurance premiums and the salaries owing to Robert B. Mays and Tamara R. Mays, and benefits provided to them, from and after April 1, 2012; and (iii) to fund the allowed administrative expenses of the Estate for the Trustee's professionals up to $525,000.

Adequate Protection: The grant of superpriority claim status to the claims of CWF under the Loan Facility, which will have priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, including a claim pursuant to section 364(c)(1) of the Bankruptcy Code.

Priming Liens: As security for the repayment of the borrowings and all other obligations arising under the Loan Facility, the grant to CWF of a first priority priming security interests in and liens upon substantially all of the property and assets of the Debtor, subject only to any statutory liens securing real property tax claims.

Interest: The loan will accrue interest at a rate of 4% per annum.

Term: The advances under the loan will be due and payable on May 31, 2014.

Modification of Automatic Stay: The automatic stay will be modified to permit CWF to exercise any and all rights against the property of the estate on and after May 31, 2014.

Scheduling: A final hearing on this Motion and entry of a final order authorizing the Loan Facility on a final basis pursuant to Bankruptcy Rule 4001.

## Basis for Relief

**A. The Settlement Agreement Should be Approved as it is in the Best Interest of the Estate and All Parties In Interest**

21. Bankruptcy Rule 9019 states "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. In determining whether to approve a compromise, the Court must look at various factors and determine whether the compromise is in the best interest of the bankruptcy estate and whether it is fair and equitable to the creditors of the bankruptcy estate. *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997).

22. These factors include: (a) the probability of success in the litigation; (b) the potential difficulties, if any, in collection; (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors. *Id. See also In re Martin*, 91 F.3d 389 (3d Cir. 1996)("To minimize litigation and expedite the administration of a Bankruptcy Estate, compromises are favored in Bankruptcy").

23. The Trustee believes that the settlement reached with CWF as summarized above and set forth in detail in the Settlement Agreement annexed hereto will avoid litigation expenses, permit the Trustee to repair, maintain and preserve the value of the Property, and provide the Trustee and CWF with the necessary time to market and sell the Property for the benefit of all parties in interest. The proceeds of such sale will be used to satisfy the allowed secured claims against the Debtor's estate, with any surplus used to satisfy administrative expenses, priority and unsecured claims against the estate.

24. The Trustee believes that benefits of the Settlement Agreement outweigh the benefits of litigating the claims in the Adversary Proceeding when the time and expense associated with prosecuting such claims is taken into consideration and the risk associated with

adjudicating such claims to conclusion. The Trustee believes that the terms and conditions of the Settlement Agreement not only bring closure to the pending issues between the Trustee and CWF but also provide the Trustee with the best opportunity to preserve and maximize the value in the Debtor's estate for the benefit of all parties in interest. The Settlement Agreement will also form the foundation upon which a new chapter in the life of Carter's Grove can be written, ensuring that this historic national treasure will be preserved for generations to come.

25. Accordingly, the Trustee respectfully requests that the Court approve the Settlement Agreement in its entirety.

**B. The Trustee Has an Immediate Need for Liquidity in the Form of the Loan Facility**

26. As the Debtor's estate does not generate any revenue, it is necessary for the Trustee to obtain financing from CWF to fund the repairs and other necessary maintenance expenses. The Trustee has an immediate need to obtain access to the proposed Loan Facility so that he can properly preserve and maintain the Mansion and surrounding Property. Without the Loan Facility, the Trustee would not be able to effectively market the Property.

27. Given the Debtor's inability to generate revenue or to access other unencumbered collateral, the Trustee believes that it would be very difficult to obtain unsecured and/or other secured financing similar to the Loan Facility with any other lender. In fact, no other creditor or lender has offered to provide financing to the Debtor's estate, notwithstanding the Trustee's efforts.

**C. Legal Authority Exists for Approving the Loan Facility**

28. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt (a) with priority over any or all

11

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code; or (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien. See 11 U.S.C. 364(c).

29. Furthermore, if a debtor is unable to obtain credit under the provisions of Bankruptcy Code section 364(c), the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien." 11 U.S.C. 364(d).

30. Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).

31. Bankruptcy Rule 4001(d) provides in relevant part that (i) a motion for approval to modify or terminate the automatic stay shall be served on any official creditors' committee, on the creditors included on the list filed under Bankruptcy Rule 1007(d), and on such other entities as the court may direct, and (ii) objections may be filed within fifteen (15) days of the mailing of the notice of the motion and the time for filing objections thereto. Fed. R. Bankr. P. 4001(d)(1) – (2).

**D. The Loan Facility Should be Approved**

32. Due to the nature of the Property and the overall declining economic conditions, the Trustee concluded that it would be futile to obtain post-petition financing on an unsecured

12

basis or on a junior priority basis to the liens held by CWF, AVN and Sotheby's within the time period that the Trustee's situation permitted. *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Dec. 9, 2008) (authorizing credit on a super-priority basis where the debtor is unable to obtain post-petition financing on an unsecured or junior priority basis); *see also, In re The Rowe Cos.*, Case No. 06-11142 (SSM) (Bankr. E.D. Va. Oct. 16, 2006 (same); *In re US Airways, Inc.*, Case No. 04-13819 (SSM) (Bankr. E.D. Va. Feb. 28, 2005) (same); *In re NTELOS, Inc.*, Case No. 03-32049 (DOT) (Bankr. E.D. Va. March 24, 2003) (same); *In re AMF Bowling Worldwide, Inc.*, Case No. 01-61119 (DHA)(Bankr. E.D. Va. Aug. 8, 2001 (same).

33. The Trustee negotiated the Loan Facility with CWF in good faith, at arm's length, and with the purpose of effectuating the proposed Settlement Agreement pursuant to the Trustee's sound business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a trustee considerable deference in acting in accordance with his business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonal business); *see also, In re Ames Department Stores,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.").

34. The financing under the Loan Facility provides the necessary liquidity to the Trustee and thus will enable the Trustee, *inter alia*: (a) to make the Required Repairs; (b) see to

13

the day-to-day maintenance of the Mansion and surrounding real property; (c) avoid immediate and irreparable harm to the Mansion; and (d) permit the Trustee to continue to sell the Mansion and surrounding real property for the benefit of creditors of the estate.

35. As the Debtor does not have the ability to generate revenue, such financing is the sole means of sustaining the Debtor and maintaining the Mansion while the Trustee and CWF embark on a marketing process that aims to sell the Debtor's property and use the proceeds to satisfy the claims against the estate. Without the financing provided by the Loan Facility, the Trustee will not be able to make the necessary Required Repairs, adequately maintain the Mansion or effectively market the Property.

36. The terms and conditions of the Loan Facility are fair and reasonable and were negotiated by the parties in good faith and at arm's length.

### E. Modification of the Automatic Stay is Appropriate

37. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The proposed Interim Order contemplates a modification of the automatic stay (to the extent applicable), to the extent necessary to permit CWF to enforce its rights and remedies under the Loan Facility in the event that the advances are not repaid by the Final Extension Date (May 31, 2014).

38. Stay modification provisions of this kind are ordinary and standard features of post-petition, debtor-in-possession financing facilities and, in the Trustee's business judgment, are reasonable under the present circumstances. Accordingly, the Trustee respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order and the Loan Facility.

**F. Waiver of The Stay Provided by Bankruptcy Rule 6004 is Appropriate.**

39. Bankruptcy Rule 6004(h) provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that the Court waive this fourteen day stay with respect to those aspects of the Motion that do not implicate the use of cash collateral. For the reasons discussed above, initial funding of amounts under the Loan Facility is critical to the repair and maintenance of the Debtor's property.

### Request for a Final Hearing Date

40. A final hearing date on this Motion has been scheduled for September 5, 2012 at 11:00 a.m., in the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division, 600 Granby Street, 4th Floor, Norfolk, VA 23510   No interim hearing date is required.

### Notice

41. Notice of this Motion and of the hearing date has been given to: (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) counsel for CWF, AVN Air, LLC, and Sotheby's, Inc.; (iii) counsel for the Debtor; and (iv) the Debtor's general unsecured creditors upon the Court's advisement of a hearing date. The Debtor submits that, under the circumstances, no other of further notice of the Motion is required.

### No Prior Request

42. No previous motion for the relief sought herein by the Trustee has been made to this or any other Court.

### Conclusion

WHEREFORE Stanley J. Samorajczyk respectfully requests that the Court: (i) enter an order substantially in the form of the proposed Order attached hereto as "Exhibit B;" and (ii) grant the Debtor such other and further relief as is just.

Dated: August 14, 2012

> Respectfully submitted,
>
> Stanley J. Samorajczyk
> *Chapter 11 Trustee*
> By Counsel

MCNAMEE HOSEA JERNIGAN
KIM GREENAN & LYNCH, P.A.
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
(301) 441-2420 (Telephone)
(301) 982-9450 (Facsimile)

By:     /s/ Craig M. Palik_____
        Craig M. Palik, Va. Bar No. 45728
        *Counsel to Chapter 11 Trustee*

and

WILLCOX & SAVAGE, P.C.
440 Monticello Ave, Suite 2200
Norfolk, Virginia 23510
(757) 628-5500 (T)
(757) 628-5566

By:     /s/ Ross C. Reeves_____
        Ross C. Reeves, Va. Bar No. 13628
        *Counsel to Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of August 2012, a true and correct copy of the foregoing Amended Motion has been furnished by first class mail, postage prepaid, facsimile and/or via electronic transmission to:

Robert S. Westermann
Hirschler Fleischer, P.C.
2100 East Cary Street
The Edgeworth Building
Richmond, VA 23223

Sheila G. de la Cruz
Hirschler Fleischer, P.C.
P.O. Box 500
Richmond, VA 23218-0500

Stephen J. Darmody
Foley & Lardner, LLP
2 South Biscayne Blvd., Suite 1900
Miami, FL 33131-1832

Kenneth N. Whitehurst, III
Office of U.S. Trustee
200 Granby Street
625 Federal Building
Norfolk, VA 23510

Adam A. Lewis, Esq.
John A. Trocki, Esq.
Morrison & Forester LLP
425 Market Street
San Francisco, California 94105

Jeffrey C. Krause, Esq.
Stutman Treister & Glatt
1901 Avenue of the Stars
12th Floor
Los Angeles, CA  90067

Curtis G. Manchester , Esq.
Reed Smith LLP
Riverfront Plaza - West Tower
901 E. Byrd Street, Suite 1700
Richmond, VA  23219

Melissa M. Watson Goode, Esquire
Jason L. Hamlin, Esquire
Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510

Gillian K. Bearns, Esq.
Easement Program Stewardship Counsel
VA Dept. of Historic Resources
2801 Kensington Avenue
Richmond, VA 23221

Brett C. Ellsworth-Glymph, Esq.
Asst. Attorney General
10555 Main Street, Suite 350
Fairfax, Virginia 22030

And all parties on the attached service list.

/s/ Craig M. Palik
Craig M. Palik